# UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LINET AMERICAS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No.: 1:21-cv-6890 |
| | ) | |
| HILL-ROM HOLDINGS, INC.; HILL-ROM | ) | ORAL ARGUMENT |
| COMPANY, INC.; HILL-ROM SERVICES, | ) | REQUESTED |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS'
## RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

FACTS ............................................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

   I.   HILLROM'S RULE 12(c) MOTION IS PROCEDURALLY IMPROPER ..................... 3

   II.   HILLROM HAS NOT SHOWN THAT THIS IS ONE OF THE RARE CASES
      JUSTIFYING AN EXCEPTION TO THE GENERAL RULE THAT STATUTE OF
      LIMITATIONS ISSUES ARE BEST ADDRESSED AT SUMMARY JUDGMENT ..... 5

      A. Hillrom Cannot Be Granted Judgment on Linet's "Tolling Claims" When It Ignores
         One of Linet's Tolling Theories. ................................................................................ 6

      B. Hillrom Has Not Carried Its Heavy Burden of Establishing that Linet Has Pled Itself
         Out Of Court On Its Discovery Rule Theory. ........................................................... 8

      C. Hillrom Has Not Carried Its Heavy Burden of Establishing that Linet Has Pled Itself
         Out Of Court On Its Fraudulent Concealment Theory. ........................................... 12

   III.   AT BEST, HILLROM IDENTIFIES FACT ISSUES THAT CANNOT BE RESOLVED
      BEFORE SUMMARY JUDGMENT UNDER PREVAILING SEVENTH CIRCUIT
      LAW ............................................................................................................................ 13

CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alarm Detection Sys., Inc. v. Orland Fire Prot. Dist.*,
326 F. Supp. 3d 602 (N.D. Ill. 2018) ....................................................................7

*Audia v. Briar Place, Ltd.*,
No. 17-cv-6618, 2018 WL 1920082 (N.D. Ill. Apr. 24, 2018) .................................4

*Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*,
377 F.3d 682 (7th Cir. 2004) ....................................................................5, 6, 9

*BBL, Inc. v. City of Angola*,
809 F.3d 317 (7th Cir. 2015) ....................................................................3, 4

*Bilek v. Fed. Ins. Co.*,
8 F.4th 581 (7th Cir. 2021) ....................................................................3

*In re Broiler Chicken Antitrust Litig.*,
290 F. Supp. 3d 772 (N.D. Ill. 2017) .......................................................... *passim*

*Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*,
559 F.3d 671 (7th Cir. 2009) ....................................................................5

*Casino Queen Marquette, Inc. v. Sci. Games Corp.*,
No. 21-cv-01798, 2022 WL 1591578 (N.D. Ill. May 19, 2022) ........................10, 14

*City of Chicago v. Purdue Pharma L.P.*,
No. 14-cv-4361, 2021 WL 1208971 (N.D. Ill. Mar. 31, 2021) .................................3

*In re Copper Antitrust Litig.*,
436 F.3d 782 (7th Cir. 2006) ....................................................................8, 14

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
No. 18-cv-864, 2019 WL 4166864 (N.D. Ill. Sept. 3, 2019) ....................................7

*George v. Kraft Foods Glob., Inc.*,
674 F. Supp. 2d 1031 (N.D. Ill. 2009) ...................................................................13

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*,
392 U.S. 481 (1968) ....................................................................7

*Jovic v. L-3 Servs., Inc.*,
69 F. Supp. 3d 750 (N.D. Ill. 2014) ....................................................................12

*Kenall Mfg. Co. v. Cooper Lighting, LLC*,
    354 F. Supp. 3d 877 (N.D. Ill. 2018) ...................................................................................3

*Klehr v. A.O. Smith Corp.*,
    521 U.S. 179 (1997).............................................................................................................6

*Limestone Dev. Corp. v. Vill. of Lemont*,
    520 F.3d 797 (7th Cir. 2008) ...........................................................................................7

*McInerney v. CareerBuilder, LLC*,
    No. 18-cv-04073, 2019 WL 6497369 (N.D. Ill. Dec. 3, 2019).............................................4, 5

*In re Packaged Seafood Prod. Antitrust Litig.*,
    242 F. Supp. 3d 1033 (S.D. Cal. 2017)...............................................................................15

*Pamplin v. Ill. Dep't of Human Servs.*,
    No. 21-cv-2166, 2022 WL 767112 (N.D. Ill. Mar. 14, 2022) ..................................................4

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
    631 F.3d 436 (7th Cir. 2011) .........................................................................................13

*Pitts v. Unarco Industries, Inc.*,
    712 F.2d 276 (7th Cir. 1983) ..........................................................................................13

*Reiser v. Residential Funding Corp.*,
    380 F.3d 1027 (7th Cir. 2004) ......................................................................................13

*Richards v. Mitcheff*,
    696 F.3d 637 (7th Cir. 2012) ........................................................................................13

*Rose v. Nat'l Collegiate Athletic Ass'n*,
    346 F. Supp. 3d 1212 (N.D. Ill. 2018) ........................................................................12, 13

*Sidney Hillman Health Ctr. of Rochester v. Abbott. Labs.*,
    782 F.3d 922 (7th Cir. 2015) ......................................................................................6, 13

*In re Sulfuric Acid Antitrust Litig.*,
    743 F. Supp. 2d 827 (N.D. Ill. 2010) ............................................................................14

*Tamayo v. Hamer*,
    256 F.R.D. 175 (N.D. Ill. 2009)......................................................................................15

*Thomas v. Guardsmark, Inc.*,
    381 F.3d 701 (7th Cir. 2004) ..........................................................................................6

*U.S. Gypsum Co. v. Indiana Gas Co., Inc.*,
    350 F.3d 623 (7th Cir. 2003), 03-1905 ..........................................................................14

*United States v. N. Tr. Co.*,
   372 F.3d 886 (7th Cir. 2004) ...............................................................................13

*United States v. Spectrum Brands, Inc.*,
   924 F.3d 337 (7th Cir. 2019) ................................................................................7

*Universal Hosp. Servs. Inc. v. Hill-Rom Holdings, Inc.*,
   No. 5:15-cv-00032 (W.D. Tex.).............................................................................11

*Xechem, Inc. v. Bristol-Myers Squibb Co.*,
   372 F.3d 899 (7th Cir. 2004) .............................................................5, 6, 13, 15

*Zidek v. Analgesic Healthcare, Inc.*,
   No. 13 C 7742, 2014 WL 2566527 (N.D. Ill. June 6, 2014) .................................8

## Rules

Fᴇᴅ. R. Cɪᴠ. P.
   9(b).........................................................................................................................12
   12.......................................................................................................................4, 8
   12(b).........................................................................................................................3
   12(b)(6)....................................................................................................................4
   12(c) ................................................................................................................. *passim*
   56.............................................................................................................................3

## Other Authorities

10A Wright & Miller, Federal Practice & Procedure § 2713 (4th ed. 2018) ..................................3

## INTRODUCTION

Despite its bravado, Hillrom's much ballyhooed Rule 12(c) motion is squarely foreclosed by well-established Seventh Circuit case law. As an initial matter, the Seventh Circuit has held that this very type of motion—a Rule 12(c) motion for **partial** judgment on the pleadings—is procedurally improper. And while Hillrom vigorously attacks the factual bases for what it misleadingly characterizes as Linet's "tolling claims," the Seventh Circuit does not require Linet to anticipate Hillrom's affirmative statute of limitation defense and plead around it. Linet did so anyway. At the pleading stage, all its facts are presumed true, all inferences are drawn in its favor, and the only question is whether there is ***any*** conceivable set of facts, pled or not, that would defeat a statute of limitations defense under this deferential pleading standard. There unquestionably is. While Hillrom may dispute the facts alleged, or the inferences to be drawn therefrom, the Seventh Circuit has held that that the proper vehicle for resolving these disputes is summary judgment. That is the start and end of the limited inquiry required by Hillrom's motion.

The Court should therefore deny the motion and reserve for summary judgment the myriad disputed factual issues related to Hillrom's statute of limitations defense. At that point, *after* discovery, the Court will be in a better position to assess the relevant facts and theories upon a full evidentiary record. In the interim, Hillrom should not be allowed to continue to delay and obstruct discovery, as well as the orderly progress of this important case, by engaging in motion practice that is contrary to settled Seventh Circuit law.

## FACTS

Plaintiff Linet Americas, Inc. is the U.S. subsidiary of a leading global manufacturer and supplier of hospital beds. Compl. ¶1, Dkt. 1. Linet competes with Defendants, referred to here as Hillrom, to sell various hospital beds in the U.S. *Id.* ¶28. Hillrom has dominated the market for

1

decades, including through a long history of anticompetitive conduct. *Id.* ¶133. After Linet entered the U.S. in 2010 and started winning business, Hillrom devised and implemented a multi-faceted scheme intended to squeeze Linet out of the market. *Id.* ¶¶205, 221-23.

Hillrom's strategy is to coerce the biggest hospital systems in the country into exclusive agreements that force hospitals to commit to buying Hillrom beds and impose steep penalties if they do not. *Id.* ¶ 224, 238, 290. This scheme involves two types of contracts made directly with hospital systems: (1) purchase agreements covering the relevant hospital bed products, and (2) an overarching "strategic overlay agreement" that links the product agreements together and provides a cumulative rebate on every Hillrom product. *Id.* ¶237. Created to disguise the true nature of Hillrom's long-term, exclusive dealing agreements in the wake of previous antitrust litigation, *id.* ¶258, the strategic overlay ties together all of a hospital network's purchase agreements with Hillrom and conditions huge discounts and rebates on that network's commitment to buy from Hillrom alone. *Id.* ¶¶235-39. On top of that, Hillrom has engaged in other anticompetitive conduct to reinforce its exclusion of Linet and other potential rivals, including constructing a closed digital connectivity architecture and conditioning its full value on the exclusive use of Hillrom products, *id.* ¶¶328-63, threatening customers with economic repercussions, *id.* ¶304, disparaging Linet and its products, *id.* ¶¶364-68, and acquiring new companies to expand the coercive power of its bundle, *id.* ¶¶305-27. Hillrom's anticompetitive conduct has harmed competition in the markets for Standard Hospital Beds, ICU Beds, and Nursing Beds, and harmed Linet. *Id.* ¶¶406-65.

## ARGUMENT

Linet brought antitrust claims against Hillrom arising from an ongoing, multi-faceted scheme to monopolize the Relevant Markets during a global pandemic. These claims are well pled. Indeed, Hillrom chose to answer the complaint because it no doubt recognized that a motion to

dismiss Linet's claims would be futile in light of the extensive details included in Linet's 104-page complaint. Nonetheless, Hillrom now strategically seeks to forestall discovery into its illicit activities by filing a Rule 12(c) motion seeking judgment on what it calls Linet's "tolling claims" based solely on the pleadings. Despite the complaint's allegations, Hillrom contends that Linet should have discovered its anticompetitive conduct earlier and that its allegations of fraudulent concealment are likewise insufficient. This argument fails for several reasons.

## I.    HILLROM'S RULE 12(c) MOTION IS PROCEDURALLY IMPROPER

The simplest and most straightforward reason to reject Hillrom's Rule 12(c) motion is that it is procedurally improper. It is well established that there is "no provision" in the Federal Rules of Civil Procedure for a "motion for a partial judgment on the pleadings." *Kenall Mfg. Co. v. Cooper Lighting, LLC*, 354 F. Supp. 3d 877, 893 (N.D. Ill. 2018) (citing 10A Wright & Miller, Federal Practice & Procedure § 2713 (4th ed. 2018). For that reason, the Seventh Circuit has held that a motion under Rule 12(c) "doesn't permit piecemeal dismissals of *parts* of claims." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015); *see also Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 587 (7th Cir. 2021) (same applying Rule 12(b)). Thus, unlike Rule 56, Rule 12(c) does not permit the entry of judgment on some but not all elements of a single claim, or portions of a claim based on time period. *See, e.g., Kenall*, 354 F. Supp. 3d 877, 893 (N.D. Ill. 2018) (denying 12(c) motion seeking judgment on the pleadings as to liability, but not damages); *City of Chicago v. Purdue Pharma L.P.*, No. 14 CV 4361, 2021 WL 1208971, at *6 (N.D. Ill. Mar. 31, 2021) ("Subsequent district court decisions have followed *BBL*'s reasoning.") (collecting cases).

In *BBL*, for example, the Seventh Circuit went out of its way to emphasize this point where a district judge had granted a "peculiar" motion directed at "*certain elements* of the doctrinal test applicable to the [plaintiff's] First Amendment claim." 809 F.3d at 323. The Court described the error of "split[ing] a single claim into multiple components based on the elements of the applicable

constitutional test" as a "procedural problem," and labeled the judge's decision to grant the motion a "procedural irregularity." *Id.* at 324-25. Highlighting the difference between procedural rules for motions at Rule 12 and at summary judgment, the Seventh Circuit was unequivocal that Rule 12(c) "doesn't permit piecemeal dismissals of *parts* of claims." *Id.* at 325.

This same reasoning applies in particular to Rule 12(c) motions directed at statute of limitations issues. In *McInerney v. CareerBuilder, LLC*, No. 18-CV-04073, 2019 WL 6497369 (N.D. Ill. Dec. 3, 2019), the defendant targeted select facts underlying the plaintiff's claims, arguing that allegations before a certain date were time-barred and should not be considered. The defendant did not challenge, however, other allegations after that date. The court found that defendant's motion sought "only to carve out certain allegations declared as irrelevant or time-barred," not to dismiss either claim entirely. *Id.* at *4. Because "Rule 12(b)(6) authorizes the dismissal of claims, not evidentiary rulings about the relevance of specific allegations set forth in the complaint," the court held that "winnowing" claims down in that manner "properly occurs at summary judgment, not at the pleading stage when the question is simply whether there are sufficient facts alleged to state a plausible claim for relief on some legal theory." *Id.*

The only "claims" at issue in Hillrom's motion are antitrust claims. Although Hillrom may, one day, seek to narrow the scope of Linet's antitrust claims with a statute of limitations argument, Rule 12(c) is available only to seek judgment on the antitrust claims themselves. Yet Hillrom is ***not*** seeking judgment on those any of claims. It never asks for such relief. Nor could it. Instead, Hillrom is asking this Court only to enter partial judgment under Rule 12(c) in favor of Hillrom on Linet's theories that the statute of limitations applicable to this case is tolled on account of fraudulent concealment and/or equitable estoppel. This is just an attempt to "carve out certain

4

allegations declared as irrelevant or time-barred," but not dismiss any claim entirely. *Id.*[1] Consequently, this is precisely the type of "motion for a partial judgment on the pleadings" that was rejected in *McInerney*, and should be rejected here.

## II. HILLROM HAS NOT SHOWN THAT THIS IS ONE OF THE RARE CASES JUSTIFYING AN EXCEPTION TO THE GENERAL RULE THAT STATUTE OF LIMITATIONS ISSUES ARE BEST ADDRESSED AT SUMMARY JUDGMENT

Hillrom's statute of limitations arguments fare no better as more traditional pleading arguments. Procedural improprieties aside, Hillrom's motion is a thinly-veiled attack on the adequacy of the factual allegations that support some of Linet's statute-tolling theories. *Id.* at 9-14. But this whole argument is premised on the mistaken notion that Linet had the affirmative obligation to anticipate Hillrom's affirmative defenses and plead around them. That is not the law.

The Seventh Circuit has made it clear that complaints "need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009); *see also Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 902 (7th Cir. 2004) ("Complaints need not contain *any* information about defenses and may not be dismissed for that omission."). Instead, statute of limitations issues are almost always addressed at the summary judgment stage, with the benefit of a full evidentiary record. *See Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004) ("the resolution of the statute of limitations comes after the complaint stage").

---

[1] *See also, e.g., Audia v. Briar Place, Ltd.*, No. 17 CV 6618, 2018 WL 1920082, at *5 (N.D. Ill. Apr. 24, 2018) (denying motion based on statute of limitations argument that "asks [the court] to parse each of [plaintiff]'s claims in a way that [the court] will not do at this stage."); *Pamplin v. Ill. Dep't of Human Servs.*, No. 21 C 2166, 2022 WL 767112, at *1 (N.D. Ill. Mar. 14, 2022) (where complaint stated timely claim, dismissal was inappropriate, and complaint's inclusion of facts "that may have occurred outside limitations period does not change the analysis").

The lone exception to this well-established rule is the rare instance in which a plaintiff pleads itself out of court. Indeed, because dismissing a complaint as untimely at the pleading stage is "an unusual step," *id.*, the Seventh Circuit has held that courts may do so only if a "plaintiff pleads itself out of court—that is, admits ***all the ingredients of an impenetrable defense***." *Xechem, Inc.*, 372 F.3d at 901 (emphasis added). By way of contrast, a plaintiff has not pled itself of out court if, taking its allegations as true and drawing all inferences in its favor, "there is a conceivable set of facts, consistent with the complaint, that would defeat [the affirmative] defense." *Sidney Hillman Health Ctr. of Rochester v. Abbott. Labs.*, 782 F.3d 922, 928 (7th Cir. 2015).

Linet was therefore under no obligation affirmatively to rebut Hillrom's statute of limitations defense in the complaint. Nonetheless, Linet went above and beyond what was required and included detailed factual allegations supporting three different theories of tolling: the continuing violation doctrine, the discovery rule, and the fraudulent concealment doctrine. All three of these theories were supported by detailed factual allegations and, at this stage, all of these allegations are taken as true and all inferences are drawn in Linet's favor. *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704 (7th Cir. 2004). Accordingly, so long as the facts offered in support of at least one of these theories do not "admit all the ingredients" of Hillrom's statute of limitations defense when assessed against this deferential pleading standard, the Rule 12(c) motion must be denied. Hillrom cannot carry that heavy burden here and, as a result, any statute of limitations issues must be left for summary judgment or trial.

### A. Hillrom Cannot Be Granted Judgment on Linet's "Tolling Claims" When It Ignores One of Linet's Tolling Theories.

The complaint alleges that Hillrom has engaged in anticompetitive conduct to monopolize the Relevant Markets over the past decade and continuing up through today and that this conduct is a single, continuing violation of federal and state antitrust laws. Compl. at ¶¶ 396-398, 405. A

6

"continuing violation," in this sense, is a well-recognized theory for when antitrust claims accrue. *See generally Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997). Yet Hillrom completely ignores Linet's continuing violation theory, mentioning it only in passing in a footnote on the final page of its brief. Br. at 15 n.9. Hillrom's silence is notable for two reasons.

First, it reflects Hillrom's tacit acknowledgement that is has no credible argument to challenge the continuing violation doctrine on the pleadings. The Seventh Circuit has held that the purpose of the continuing violation doctrine "is to allow suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought," making it "a doctrine not about a continuing, but about a cumulative, violation." *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 801 (7th Cir. 2008). The doctrine applies when individual instances of alleged misconduct alone are not actionable, but the cumulative effect of a series of actions is enough to establish an actionable claim. *See In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 18-cv-864, 2019 WL 4166864, at \*8 (N.D. Ill. Sept. 3, 2019). It "is aimed at ensuring that illegal conduct is punished by preventing a defendant from invoking the earliest manifestation of its wrongdoing as a means of running out the limitations clock on a course of misconduct that persisted over time; the doctrine serves that end by treating the defendant's misconduct as a continuing wrong and deeming an action timely so long as the last act evidencing a defendant's violation falls within the limitations period." *United States v. Spectrum Brands, Inc.*, 924 F.3d 337, 350 (7th Cir. 2019).

That is exactly what Linet alleged here. Linet's antitrust claims are supported by plausible allegations that Hillrom engaged in a continuous pattern of anticompetitive conduct to eliminate competition in the Relevant Markets, injuring Linet. Compl. ¶¶ 397-405; *passim*. Linet alleges Hillrom furthered its scheme through overt acts within the last four years, including coercing hospital networks into entering into new strategic overlay contracts and/or renewing, extending or

expanding existing ones. *Id.* Hillrom does not and cannot take issue with these allegations of a continuing violation theory. *See, e.g., Alarm Detection Sys., Inc. v. Orland Fire Prot. Dist.*, 326 F. Supp. 3d 602, 623 (N.D. Ill. 2018) (allegations of more recent anti-competitive exclusionary agreements sufficiently overt to start new limitations clock). Under Rule 12(c), all of these allegations are presumed true, with all inferences drawn in Linet's favor, and Hillrom certainly cannot point to any contradictory admission otherwise in the complaint.

Second, the consequence of Hillrom's failure to address—or even credibly attack—Linet's invocation of the continuing violation doctrine is the denial of its Rule 12(c) motion outright. This is because, even if the Court accepted Hillrom's other arguments, the continuing violation theory would still survive, and Linet's claims would proceed. As noted above, Rule 12(c) permits courts to grant judgment only on Linet's entire claims, not partial judgment on some discrete issues and defenses applicable to those claims. *See Zidek v. Analgesic Healthcare, Inc.*, No. 13 C 7742, 2014 WL 2566527, at *2 (N.D. Ill. June 6, 2014) (Rule 12 does not provide a basis for striking individual legal theories). This is especially true where Linet relies on multiple tolling theories to vindicate its claims and Hillrom has not deigned to address one of the most important of them.

### B. Hillrom Has Not Carried Its Heavy Burden of Establishing that Linet Has Pled Itself Out Of Court On Its Discovery Rule Theory.

Linet's second theory of tolling, the discovery rule, also tolls the limitations period. It is axiomatic that a claim accrues "when the plaintiff discovers that he has been injured and who caused the injury." *In re Copper Antitrust Litig.*, 436 F.3d 782, 789 (7th Cir. 2006) (cleaned up). Here, Linet plausibly pled that it could not have discovered its injury and Hillrom's unique anticompetitive conduct until shortly before it filed suit. Hillrom's contracts and its strategic overlay contracting scheme was and remains non-public. Compl. ¶391. Hillrom also disguised its dual-layer contract strategy with strict confidentiality clauses and muzzled customers to prevent

Linet from seeing the specific conduct at issue here. *Id.* ¶¶386-400. And only within the last four years did Hillrom's anticompetitive conduct foreclose Linet from market access at a level that suffices under antitrust law. *Id.* ¶400.

At this stage, with all facts deemed true and all inferences drawn in Linet's favor, these allegations show that it is at least conceivable—which is all Linet needs to show here—for Linet's antitrust claims to survive under this theory. *See, e.g.*, *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688-89 (7th Cir. 2004) (rejecting statute of limitations dismissal bid where allegations did not include the date plaintiff discovered his claim but also "d[id] not preclude the possibility" that discovery date was within the statute of limitations); *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 809 (N.D. Ill. 2017) (deeming it "unnecessary to identify the date when Plaintiffs should have discovered their injuries with any further specificity" than a two-year window within the limitations period).

Hillrom says Linet's action accrued more than four years ago by mischaracterizing various discrete public disclosures over the course of its long-running anticompetitive conduct as a "cacophony of publicity" that should have alerted Linet to its dual-layer contracting scheme. Br. at 6. But, at most, all Hillrom's arguments are doing is identifying disputed factual issues that are unsuitable for judgment at the pleading stage.

First, Hillrom has the chutzpah to argue that the expiration of a voluntary injunction Hillrom entered into in settlement of other antitrust claims "should have alerted Linet to the possibility that Hillrom could 'resume' the contracting practices Linet now challenges." Br. at 3. This is nonsensical. No doubt Hillrom would enjoy the silver lining if its long string of antitrust losses in those past cases automatically time-barred any future claim, Compl. ¶¶ 151-61, but that injunction stopped a different contract strategy over a different time period. Second, Hillrom's

statements from investor conferences only vaguely discuss plans to expand Hillrom's business. Br. at 4. Linet should not "be charged with a level of diligence requiring [it] to follow Defendants' executives' public statements such that [it was] immediately aware of these statements," and even if it should, these bare-bones statements did not "directly mention" Hillrom's contracting strategy or any other aspects of anticompetitive conduct. *In re Broiler Chicken Antitrust Litig*., 290 F. Supp. 3d at 808 (public statements regarding unlawful conduct alleged were insufficient to dismiss claim at pleading stage, as "there is a question of fact as to what conclusion Plaintiffs could draw from those statements alone"). Likewise with various contract announcements in 2014. Br. at 4. The public announcements of *product-level agreements* did not mention the coercive *strategic overlay contracts*—an allegation Hillrom obfuscates—and the actual contract terms remained hidden. Compl. ¶¶243-44. For example, Hillrom's 2016 announcement that it was a "significant partner" with every major hospital network was likewise not specific enough to arouse suspicion or disclose its anticompetitive contract strategy. *Id*. ¶251.

As for the 2015 *UHS* lawsuit, that case centered on allegations of exclusive contracts between Hillrom and group purchasing organizations (not hospital networks) that bundled hospital beds with rentals of patient handling and moveable medical equipment (which rental products are not at issue here). Notably, while Hillrom opportunistically argues to this Court that the "2015 UHS suit [] pled the same antitrust claims based primarily on the same conduct alleged here," Br. at 15, Hillrom has taken the exact opposite position in discovery. Indeed, Hillrom is refusing to produce *UHS*-related documents because that case involves, it claims, "different parties, different factual allegations, [and] different relevant products." Dkt. 49-5, at 48. Regardless, the litigation was insufficient to put Linet on notice of Linet's antitrust claims and the extent of harm and/or foreclosure Hillrom had caused in the Relevant Markets at issue here. *See, e.g., Casino Queen*

10

*Marquette, Inc. v. Sci. Games Corp.*, No. 21-cv-01798, 2022 WL 1591578, at *4 (N.D. Ill. May 19, 2022) (news articles and prior litigation on same conduct not enough to definitively show when plaintiff should have learned of action).

The *UHS* case is a perfect example of Hillrom trying to have it both ways. In its motion to dismiss the 2015 *UHS* lawsuit, Hillrom complained that the plaintiff sued too early; that, relying on the announcement of the three 2014 contracts that Hillrom now says "publicly disclosed" its exclusive contracting scheme, Br. at 7-8, plaintiff UHS "failed to allege facts that would show that any of the contracts…have foreclosed a substantial share of the relevant market." *Universal Hosp. Servs. Inc. v. Hill-Rom Holdings, Inc.,* No. 5:15-cv-00032 (W.D. Tex.), Dkt no. 37-2, at 22-23. Hillrom pointed out that the contracts covered a mere 12-15% of the national markets at issue, explaining that courts usually required higher numbers to reach "substantial foreclosure." *Id.* at 22. Now, Hillrom says Linet's motion is *too late* because it only recently uncovered that Hillrom foreclosed it from over half of the relevant markets with Hillrom's anticompetitive contracts. In other words, in Hillrom's eyes, antitrust claims against it are never ripe.

Finally, Hillrom misstates Linet's allegations of other anticompetitive conduct comprising the monopoly broth at issue Br. at 5. For example, Hillrom highlights the 2017 product launch of its Centrella+ bed as the "the target of Linet's interoperability theory," but really Linet complains of Hillrom's use of a "Connected Care" strategy to effect technological exclusion of competitor beds, Compl. ¶¶330, 352-54, which involves much more complicated facts than Hillrom's press release announcing a new product could provide. *Id.* ¶347. This Connected Care strategy increasingly hurts competitors as Hillrom's nurse call market share rapidly grows. ¶336. And drawing inferences in *Linet's* favor, as this Court must, Linet learned that Hillrom disparaged Linet's products within the last four years. *Id.* ¶¶364-67.

Regardless, none of Linet's allegations foreclose the possibility that its claim accrued within the last four years. Hillrom cannot point to any evidence conclusively showing that Linet either pled or was on notice, prior to December 28, 2017, of Hillrom's dual-layer contract strategy, the extent of foreclosure it had achieved, the technologically closed nature of its nurse call and Connected Care system, and other conduct that injured Linet. As in *Broiler Chicken*, 290 F. Supp. 3d at 808, "[i]t is not possible on these allegations for the Court to determine precisely when Plaintiffs' claim accrued under the discovery rule." Any factual determination of the same "must await further factual discovery." *Id*.

### C. Hillrom Has Not Carried Its Heavy Burden of Establishing that Linet Has Pled Itself Out Of Court On Its Fraudulent Concealment Theory.

Linet's final theory of tolling, fraudulent concealment, also serves to toll the limitations period. *See* Compl. ¶¶386-405. Linet alleges that a combination of Hillrom's secret dual-layer contracting strategy, strict confidentiality clauses preventing customers from telling Linet why it was not selected for a contract (violating the industry norm) and disclosing any terms of their deals with Hillrom, actively muzzling customers, and disclosing misleading public statements could amount to fraudulent concealment sufficient to toll the limitations period. *Id*. ¶¶ 386-96.

At this stage, again, if all facts are deemed true and all inferences drawn in Linet's favor, Linet's allegations show that it is at least conceivable—which is all Linet needs to show—for its antitrust claims to survive. *Jovic v. L-3 Servs., Inc*., 69 F. Supp. 3d 750, 765 (N.D. Ill. 2014) (plaintiff did not plead itself out of court by suing 15 years after conspiracy began because allegations did not "unequivocally demonstrate" that equitable tolling doctrines could not apply).

Nonetheless, Hillrom tries to evade this conclusion by implicitly asking this Court to adopt a heightened legal standard and require Linet to plead fraudulent concealment with particularity. The Seventh Circuit has never required this, and district courts actively disclaim such a heightened

12

standard. "[T]he statute of limitations is an affirmative defense, and a plaintiff has no obligation—under Rule 9(b) or otherwise—to plead around it in the complaint." *Rose v. Nat'l Collegiate Athletic Ass'n*, 346 F. Supp. 3d 1212, 1224 (N.D. Ill. 2018). Indeed, since the Seventh Circuit has held that "[c]omplaints need not contain *any* information about defenses and may not be dismissed for that omission," *Xechem, Inc.*, 372 F.3d at 902, it stands to reason that Linet "need not plead fraudulent concealment with particularity to negate [Hillrom's] statute of limitations defense." *George v. Kraft Foods Glob., Inc.*, 674 F. Supp. 2d 1031, 1046 (N.D. Ill. 2009).[2] Regardless, even if a heightened standard were required, Linet's detailed allegations are more than sufficient at the pleading stage. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011) (what particularity requires "may vary on the facts of a given case").

### III. AT BEST, HILLROM IDENTIFIES FACT ISSUES THAT CANNOT BE RESOLVED BEFORE SUMMARY JUDGMENT UNDER PREVAILING SEVENTH CIRCUIT LAW

The Seventh Circuit disfavors rendering pre-discovery judgment based on a statute of limitations defense. *See, e.g.*, *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1030 (7th Cir. 2004) (deeming dismissal stage "too soon to tackle" tolling and estoppel because "[a]ll we have to go on is the complaint, and because the period of limitations is an affirmative defense it is rarely a good reason to dismiss"); *United States v. N. Tr. Co.*, 372 F.3d 886, 888 (7th Cir. 2004) (reversed, noting that "[r]esolving defenses comes after the complaint stage"); *Richards v. Mitcheff*, 696 F.3d at 637 (reversing district court that found tolling allegations "unpersuasive," as only trier of fact can reject plausible allegations).

---

[2] Hillrom does not acknowledge *Kraft* or *Rose*, cites exclusively cases that pre-date them, and relies primarily on dicta from *Pitts v. Unarco Industries, Inc*, 712 F.2d 276, 278–79 (7th Cir. 1983), a case that this District has soundly rejected. *See* Br. at 7; *Rose*, 346 F. Supp. 3d at 1224. This mistake infects its whole fraudulent concealment argument. *See* Br., Part II.

This "orthodoxy" makes sense because resolving affirmative defenses usually implicates disputed facts. *Sidney Hillman*, 782 F.3d at 928. For example, in *Broiler Chickens*, the Court rejected defendants' argument that years-old public statements should have tipped plaintiffs off to a conspiracy. 290 F. Supp. 3d at 808-09. The Court conceded that, while it was perhaps "*possible* for Plaintiffs to have discovered these statements on the dates they were made," it was "unwilling to hold" that plaintiffs should have been "immediately aware of these statements," noting "a question of fact as to what conclusion Plaintiffs could draw from those statements alone." *Id*. at 808. Because the parties disputed whether the plaintiffs' claim accrued when the public statements at issue were made, the Court refused to dismiss it. *Id*.; *see also In re Sulfuric Acid Antitrust Litig*., 743 F. Supp. 2d 827, 854 (N.D. Ill. 2010) (fact issues as to whether fraudulent concealment or discovery rule tolled statute of limitations precluded summary judgment). Similarly, in *U.S. Gypsum Co.*, 350 F.3d at 623, the Court rejected the limitations-based dismissal bid because the defense implicated unpled facts. The plaintiff sued a cartel formed more than four years earlier, and though it did not plead any "injurious overt act within the limitations period," the defendant's dismissal bid failed because it was "possible to imagine proof" of injurious acts within the applicable period that "would not contradict any of the complaint's allegations." *Id*. at 628.

This case is no exception. Hillrom's limitations defense depends on disputed facts. Ironically, Hillrom highlights several, including when Linet's claim accrued, whether Hillrom's publicly-announced product-level deals in 2014 should have alerted Linet to its anticompetitive conduct, and whether the 2015 *Universal Hospital Services* ("*UHS*") litigation was sufficiently similar to do the same. The Court cannot resolve these disputes on the pleadings. *See, e.g., In re Copper*, 436 F.3d at 789-90 (rejecting limitations dismissal bid because material dispute whether newspaper articles describing unlawful conduct alleged should have notified plaintiff of claims

and because of "facts in dispute regarding [] fraudulent concealment"); *Casino Queen Marquette*, No. 21-cv-01798, 2022 WL 1591578, at *4 (whether news articles and prior litigation were enough to accrue claim was "an issue of fact properly assessed with the benefit of a developed evidentiary record"); *In re Packaged Seafood Prod. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1099 (S.D. Cal. 2017) ("[T]here is no reason a particular piece of information should have a fixed amount of relevance regardless of the context in which it is viewed…a lone puzzle piece may, in isolation, give no further indication as to the larger picture into which it fits, and yet at the same time be an integral component of the final product once all corresponding pieces are assembled.").

Unpled facts could also conceivably defeat Hillrom's limitations defense. Hillrom makes much ado about Linet's purportedly skinny allegations related to fraudulent concealment, chiding Linet for providing "scant detail" and noting that courts have accepted such theories "only when supported by affirmative—and specifically pled—acts of concealment far *beyond* those alleged here." Br. at 9-10. But Linet did not have to plead *any* facts overcoming Hillrom's affirmative defenses, as "[c]omplaints need not contain *any* information about defenses and **may not be dismissed for that omission**." *Xechem*, 372 F.3d at 901; *Tamayo v. Hamer*, 256 F.R.D. 175, 177 (N.D. Ill. 2009) (rejecting 12(c) limitations dismissal bid for complaint time-barred on face because of possibility that unpled facts would address limitations defense). Here, although Linet went above and beyond to include facts that may ultimately be relevant to Hillrom's statute of limitations defense, Linet was not required to do so. It is neither surprising nor dispositive that, at the pleading stage, Linet does not plead *all* facts that ultimately will bear on whether Hillrom will have a successful statute of limitations defense.

## CONCLUSION

For these reasons, Linet respectfully requests that the Court deny Hillrom's motion.

Dated: June 27, 2022                                    Respectfully submitted,

                                                        */s/ Julie Porter*
                                                        Julie B. Porter (#6243787)
                                                        SALVATORE PRESCOTT PORTER &
                                                        PORTER, PLLC
                                                        1010 Davis Street
                                                        Evanston, Illinois 60201
                                                        (312) 283-5711
                                                        porter@spplaw.com

                                                        Ryan P. Phair (#479050)
                                                        Leslie Kostyshak (*pro hac vice*)
                                                        Wm. Bennett Sooy (*pro hac vice*)
                                                        Kelly R. Oeltjenbruns (*pro hac vice*)
                                                        Christopher Brewer (*pro hac vice*)
                                                        HUNTON ANDREWS KURTH LLP
                                                        2200 Pennsylvania Avenue, NW
                                                        Washington, D.C. 20037-1701
                                                        (202) 955-1500
                                                        rphair@hunton.com
                                                        lkostyshak@hunton.com
                                                        bsooy@hunton.com
                                                        koeltjenbruns@hunton.com
                                                        brewerc@hunton.com