**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

LINET AMERICAS, INC.,

                        Plaintiff,

          v.

HILL-ROM HOLDINGS, INC.; HILL-ROM
COMPANY, INC.; HILL-ROM SERVICES, INC.,

                    Defendants.

Case No. 21 Civ. 6890

Hon. Martha M. Pacold

Hon. Jeffrey T. Gilbert

**MEMORANDUM IN SUPPORT OF HILLROM DEFENDANTS'
<u>RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

RELEVANT BACKGROUND ............................................................................................ 2

ARGUMENT ....................................................................................................................... 7

I.    LINET DOES NOT PLEAD THE DISCOVERY PREDICATE FOR TOLLING ................ 8

II.   LINET'S REMAINING ALLEGATIONS FAIL TO STATE A TOLLING CLAIM ........... 9

      A.   The Alleged CEA Confidentiality Clauses Do Not Support Tolling .............................. 9

      B.   Hillrom's Alleged Non-Disclosure of Its CEAs Also Does Not Support Tolling ......... 11

      C.   Linet's Allegations of Intimidation Do Not Support Tolling ....................................... 12

      D.   Hillrom's Denials of Antitrust Liability Do Not Support Tolling ................................ 13

III.  LINET'S AFFIRMATIVE ALLEGATIONS FORECLOSE A TOLLING CLAIM ........... 14

CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

CASES

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................6, 9

*Bachmeier v. Bank of Ravenswood*,
    663 F. Supp. 1207 (N.D. Ill. 1987) ...................................................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................6

*Bokros v. Assocs. Finance, Inc.*,
    607 F. Supp. 869 (N.D. Ill. 1984) ....................................................7

*Braman v. The CME Group, Inc.*,
    149 F. Supp. 3d 874 (N.D. Ill. 2015) ................................................15

*Brandolino v. Schlak*,
    2022 WL 602474 (N.D. Ill. Mar. 1, 2022)..........................................11

*Cada v. Baxter Healthcare*,
    920 F.2d 446 (7th Cir. 1990) ....................................................7, 10

*Cancer Found., Inc. v. Cerberus Capital Mgmt, LP*,
    559 F.3d 671 (7th Cir. 2009) ...........................................2, 8, 14, 15

*Carrier Corp. v. Outokumpu Oyj*,
    673 F.3d 430 (6th Cir. 2012) .....................................................10

*In re Ciprofloxacin Hydrochl. Antitrust Litig.*,
    261 F. Supp. 2d 188 (E.D.N.Y. 2003) ..............................................14

*Cook Inc. v. Boston Sci. Corp.*,
    2002 WL 335314 (N.D. Ill. Feb. 28, 2002) .......................................8, 11

*In re Copper Antitrust Litig.*,
    436 F.3d 782 (7th Cir. 2006) ....................................6, 7, 11, 13, 14, 15

*Erickson v. Painewebber Inc.*,
    1990 WL 17144 (N.D. Ill. Feb. 1, 1990) ...........................................10

*FTC v. OSF Healthcare Sys.*,
    2012 WL 1144620 (N.D. Ill. Apr. 5, 2012) .........................................10

**TABLE OF AUTHORITIES**

(continued)

Page(s)

*Garrison v. Oracle Corp.*,
    159 F. Supp. 3d 1044 (N.D. Cal. 2016) ...............................................................10, 13

*Gorgoni v. OneWest Bank, FSB*,
    2013 WL 1278475 (N.D. Ill. Mar. 28, 2013) ..............................................................9

*Grand Rapids Plastics, Inc. v. Lakian*,
    188 F.3d 401 (6th Cir. 1999) ..............................................................................15

*Greer v. Bank One*,
    2002 WL 1732366 (N.D. Il. July 25, 2002) ...................................................8, 9, 12

*Hefferman v. Bass*,
    467 F.3d 596 (7th Cir. 2006) ...........................................................................12, 13

*House of Brides, Inc. v. Alfred Angelo, Inc.*,
    2014 WL 64657 (N.D. Ill. Jan. 8, 2014) ..................................................................8

*Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*,
    665 F.3d 930 (7th Cir. 2012) ................................................................................7

*Jay E. Hayden Found. v. First Neighbor Bank, N.A.*,
    610 F.3d 382 (7th Cir. 2010) .........................................................................10, 15

*Jones v. Hoosman*,
    2006 WL 1302524 (N.D. Ill. May 9, 2006) ...........................................................7, 12

*Klehr v. A.O. Smith Corp.*,
    521 U.S. 179 (1997)....................................................................................7, 15

*Lincoln Nat'l Bank v. Lampe*,
    414 F. Supp. 1270 (N.D. Ill. 1976) .......................................................................13

*Lodholtz v. York Risk Servs. Grp., Inc.*,
    778 F.3d 635 (7th Cir. 2015) ................................................................................6

*Moorehead v. Deutsche Bank AG*,
    2011 WL 4496221 (N.D. Ill. Sept. 26, 2011) ...........................................................15

*In re Niaspan Antitrust Litig.*,
    42 F. Supp. 3d 735 (E.D. Pa. 2014) .....................................................................14

*Parungao v. Cmty. Health Sys., Inc.*,
    858 F.3d 452 (7th Cir. 2017) ................................................................................3

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
    631 F.3d 436 (7th Cir. 2011) ....................................................................2, 7, 8, 10

*Pitts v. Unarco Indus., Inc.*,
    712 F.2d 276 (7th Cir. 1983) ............................................................................7, 11

*Reveal Chat Holdco, LLC v. Facebook, Inc.*,
    471 F. Supp. 3d 981 (N.D. Cal. 2020) ..................................................................15

*Saban v. Caremark Rx, L.L.C.*,
    780 F. Supp. 2d 700 (N.D. Ill. 2011) ...................................................................10

*Sandee's Catering v. Agri Stats, Inc.*,
    2020 WL 6273477 (N.D. Ill. Oct. 26, 2020)..................................................1, 7, 14

*Singletary v. Cont'l Ill. Nat'l Bank & Trust Co.*,
    9 F.3d 1236 (7th Cir. 1993) .................................................................................13

*In re Sulfuric Acid Antitrust Litig.*,
    743 F. Supp. 2d 827 (N.D. Ill. 2010) ...................................................................13

*Summerhill v. Terminix, Inc.*,
    637 F.3d 877 (8th Cir. 2011) ..............................................................................8, 9

*The Cancer Found. Inc. v. Cerberus Cap'l Mgmt., L.P.*,
    2008 WL 927989 (N.D. Ill. Apr. 4, 2008) ............................................................15

*Thomas v. Farley*,
    31 F.3d 557 (7th Cir. 1994) .................................................................................11

*United States v. Duke*,
    229 F.3d 627 (7th Cir. 2000) .................................................................................6

*Williamson v. Curran*,
    714 F.3d 432 (7th Cir. 2013) .................................................................................3

*Wood v. Carpenter*,
    101 U.S. 135 (1879) ..............................................................................................8

**STATUTES**

15 U.S.C. § 15b..............................................................................................................6

**RULES**

Fed. R. Civ. P. 9(b) .......................................................................................................7

iv

## TABLE OF AUTHORITIES
(continued)

Page(s)

Fed. R. Civ. P. 12(c) ....................................................................................................................1, 6

## INTRODUCTION

Plaintiff Linet Americas, Inc., a subsidiary of Europe's largest hospital bed supplier, filed this lawsuit in December 2021. Linet's complaint alleges more than a decade of competitive wrongs by Hillrom, one of Linet's many American rivals. *See* Dkt. 1 ("Compl."), at 3. But the facts Linet pleads are so old that the case is barred by the very statutes it seeks to enforce. Linet seeks to avoid this conclusion by claiming that the relevant limitations period was tolled by Hillrom's "fraudulent" or inequitable "concealment" of the challenged conduct. *Id*. ¶¶ 386–96. But this claim is inadequately pled on its own terms, and also foreclosed by Linet's remaining allegations about Hillrom's public disclosure of that conduct nearly a decade ago. Accordingly, the Court should deny Linet's tolling claims on the pleadings. *See* Fed. R. Civ. P. 12(c).

Linet's federal antitrust claims are governed by Section 4 of the Clayton Act, which required Linet to file suit within four years of the time its claims accrued. Competition claims accrue when "a reasonable person in plaintiff's position would have discovered the [alleged] injury if they had exercised due diligence." *Sandee's Catering v. Agri Stats, Inc.*, 2020 WL 6273477, at *13 (N.D. Ill. Oct. 26, 2020). The facts alleged in Linet's complaint show that its claims accrued in 2015 at the latest. Shorn of its inflammatory rhetoric, the complaint challenges an allegedly anticompetitive "strategy" that Hillrom conceived in 2010, "foreshadowed" at an investor conference in 2013, and "publicly announced" in 2014. The alleged "strategy" involved several "long-term, exclusive dealing contracts" with "exclusive," "sole-source" provisions that "sent tremors throughout the U.S. hospital industry." Compl. ¶¶ 225–28, 242–47, 298. Linet admits that these facts allowed another rival (UHS) to bring an antitrust suit against Hillrom in 2015, *id*. ¶¶ 158, 298, but seeks to toll the limitations period here on the ground that Hillrom "concealed" the same publicly disclosed contracts challenged in that prior litigation, *id*. ¶ 388.

Linet does not—and cannot—adequately plead this tolling claim. Circuit law prohibits a

plaintiff from avoiding the Clayton Act's four-year limitations period by "bury[ing] [its] head[] in the sand." *Cancer Found., Inc. v. Cerberus Capital Mgmt, LP*, 559 F.3d 671, 676 (7th Cir. 2009). That is precisely what Linet has done. It pleads no facts that, taken as true, state a facially plausible claim that Hillrom "fraudulently concealed" information necessary for Linet to bring this case earlier, let alone pleads any such facts with the detail Rule 9(b) requires. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011). Indeed, Linet fails to plead any facts at all about the threshold element of its fraud-based tolling claim: namely, the revelation that purportedly allowed it to discover its claims just "shortly before the filing of" its December 2021 complaint. Compl. ¶ 386.

These pleading defects are incurable. Even an adequately pled tolling claim suspends the limitations period only until the date on which "the plaintiff[] discover[s], or should, if diligent, have discovered, that [it] had been injured by the defendant[.]" *Cancer Found.*, 559 F.3d at 674. Here, Linet's own allegations establish that the limitations period on the claims could not be tolled beyond 2015, when Linet could have discovered its alleged injury and filed suit just as UHS did. *See* Dkt. 1, *Universal Hosp. Servs., Inc. v. Hill-Rom Holdings, Inc.*, No. 5:15-cv-0032 (W.D. Tex. Jan. 13, 2015). Any attempt to replead Linet's deficient tolling claims would therefore be futile, and the Court should enter judgment for Hillrom on these claims pursuant to Rule 12(c).

## RELEVANT BACKGROUND

Hillrom manufactures and sells medical devices, including various hospital beds. Compl. ¶ 2. Hillrom competes with Linet and others, notably Stryker Corp., to sell beds to U.S. hospitals and other healthcare providers. *Id*. ¶ 54. Linet's primary complaint is that Hillrom used contracts called Corporate Enterprise Agreements ("CEAs") to maintain or leverage its alleged monopoly power in certain U.S. markets for hospital beds from at least 2014.

***Corporate Enterprise Agreement ("CEA") Allegations.*** Linet alleges that CEAs—"long

term, exclusive dealing contracts" between Hillrom and its customers—"constituted the primary and most important prong of Hillrom's anti-competitive strategy." Compl. ¶ 224; *see also id.* ¶ 304 (asserting that CEAs are "the predominant means" of the alleged exclusion). According to Linet, Hillrom's CEA strategy was conceived in 2010 when Linet entered the U.S. market as a "disruptor" hoping to target hospitals "long frustrated by Hillrom's dominance." *Id.* ¶ 204. Linet's entry allegedly posed an "existential threat" to Hillrom's business, *id.* ¶¶ 217–18, to which Hillrom allegedly responded by "resuming the same anti-competitive practices" it used until it was bound by a consent decree "secured by Hillrom's customers in the *Spartanburg* litigation." *Id.* ¶ 220.

Although this decree is a cornerstone of Linet's complaint, Linet never actually quotes it. The decree, which expired in 2009 (just before Linet says it entered the U.S. market to challenge Hillrom's "dominance," *id.* ¶ 204), expressly denied any wrongdoing in settling the relevant 2006 class action claims, and restricted only Hillrom's ability to bundle hospital beds with rental therapy products this case does not involve.[1] Accordingly, the decree does not support the substantive allegations in Linet's complaint.[2] But even taking them all as true, the decree was by Linet's own account a public document that should have alerted Linet to the possibility that Hillrom could "resume" the contracting practices Linet now challenges. Compl. ¶ 224–25 (alleging that Hillrom used CEAs to reprise the contracting practices in *Spartanburg* and "coerce

---

[1] *See Spartanburg Regional Healthcare Sys. v. Hillenbrand Indus. Inc.*, No. 7:03-cv-02141, ECF 316 ¶ 20 (D.S.C. Feb. 3, 2006) (providing only that from 2006 to 2009, Hillrom would "not offer incremental discounts on capital beds or architectural products that are conditioned on a customer renting therapy products from Defendants," and expressly stating that "such products may be sold together" and that "Defendants may continue to offer all other discounts (e.g., volume discounts, early payment discounts, capitation arrangements etc.) as appropriate").

[2] The Court may consider "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *E.g.*, *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). It "may take judicial notice of court filings and other matters of public record when the accuracy of those documents reasonably cannot be questioned." *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017).

the largest [Integrated Delivery Networks, or "IDNs"[3]] in the U.S. into confidential, long-term, exclusive dealing contracts"). Indeed, Linet alleges that Hillrom "foreshadowed this [CEA] strategy" at a 2013 investor conference at which it discussed its plans to continue to "leverage" its "market position," including its "70% install base market share in the acute care [bed] market," *id.* ¶ 226, to grow its business. Linet further alleges that in 2014, Hillrom "publicly announced" its "long-term, exclusive dealing agreements with one of the largest GPOs,[4] HealthTrust, and two of the nation's largest hospital systems, HCA and Providence Health." *Id.* ¶ 242-47. Linet also alleges that by 2016, Hillrom announced that it had "continued to build on the success" of its CEA strategy to become "a 'significant partner' with 'every major IDN in North America.'" *Id.* ¶¶ 250–51.

In short, Linet alleges that beginning in 2014, Hillrom "publicly announced" both the existence of the CEAs *and* the features that Linet challenges as anticompetitive. *Id.* ¶ 242–44. Linet further concedes that through at least 2015, Hillrom continued to "issu[e] press releases when it signed exclusive deals," *id.* ¶ 298, and publicized the deals' "exclusive," "sole-source," and long-lasting terms. *See, e.g.*, *id.* ¶¶ 247, 249. Indeed, Hillrom's 2014 agreements were so well publicized that they supposedly "sent tremors throughout the U.S. hospital bed industry." Compl. ¶ 246; *see also id.* ¶ 280 (alleging recognition by public analysts in 2014).

These open and notorious disclosures led Linet's competitor UHS to sue Hillrom in 2015 for the same alleged antitrust violations Linet pleads here. In that case, Linet's current counsel asserted the same five federal antitrust causes of action Linet now asserts with respect to Hillrom's alleged use of "long-term, difficult-to-terminate, sole-source agreements with GPOs … and related

---

[3] An Integrated Delivery Network (IDN) is "an organization that owns or manages two or more hospitals along with other allied healthcare providers." Compl. ¶ 115.

[4] Group Purchasing Organizations (GPOs) are "purchasing intermediaries that negotiate contracts between" hospitals and other providers and suppliers of medical equipment. Compl. ¶ 104.

hospital associations." Compl. ¶ 158; *see also id.* ¶¶ 197, 298. The UHS complaint challenged the same "bundled, sole-source agreements" with HCA, Providence Health, and HealthTrust that Linet challenges in this case. *See* Compl. ¶ 21, *Universal Hosp. Servs., Inc. v. Hill-Rom Holdings, Inc.*, No. 5:15-cv-0032, ECF No. 1 (W.D. Tex. Jan. 13, 2015) ("UHS Compl."); *see also id.* ¶¶ 65–68. The UHS suit also claimed, as Linet does now, that Hillrom used these contracts to monopolize the market for "standard hospital beds." *Compare* UHS Compl. ¶¶ 36–42, 73, 112–18, *with* Compl. ¶¶ 44–64, 406–16. And UHS supported these claims with the same public statements (*compare* UHS Compl. ¶ 18, *with* Compl. ¶ 226), and prior antitrust lawsuits (*compare* UHS Compl. ¶ 73, *with* Compl. ¶ 220), that Linet cites here.

The UHS litigation continued through 2018, when Linet's complaint pleads details about the challenged agreements that remained readily discoverable. For example, the complaint alleges that Hillrom's Vice President of Enterprise Accounts "boast[ed]" on "his public LinkedIn profile" that between 2017 and 2019, "Hillrom secured 'committed contracts for seven largest deals in history of company's business segments' via a 'corporate agreement'" that "included 'all contracted products with HCA' and exceeded $500 million" in value. *Id.* ¶ 252.

***Ancillary Conduct.*** Aside from CEAs, Linet challenges other alleged conduct—notably Hillrom's acquisitions of complementary businesses, efforts to block interoperability, and supposed disparagement of Linet—that likewise dates back nearly a decade. Compl. ¶ 304; *see generally id.* ¶¶ 305–368. For example, eight of the 12 cited acquisitions occurred between 2003 and 2017. *Id.* ¶ 311. Hillrom publicly announced the Centrella Smart+ bed technology—the target of Linet's interoperability theory—in 2017. *Id.* ¶ 330. And while the complaint does not say when Hillrom allegedly began "disparaging" Linet, *id.* ¶ 304, this asserted "disparagement" was part of the scheme that Linet says Hillrom allegedly hatched to blunt the "success" Linet "quickly realized" after its U.S. market debut in 2010. *Id.* ¶ 217.

5

***Tolling Allegations.*** Despite the cacophony of publicity around the nearly decade-old conduct at issue in this suit, Linet says its claims "could not have been discovered through reasonable inquiry and the exercise of due diligence until shortly before the filing of this Complaint." *Id.* ¶ 386; *see also* Joint Initial Status Rept., ECF 25 at 3 (Apr. 8, 2022) (same). But Linet never identifies the revelation that supposedly unmasked Hillrom's conduct and allowed Linet to bring this case late last year. It simply asserts—after hundreds of allegations describing statements and contracts Hillrom publicly disclosed and litigated over the last ten years—that "[b]y virtue of Hillrom's active and intentional concealment of its anti-competitive conduct, the running of any applicable statute of limitations was tolled under the fraudulent concealment doctrine and the doctrine of equitable estoppel until within the last four years." Compl. ¶ 395.[5]

## LEGAL STANDARD

A "party may move for judgment on the pleadings" after "the pleadings are closed." Fed. R. Civ. P. 12(c). Such motions are "governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Lodholtz v. York Risk Servs. Grp., Inc.*, 778 F.3d 635, 639 (7th Cir. 2015). Accordingly, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible on its face*.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[6]

Antitrust claims are subject to a four-year statute of limitations. *See* 15 U.S.C. § 15b. Accordingly, Linet was required to sue within four years of the date on which it "discover[ed], or by exercise of due diligence would have discovered, that [it] ha[d] been injured and who caused the injury." *United States v. Duke*, 229 F.3d 627, 630 (7th Cir. 2000); *see also In re Copper*

---

[5] Linet also claims its lawsuit is timely because it challenges a "continuing violation." Compl. ¶ 397; *see id.* ¶¶ 398–405. As discussed in Part III below, this allegation undermines Linet's tolling claim.

[6] All emphasis in this brief is supplied unless otherwise noted.

*Antitrust Litig.*, 436 F.3d 782, 789 (7th Cir. 2006). Tolling turns on the question "whether a reasonable person in plaintiff's position would have discovered the [alleged] injury if they had exercised due diligence." *Sandee's Catering*, 2020 WL 6273477, at *13 (citing circuit precedent).

A limitations period may be tolled under the doctrine of fraudulent concealment (sometimes pled as "equitable estoppel") only when the defendant undertook "efforts … *above and beyond* the wrongdoing upon which the plaintiff's claim is founded [] to prevent the plaintiff from suing in time." *Cada v. Baxter Healthcare*, 920 F.2d 446, 451 (7th Cir. 1990). But "to benefit from tolling for fraudulent concealment, [a plaintiff] must show 'that [it] neither knew nor, in the exercise of due diligence, could reasonably have known of the offense.'" *In re Copper*, 436 F.3d at 791 (quoting *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 194–95 (1997)). At the pleadings stage, "it [is] the plaintiff's burden to plead facts of fraudulent behavior which would toll the statute." *Bachmeier v. Bank of Ravenswood*, 663 F. Supp. 1207, 1212 (N.D. Ill. 1987). This requires "more than merely intoning the word fraudulently or … alleging mere nondisclosure." *Bokros v. Assocs. Finance, Inc.*, 607 F. Supp. 869, 873–74 (N.D. Ill. 1984) (citations and internal quotation marks omitted). The plaintiff must plead fraudulent concealment "with particularity" under Federal Rule of Civil Procedure 9(b). *Pitts v. Unarco Indus., Inc.*, 712 F.2d 276, 279 (7th Cir. 1983); *see Jones v. Hoosman*, 2006 WL 1302524, at *2 & n.4 (N.D. Ill. May 9, 2006) (collecting cases). This Rule 9(b) standard includes the "who, what, when, where, and how" of the allegedly fraudulent acts. *Pirelli Armstrong*, 631 F.3d at 441.

## ARGUMENT

If ever a plaintiff has "pled itself out of court" by "admit[ting] all the ingredients" of a statute of limitations defense, it is Linet. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 941–42 (7th Cir. 2012) (affirming dismissal of time-barred claim). It challenges allegedly anticompetitive conduct that—on the face of its own pleadings—was conceived in 2010 and

publicly disclosed by 2014 at the latest. Aware that the Clayton Act's four-year limitations period would ordinarily bar a 2021 suit on such claims, Linet asserts that Hillrom stopped the clock by "actively and fraudulently conceal[ing] its anti-competitive conduct." Compl. ¶ 388. But Linet does not come close to detailing the required "who, what, when, where, and how" of this alleged concealment. *Pirelli Armstrong*, 631 F.3d at 441. Nor could a more detailed amendment salvage its tolling claim because Linet has already alleged facts that foreclose tolling after 2015 as a matter of law. *See Cook Inc. v. Boston Sci. Corp.*, 2002 WL 335314, at *3 (N.D. Ill. Feb. 28, 2002) (dismissing claims "contradict[ed]" by press release incorporated by the complaint); *House of Brides, Inc. v. Alfred Angelo, Inc.*, 2014 WL 64657, at *5 (N.D. Ill. Jan. 8, 2014) (similar).

## I. LINET DOES NOT PLEAD THE DISCOVERY PREDICATE FOR TOLLING

Linet's conspicuous "failure to plead any facts regarding when and how [it] discovered [Hillrom's] alleged wrongdoing" is alone fatal to its tolling claim. *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880–81 (8th Cir. 2011) (dismissing complaint as untimely because of this defect). Circuit law is clear. The statute of limitations is tolled only until "the plaintiff[] discover[s], or should, if diligent, have discovered, that [it] had been injured by the defendant[]." *Cancer Found.*, 559 F.3d at 674. Accordingly, Rule 9(b) requires plaintiffs to specify "when [they] discovered" the alleged fraudulent conduct "so that the Court may evaluate whether [the plaintiff] could have discovered it through the exercise of due diligence." *Greer v. Bank One*, 2002 WL 1732366, at *3 (N.D. Il. July 25, 2002). For over a century, this rule has required "distinct averments as to the time when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery is, so that the court may clearly see whether, by ordinary diligence, the discovery might not have been before made." *Wood v. Carpenter*, 101 U.S. 135, 140 (1879).

Linet pleads no such facts. It simply offers the bare recital that it did not discover Hillrom's alleged conduct "until shortly before the filing of this Complaint." Compl. ¶ 386. This conclusory

assertion alone renders Linet's tolling claim inadequately pled, *see, e.g.*, *Summerhill*, 637 F.3d at 880–81; *Greer*, 2002 WL 1732366, at *3, and confirms that the claim is facially implausible. *Iqbal*, 556 U.S. at 678. The assertion that Linet "could not have discovered [Hillrom's allegedly anticompetitive conduct] through reasonable inquiry" until shortly before December 2021, Compl. ¶ 386, is irreconcilable with the UHS suit and other facts Linet says Hillrom publicized years ago. *See, e.g.*, *Gorgoni v. OneWest Bank, FSB*, 2013 WL 1278475, at *2 (N.D. Ill. Mar. 28, 2013) (plaintiffs "are not entitled to proceed with a federal case by positing that one of two situations occurred, one of which would entitle them to relief and one of which would not") (citing cases).

## II. LINET'S REMAINING ALLEGATIONS FAIL TO STATE A TOLLING CLAIM

Linet devotes less than ten paragraphs to its fraudulent concealment and estoppel allegations, asserting with scant detail that Hillrom hid its conduct from Linet by including confidentiality clauses in its CEAs; avoiding public disclosure of the CEAs' "true nature"; pressuring its customers into silence; and falsely claiming to comply with the antitrust laws. *See* Compl. ¶¶ 237, 387–94. None of these allegations, even taken as true and indulging every inference in Linet's favor, is sufficient to plead a tolling claim.

### A. The Alleged CEA Confidentiality Clauses Do Not Support Tolling

Linet asserts that Hillrom concealed its conduct principally by "insist[ing] on strict confidentiality clauses in its CEAs." Compl. ¶ 391. This allegation fails, first and foremost, because Linet's other allegations confirm that the alleged clauses did *not* prevent Linet from discovering the contracts, including their allegedly anticompetitive terms. Specifically, Linet admits that the "sole-source" and "exclusive" terms on which it now bases its complaint were publicly announced from 2014 forward. *See* Compl. ¶¶ 242–44, 250–52, 394. The announcement of these terms sufficed to put Linet on notice of its claims, regardless of the alleged confidentiality

9

provisions that Hillrom and its customers might otherwise have signed.[7] *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 385 (7th Cir. 2010) (no fraudulent concealment when "the obstructive behavior occurs after the plaintiff's inquiry has reached the point at which he has discovered that he has a claim"); *Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1075–76 (N.D. Cal. 2016) (no fraudulent concealment when "employees spoke openly about" challenged conduct despite alleged agreements to keep it secret); *see also* Part III *infra*. Indeed, Linet's current complaint confirms that the confidentiality clauses did *not* prevent Linet from suing. Linet had no problem filing this case in December 2021 with the alleged provisions in place.

In any event, Linet's confidentiality allegations do not state a fraud-based tolling claim. Because concealment must be *fraudulent*, it requires "*wrongful* concealment of [the defendant's] actions," *Erickson v. Painewebber Inc.*, 1990 WL 17144, at *10 (N.D. Ill. Feb. 1, 1990), which means "efforts ... *beyond* the wrongdoing upon which the plaintiff's claim is founded." *Cada*, 920 F.2d at 451; *see also Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 446–47 (6th Cir. 2012) (fraudulent concealment requires "some trick or connivance intended to exclude suspicion and prevent inquiry"). Even accepting its allegations, Linet pleads no such conduct because there is nothing "wrongful" about contractual confidentiality clauses. Indeed, "final contract terms are usually confidential" in healthcare agreements. *See Saban v. Caremark Rx, L.L.C.*, 780 F. Supp. 2d 700, 718 (N.D. Ill. 2011); *see also FTC v. OSF Healthcare Sys.*, 2012 WL 1144620, at *2–10 (N.D. Ill. Apr. 5, 2012) (granting various motions to seal hospital contracts in antitrust case because terms were kept confidential in ordinary course of business). Accordingly, courts have accepted tolling theories in cases involving confidentiality agreements only when supported by affirmative—and specifically pled—acts of concealment far *beyond* those alleged here. *See, e.g.*,

---

[7] Linet's conclusory assertion that these confidentiality provisions were "full of teeth," Compl. ¶ 299, is inadequately pled and cannot save its tolling claim. *See Pirelli Armstrong*, 631 F.3d at 442.

*In re Copper*, 436 F.3d at 791 (defendant did not merely enforce nondisclosure terms, but also made false statements to authorities, destroyed evidence, and paid a key witness for silence).

**B.    Hillrom's Alleged Non-Disclosure of Its CEAs Also Does Not Support Tolling**

Unable to plead an "active[]" concealment claim, Compl. ¶ 388, Linet resorts to asserting that Hillrom hid its wrongdoing by "never publicly disclos[ing] the existence of CEAs." *Id*. ¶ 393; *see also* ¶¶ 387–89, 394 (alleging that Hillrom's agreements are "self-concealing," "not publicly available," or "refer[red] to … generically").  This claim is the definition of facially implausible.

First, as detailed above, Linet's complaint establishes that the "existence of the CEAs" was "publicly disclosed" on multiple occasions starting in 2014. *See supra* at 2-6; Compl. ¶¶ 243–44, 262, 304, 411.  Indeed, Linet pleads that by 2016 Hillrom had publicly announced agreements allegedly involving "sole source" or "exclusive partnership[s]" with "every major IDN in North America."  Compl. ¶¶ 243–44, 251.  These allegations belie Linet's assertion that Hillrom "never publicly disclosed" the agreements, and should foreclose *any* fraud-based tolling claim because the allegations establish that Hillrom could have discovered its purported antitrust claims (thus starting the limitations period) in 2015 if not earlier.  *See* Part III *infra; Thomas v. Farley*, 31 F.3d 557, 559 (7th Cir. 1994) (plaintiff cannot "save[]" itself by alleging a "conclusion" that is "inconsistent with the [alleged] facts").

Second, even if Linet's concealment claims could trump the contrary allegations and evidence in its own complaint, *but see Cook*, 2002 WL 335314, at *3, these claims simply assert that Hillrom "withheld information from the public," which is legally "*insufficient* to trigger the fraudulent concealment doctrine."  *Pitts*, 712 F.2d at 279 (collecting cases); *Brandolino v. Schlak*, 2022 WL 602474, at *3 (N.D. Ill. Mar. 1, 2022) ("'mere silence' or failure to notify the plaintiff of their cause of action" is insufficient to toll the statute of limitations).

### C.    Linet's Allegations of Intimidation Do Not Support Tolling

In an effort to augment its deficient contract-related tolling allegations, Linet vaguely alleges that Hillrom "muzzled customers," "threatened them not to disclose the nature of their agreements," and "used threats and intimidation to eject Linet salespeople out of hospitals." Compl. ¶ 392.  But these allegations, too, fail to provide any of the detail required to plead a fraud-based tolling claim under Rule 9(b) and circuit law.  The Seventh Circuit has held that to satisfy Rule 9(b)'s heightened pleading standard, a complaint must describe "in detail" "the identity of the person making the misrepresentation," the "time [and] place" it allegedly occurred, and the "method by which [it] was communicated to [the recipient]."  *Hefferman v. Bass*, 467 F.3d 596, 601–02 (7th Cir. 2006).  Linet's complaint pleads none of these facts.  It does not say who made purported threats on Hillrom's behalf, which customers were "muzzled," or which hospitals "eject[ed]" Linet's salespeople.  Compl. ¶ 392.  Nor does it describe what "pressure tactics" were employed, *id.*, or even when the alleged intimidation took place.

Courts in this district routinely reject fraudulent concealment claims for lacking these details.  For instance, in *Greer v. Bank One*, the court refused to toll the statute of limitations because the plaintiff "failed to allege the name" of the bank representative who issued an allegedly misleading notice, and otherwise "failed to identify the manner" in which the notice was misleading.  2002 WL 1732366, at *3.  Likewise in *Jones v. Hoosman*, the court rejected claims that the defendant fraudulently concealed his status as corporate *alter ego* because the plaintiff's six "conclusory" paragraphs about the alleged concealment failed to describe "how [the] defendant concealed material information," or "when and where the purported fraudulent conduct occurred." 2006 WL 1302524, at *2–3.  Here, as in those cases, the "absence of any necessary detail" about the alleged threats "renders [Linet's] pleading deficient" as a matter of law.  *Id.* at *2.

### D.     Hillrom's Denials of Antitrust Liability Do Not Support Tolling

Last but not least, Linet claims that Hillrom concealed its alleged misconduct through "false[] claim[s]" that it "engages in competitive bidding," "operates in a highly competitive industry," and "complies with the antitrust laws."  Compl. ¶ 393.  These alleged statements do not support a tolling claim.  First, as with all of Linet's allegations, the necessary details are lacking. Beyond vague references to "financial disclosures" and "leadership," *see id.*, Linet is silent regarding "the identity of the person making the misrepresentation[s]" and the "time [and] place" they were made.  *Hefferman*, 467 F.3d at 601; *see also, e.g.*, *Lincoln Nat'l Bank v. Lampe*, 414 F. Supp. 1270, 1278–79 (N.D. Ill. 1976) (dismissing as "fatally defective" a fraud claim that failed to allege "the time, place, circumstances and contents" of allegedly misleading conversations).

Further, even if Linet could plead Hillrom's alleged statements of competitive activity with greater specificity, the allegations would not support tolling because statements that amount to a "mere denial" of wrongdoing cannot suspend the statute of limitations.  *Singletary v. Cont'l Ill. Nat'l Bank & Trust Co.*, 9 F.3d 1236, 1241 (7th Cir. 1993).  Otherwise, "statutes of limitations would be toothless" except where "the defendant acknowledged liability."  *Id.*  To avoid rendering the Clayton Act's four-year limitations period a dead letter, courts have held that "a defendant's statements in routine public filings that [it] obeys the antitrust laws and participates in a competitive market" do *not* "suffice to show fraudulent concealment,"  *Garrison*, 159 F. Supp. 3d at 1078–81 (rejecting concealment claims).  Fraudulent concealment requires something "far *beyond* simple denials" of allegedly unlawful conduct.  *In re Copper*, 436 F.3d at 792; *In re Sulfuric Acid Antitrust Litig.*, 743 F. Supp. 2d 827, 854–55 (N.D. Ill. 2010).  Here, the statements that Linet attributes to Hillrom amount to assertions of lawful conduct or "denial[s] of wrongdoing" that are legally insufficient to support a fraud-based tolling claim.  *Id.* at 854.

For all of the foregoing reasons, Linet's tolling allegations are facially implausible and inadequately pled under Rules 9(b) and 12(c).

## III. LINET'S AFFIRMATIVE ALLEGATIONS FORECLOSE A TOLLING CLAIM

Allowing Linet to amend its deficient tolling allegations to address the foregoing pleading defects would be futile because even a properly pled claim would not permit tolling after 2015. The reason is that fraud or equity-based tolling doctrines suspend statutory limitations only until the date on which "a reasonable person in plaintiff's position would have discovered the [alleged] injury if they had exercised due diligence." *Sandee's Catering*, 2020 WL 6273477, at *13; *In re Copper*, 436 F.3d at 791 (no fraudulent concealment or tolling in such circumstances). The problem with Linet's tolling claim goes beyond the facts Linet does *not* plead. *See* Part II *supra*. Tolling is legally barred by the facts Linet *does* plead. *See* Compl. ¶¶ 243, 246–48, 298. Specifically, Linet alleges that Hillrom "disclosed [the challenged contracts and] terms to the public" at least seven years ago. *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 748 (E.D. Pa. 2014).[8] In so doing, Linet's allegations establish that "the material terms of the [agreements were] *not* concealed" from Linet, and that Linet therefore cannot plead a fraud or equity based tolling claim as a matter of law. *Id.* (rejecting fraudulent concealment where operative facts had been publicly disclosed); *In re Ciprofloxacin Hydrochl. Antitrust Litig.*, 261 F. Supp. 2d 188, 223–27 (E.D.N.Y. 2003) (same).

Indeed, the public disclosures alleged here are at least as extensive as in cases the Seventh Circuit has found "hopelessly time barred." *Cancer Found.*, 559 F.3d at 675–76 (affirming dismissal where "the most cursory investigation" by the plaintiffs would have uncovered suits

---

[8] *See* Compl. ¶¶ 243, 262, 304, 411 (alleging that the CEAs' "predominant" exclusionary mechanisms were their "exclusivity provisions," and "long-term" duration, both of which were publicized including in "June 2014" when "Hillrom publicly announced" a "multi-year" "sole-source" agreement "with HCA, the nation's largest health system"); *id.*¶ 244 (alleging that "[t]hree months later, in September 2014, Hillrom publicly announced a stunningly long, exclusive dealing agreement with Providence Health").

identifying the cause of their injury). Linet's complaint—including its reference to the 2015 UHS suit, which pled the same antitrust claims based primarily on the same conduct alleged here—confirms that the conduct at issue in this case was not just discoverable, but widely publicized and *actually discovered* by another competitor, in the mid-2010s. *Id.*; *see also Reveal Chat Holdco, LLC v. Facebook, Inc.*, 471 F. Supp. 3d 981, 992–94 (N.D. Cal. 2020) (plaintiffs could not challenge acquisitions and policies that had been "widely publicized"); *Braman v. The CME Group, Inc.*, 149 F. Supp. 3d 874, 884 (N.D. Ill. 2015) (antitrust claims accrued when *Wall Street Journal* article revealed existence of loophole exploited by alleged conspirators).[9] Thus, no amendment can salvage Linet's tolling claim. *See The Cancer Found. Inc. v. Cerberus Cap'l Mgmt., L.P.*, 2008 WL 927989, at *1, *8 (N.D. Ill. Apr. 4, 2008) (dismissing case with prejudice where plaintiffs "should have known of the existence of their claims and obviously did know"); *Moorehead v. Deutsche Bank AG*, 2011 WL 4496221, at *10 (N.D. Ill. Sept. 26, 2011) (similar).[10]

## CONCLUSION

For the foregoing reasons, Linet's fraud and equitable tolling claims are inadequately pled, and any attempt to replead them would be futile. Accordingly, the Court should enter judgment in Hillrom's favor on Linet's tolling claims pursuant to Rule 12(c).

---

[9] Far from aiding its cause, Linet's continuing violation tolling theory, Compl. ¶ 397, confirms that Linet knew enough by 2015 to bring this suit. The continuing violation doctrine requires a "separate new overt act" that "is part of [an original] violation and that injures the plaintiff," *Klehr*, 521 U.S. at 189; new acts that merely reaffirm the original injury do not count. *See, e.g.*, *Grand Rapids Plastics, Inc. v. Lakian*, 188 F.3d 401, 405–06 (6th Cir. 1999). By alleging that all CEAs executed between 2014 and 2021 constitute a string of continuing violations, Compl. ¶ 397, Linet thus contends that Hillrom's original CEAs were (in Linet's view) actionable antitrust violations. *See* Compl. ¶¶ 242, 251. Linet's continuing violation claim thus presumes the very fact that forecloses its fraud-based tolling claim: That the CEAs Hillrom publicly disclosed (and UHS challenged) in or around 2015 provided a sufficient basis for an antitrust suit at that time. *See Cancer Found.*, 559 F.3d at 674–75; *In re Copper*, 436 F.3d at 789–91.

[10] Although Linet does not plead a claim for equitable tolling *per se*, its public disclosure allegations would also foreclose such a claim. *See Jay E. Hayden Found.*, 610 F.3d at 387 (equitable tolling is "where, through no fault of the defendant (unlike equitable estoppel), the plaintiff has though diligent been *unable to discover the injury or injurer* within the statutory period.").

Dated: <u>May 27, 2022</u>

GIBSON, DUNN & CRUTCHER LLP

*/s/ Elizabeth P. Papez*

Elizabeth P. Papez
Kristen C. Limarzi (*pro hac vice*)
Melanie L. Katsur (*pro hac vice* pending)
Harry R. S. Phillips (*pro hac vice* pending)
1050 Connecticut Ave., NW
Washington, DC 20036
Tel: 202.955.8500
Email: EPapez@gibsondunn.com
KLimarzi@gibsondunn.com
MKatsur@gibsondunn.com
HPhillips2@gibsondunn.com

Eric J. Stock (pro hac vice)
Ben A. Sherwood (*pro hac vice* pending)
200 Park Avenue
New York, NY 10166
Tel: 212.351.4000
Email: EStock@gibsondunn.com
BSherwood@gibsondunn.com

Caeli A. Higney (pro hac vice)
Julian W. Kleinbrodt (*pro hac vice* pending)
555 Mission Street, Suite 3000
San Francisco, CA 94105
Tel: 415.393.8200
Email: CHigney@gibsondunn.com
JKleinbrodt@gibsondunn.com

A&G LAW LLC

Robert M. Andalman
542 South Dearborn Street
10th Floor
Chicago, IL 60605
Tel: 312.341.3900
Email: RAndalman@AandGlaw.com

*Attorneys for Defendants Hill-Rom Holdings, Inc.,*
*Hill-Rom Company, Inc., and Hill-Rom Services,*
*Inc.*