**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

LINET AMERICAS, INC.,

Plaintiff,

v.

HILL-ROM HOLDINGS, INC.; HILL-ROM COMPANY, INC.; HILL-ROM SERVICES, INC.,

Defendants.

Case No. 21 Civ. 6890

Hon. Martha M. Pacold

Hon. Jeffrey T. Gilbert

**HILLROM DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY FROM PLAINTIFF LINET**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..... 1

BACKGROUND ..... 4

I. LINET AGREES TO DESIGNATE FOUR EXECUTIVES AS CUSTODIANS ..... 4

II. MONTHS AFTER THE AGREED DESIGNATIONS, LINET DISCLOSES THAT IT DELETED RELEVANT EXECUTIVES' ESI IN EARLY 2020 ..... 6

III. LINET REFUSES TO ANSWER ESSENTIAL QUESTIONS ABOUT ITS DISPOSAL OF THE EXECUTIVES' ESI ..... 6

ARGUMENT ..... 8

I. THE RECORD ESTABLISHES AN ADEQUATE FACTUAL BASIS FOR DISCOVERY CONCERNING LINET'S PRESERVATION OBLIGATIONS ..... 8

II. THE COURT SHOULD COMPEL LINET TO RESPOND TO HILLROM'S PRESERVATION-RELATED DISCOVERY REQUESTS ..... 11

A. The Court Should Order Linet To Produce Its Retention And Deletion Policies From January 2018 To April 2020 ..... 11

B. The Court Should Order Linet To Produce Its Engagement Letter and Certain Other Correspondence With Hunton Andrews Kurth ..... 12

C. The Court Should Require Linet To Supplement Its Interrogatory Responses Regarding Alternatives For The Deleted ESI ..... 14

CONCLUSION ..... 15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*American Council of Blind Metropolitan Chicago v. City of Chicago*,
2021 WL 5321054 (N.D. Ill. Nov. 16, 2021) ....................14

*AOT Holding AG v. Archer Daniels Midland Company*,
2021 WL 6118175 (C.D. Ill. Sept. 3, 2021) ....................8, 9, 11

*In re Caesars Entertainment Operating Co., Inc.*,
2018 WL 2431636 (N.D. Ill. Bankr. May 29, 2018) ....................9, 11

*Cohn v. Guaranteed Rate, Inc.*,
318 F.R.D. 350 (N.D. Ill. 2016)....................9,13, 14

*Gruenstein v. Browning*,
2022 WL 3213261 (N.D. Ill. June 21, 2022) ....................9

*Hill v. City of Chicago*,
2011 WL 320204 (N.D. Ill. Jan. 31, 2011) ....................11

*Innis Arden Golf Club v. Pitney Bowes, Inc.*,
257 F.R.D. 334 (D. Conn. 2009)....................14

*Jones v. Dalton*,
2011 WL 13363748 (D.N.J. May 10, 2011) ....................13

*Lucas v. Gold Standard Baking, Inc.*,
2017 WL 3394726 (N.D. Ill. Aug. 8, 2017) ....................13

*Medlock Southwest Mgt. Corp. v. Federal National Mortgage Ass.*,
2006 WL 8434270 (E.D. Tex. 2006) ....................13

*Menotti v. Metropolitan Life Ins. Co.*,
2010 WL 375619 (N.D. Ill. Jan. 25, 2010) ....................12

*In re Mercury Finance Co. of Illinois*,
1999 WL 495903 (N.D. Ill. Jul 12, 1999)....................12

*Peerless Industries, Inc. v. Crimson AV, LLC*,
2014 WL 3500460 (N.D. Ill. Mar. 13, 2014)....................9

*Pruitt v. Personnel Staffing Groups, LLC*,
2017 WL 11639764 (N.D. Ill. Aug. 28, 2017) ....................14

Page(s)

*Rossman v. EN Engineering, LLC*,
335 F.R.D. 171 (N.D. Ill. 2020)....................14

*Sloan Valve Co. v. Zurn Industries, Inc.*,
2012 WL 1886353 (N.D. Ill. May 23, 2012)....................11, 15

*YCB Intern., Inc. v. UCF Trading Co., Ltd.*,
2012 WL 3069683 (N.D. Ill. Jul. 25, 2012)....................9, 14

**OTHER AUTHORITIES**

Jan. 31, 2023 Press Release, "Stryker Reports 2022 Operating Results and 2023 Outlook," *available at* https://investors.stryker.com/press-releases/news-details/2023/Stryker-reports-2022-operating-results-and-2023-outlook/default.aspx....................2

**RULES**

Fed. R. Civ. P. 26(b)....................8

Defendants ("Hillrom") hereby respectfully move to compel Plaintiff Linet Americas, Inc. ("Linet") to respond to discovery regarding Linet's disposal of key custodial evidence. *See* Declaration of Eric J. Stock in Support of Hillrom's Motion to Compel ("Stock Decl.") Ex M (Hillrom's Second Set of Reqs. for Prod.); Ex. N (Hillrom's First Set of Interrogatories); Ex. Q (Hillrom's Third Set of Reqs. for Prod.).

## PRELIMINARY STATEMENT

It is undisputed that in early 2020 Linet disposed of emails and other electronically stored information (ESI) from several agreed document custodians in this case, including one of Linet's founders who was its CEO for over ten years. As a result, Linet has no documents from any of the custodians it designated for discovery about facts—such as Linet's awareness of the contracts at issue in this suit—that could render this suit time barred. Linet's disposal of this ESI is particularly concerning for two reasons. First, it is undisputed that at the time the ESI was lost, many of the contracts in suit had been publicly disclosed. Second, it is undisputed that at least two custodians' ESI was discarded *after* Linet had entered into some form of engagement with Hunton Andrews Kurth, and that the same Hunton lawyer who serves as Linet's lead counsel here had previously sued Hillrom on the same claims and contracts Linet raises in this case.

These undisputed facts establish a reasonable basis for discovery about whether Linet had a duty to preserve information relevant to this case when it disposed of ESI from its former CEO, another top executive, and potentially others in early 2020. Hillrom timely and properly served such discovery late last year. But this motion is necessary because Linet refuses to respond to this discovery in accordance with the rules and applicable law. To start, Linet refuses to answer timely and proportional requests for facts necessary to determine whether its disposal of ESI violated its duty to preserve. Fed. R. Civ. P. 37(e). In addition, Linet refuses to answer interrogatories seeking information on whether the lost ESI is available from alternative sources. *See id.*

The missing ESI is central to this case, which seeks to blame Hillrom for the fact that many U.S. hospitals have chosen to purchase their patient beds from Linet's competitors rather than Linet. Linet's principal claim is that Hillrom has unlawfully foreclosed Linet from competing for certain sales opportunities by "coerc[ing] the largest [hospital Integrated Delivery Networks, or] IDNs in the U.S. into confidential, long-term exclusive dealing contracts." ECF No. 1 ¶ 224 (Compl.). But documents Linet has produced in discovery, along with public filings from its competitors, eviscerate this claim. Linet's productions [REDACTED] *See* Part I *infra*. And Linet's documents, along with public filings from its rivals, show that [REDACTED]. In particular, Michigan-based Stryker Corporation—[REDACTED]—is reporting excellent hospital bed sales. In early 2023, Stryker's SEC filings reported "outstanding organic sales growth" for hospital beds in the fourth quarter of 2022, and a consolidated net sales increase of 7.8% in 2022 with "continued positive sales momentum" expected in 2023.[2]

The custodial ESI that Linet discarded in early 2020 is crucial to assessing Linet's claim that, contrary to the facts described above, its weak position in the highly competitive U.S. marketplace for hospital beds is the result of anticompetitive contracts rather than customer choice. The missing ESI is also crucial to assessing when Linet knew about the contracts at the heart of this suit. The custodians at issue are four key Linet employees with deep knowledge of Linet's sales strategies, competitive positioning, and customer relationships. Linet agreed to produce

---

[1] Stock Decl. Ex. (hereinafter "Ex.") I (LINET_00001718) at LINET_00001719.

[2] Jan. 31, 2023 Press Release, "Stryker Reports 2022 Operating Results and 2023 Outlook," *available at* https://investors.stryker.com/press-releases/news-details/2023/Stryker-reports-2022-operating-results-and-2023-outlook/default.aspx.

information from these custodians by July 2022. But in October and November 2022, more than three months after the parties had finalized their custodians, Linet informed Hillrom that Linet had disposed of ESI from the four individuals in question, including as recently as the first quarter of 2020.

Linet stated that the ESI was deleted in accordance with Linet's "standard practice" before this litigation began. But the Federal Rules of Civil Procedure do not require Hillrom (or this Court) to take Linet's word for that. Nor is a party's deletion pursuant to "standard practice" permissible if that party was on notice of litigation that triggered its duty to preserve evidence. The information Linet has disclosed to date requires further inquiry because it suggests that Linet may well have anticipated this litigation—and thus had a duty to preserve the ESI—at least by early 2020. The limited fact discovery Hillrom seeks is necessary to assess this question and the potential prejudice of the ESI destruction to Hillrom, particularly given Linet's (unjustified) push to expand discovery in this action to a pre-2018 period that is both outside the limitations period and inextricably entwined with the ESI Linet has discarded.[3]

The potential prejudice is significant because, among other things, Linet admits the ESI is relevant to Hillrom's claim that this entire suit is time-barred. Linet's complaint focuses on Hillrom contracts that were publicly disclosed—and litigated by Linet's lead counsel here—during the period from 2014 to 2018. Linet's disposal of ESI as recently as early 2020 from key business principals—resulting in a total absence of documents from the custodians Linet agreed to designate for pre-2018 discovery—is extremely concerning and requires at least Linet's responses to Hillrom's requests for: (1) Linet's document preservation and retention policies from January

[3] Hillrom contends the proper scope of discovery is December 2017 to August 2022 because the tolling and statute-of-limitations issues raised in Hillrom's Rule 12(c) motion demonstrate that discovery pre-dating that time period is neither relevant nor proportional to the needs of this case.

2018 to April 2020, (2) a copy of Linet's January 2020 engagement letter with Hunton (redacted as necessary to protect any privileged information), and (3) at least the dates, participants in, and subject matter of communications between Linet and Hunton from December 1, 2019 to April 2020 concerning Hillrom. The undisputed facts addressed in this motion also require Linet to answer Hillrom's interrogatories about the availability of alternative sources for the ESI Linet deleted. Because Linet continues to refuse to provide this information in violation of its discovery obligations, Hillrom respectfully requests that the Court grant this motion to compel.[4]

## BACKGROUND

### I. LINET AGREES TO DESIGNATE FOUR EXECUTIVES AS CUSTODIANS

The parties' agreed custodian list focused on Linet principals responsible for (1) crafting Linet's competitive strategy; (2) formulating its customer contracting practices; and (3) handling customer complaints. Hillrom requested, and Linet agreed, to the designation of 20 document custodians, including the four at issue in this motion: Colin Bain, Mark McClam, Jeffrey A. Bell, and Theresa O'Hollaren.

***Colin Bain.*** Mr. Bain founded Linet Americas and was its CEO for over 10 years, [redacted] ; Ex. A (Bain LinkedIn). Linet listed Bain on its initial disclosures as someone with discoverable information that Linet may use to support its claims. Ex. L at 2. In the event this case is limited to conduct that occurred in the four years prior to the filing of Linet's December 2021 complaint, Mr. Bain was Linet's CEO for roughly *half* of that period. If the Court determines discovery may extend to periods before December 2017, Mr. Bain's importance will expand dramatically, as he and Mr. McClam seem to be the Linet custodians most likely to have documents relevant to Linet's U.S. competitive history

[4] In accordance with LR 37.2, the parties conferred about Hillrom's discovery requests on February 24, 2023. Hillrom offered certain compromises that Linet finally rejected on March 2, 2023.

[5] All tenure dates in this motion are based on the tenure dates produced by Linet in Ex. F.

and Hillrom's statute of limitations defense.

***Mark McClam***. Mr. McClam was also a founding member of Linet Americas and [redacted] He was "[r]esponsible for developing IDNs, GPOs, sales strategies and corporate sales training." Ex. B (McClam LinkedIn). His responsibilities exposed him to the heart of Linet's claims. *See, e.g.*, Compl. ¶ 224 ("The primary and most important prong of Hillrom's anti-competitive strategy was to coerce the largest IDNs in the U.S. into confidential, long-term, exclusive dealing contracts covering the Relevant Products"); *id.* ¶ 231 ("because IDNs often influence GPOs, Hillrom knew that it could then use the IDNs to ultimately oust Linet from the GPO distribution channel").

***Theresa O'Hollaren***. Ms. O'Hollaren was Linet's [redacted]. According to Linet's website, Ms. O'Hollaren worked directly with Linet's customers on safety issues—including "fall prevention," "pressure ulcer[s]" and "safety monitor[ing]"[6]—that Linet's own documents [redacted]

***Jeffrey A. Bell***. Mr. Bell was Linet's [redacted] He "led the negotiations to secure first-time Group Purchasing agreements with every national GPO," "[g]rew revenues of existing products over 85% against deeply entrenched competitors,"

[6] https://www.linetamericas.com/en-US/about-us/blog/meet-the-clinical-team.

and "[c]reated and launched [a] new marketing strategy for Linet". Ex. C (Bell LinkedIn).

## II. MONTHS AFTER THE AGREED DESIGNATIONS, LINET DISCLOSES THAT IT DELETED RELEVANT EXECUTIVES' ESI IN EARLY 2020

Linet agreed to the designation of Messrs. Bain, McClam, Bell and Ms. O'Hollaren (the "Four Custodians") as document custodians by July 2022. And Linet agreed to search only ESI belonging to Bain, McClam, and O'Hollaren for documents responsive to Defendants' Request for Production ("RFP") No. 24,[7] which seeks pre-December 28, 2017 documents in support of Hillrom's defense that Linet's claims are time-barred. Ex. J (7/21 Email).

In September 2022, Hillrom designated Bain, McClam, and O'Hollaren as "Priority Custodians" under the ESI Protocol. Ex. K (9/26 Email). In October/November, Linet's counsel stated that, "based on [an] initial investigation, Linet has informed us that it did not retain" these custodians' or Mr. Bell's "ESI when they left the company." Ex. S (10/25 Email); Ex. U at 2.

## III. LINET REFUSES TO ANSWER ESSENTIAL QUESTIONS ABOUT ITS DISPOSAL OF THE EXECUTIVES' ESI

Hillrom promptly sought additional information about Linet's disposal of this ESI. Linet responded that its "standard practice" for "former employees" was to "deactivate their accounts upon departure," maintain the ESI in "disabled mode" for "three months," and then at some point after that "delete[]" the ESI. Ex. T (11/3 Ltr.) at 1. Linet also explained that the ESI for the custodians was not transferred to Linet's new email system when Linet conducted a "systems and data" migration from December 2019 to April 2020, and that the custodians' ESI "would have been deleted no later than April 2020" because that is when Linet disposed of its old server. Ex. U at 1–2; Ex. P (Interr. Objections) at 10.

[7] There are no other Linet employees whose positions *and tenures* are comparable to those of Messrs. Bain, McClam, and Ms. O'Hollaren. All other Linet employees whose tenure pre-dated 2017 are low-level employees who would not have engaged in executive-level decision-making about competition. *See* Ex. U (11/22 Ltr.) at 3 (proposing such personnel as alternative custodians).

These responses raised more questions than they answered. So in December 2022 Hillrom served Linet with a targeted set of interrogatories and document requests. The interrogatories asked: (1) when and how Linet disposed of the Four Custodians' ESI; (2) whether the deleted emails were available through alternative sources/backup tapes, and (3) when Linet retained Hunton to advise on issues relevant to this suit. Ex. N. The document requests sought, *inter alia*: (1) the retention/deletion policies pursuant to which Linet said it disposed of the ESI; (2) documents sufficient to show how and when Linet disposed of the ESI; and (3) documents sufficient to show whether Linet used backup tapes or other alternative storage for emails for the Four Custodians' ESI. Ex. M.

On January 12, 2023, Linet served objections, provided only partial answers to the interrogatories, and refused to produce *any* documents. *See generally,* Ex. P. Notably, Linet's interrogatory responses admitted that Linet's first engagement letter with Hunton was on January 9, 2020, but did not disclose the purpose of that engagement. *Id.* at 12. Linet also stated the lost emails might be stored on its "anti-spam" system, but that they were not stored "in a manner that would allow them to be accessed or recovered" because "to locate the metadata record for any particular email, it would be necessary to identify the date, time, and person associated with the specific email." *Id*. at 11.

In an effort to navigate Linet's discovery objections and obtain additional information necessary to assess Linet's preservation duties without burdening the Court, Hillrom sent Linet a letter on January 23, 2023 proposing that Linet produce:

- Document retention/deletion policies for December 2019 to April 2020, which is when Linet claims Bain's and McClam's ESI was deleted. Ex. V (1/23 Ltr.) at 1–2.
- A copy of the January 9, 2020 engagement letter with Hunton. *Id.* at 3.
- Documents and communications between Linet and Hunton (1) regarding the January 9, 2020 engagement letter or (2) exchanged between December 1, 2019 and January

31, 2020 in relation to potential claims against Hillrom. *Id*. at 3–4.

Hillrom also requested that Linet provide further detail about (1) the anti-spam software where some lost ESI may still reside, and (2) its parent company's archives/backup systems. *Id.* at 2–3.

On February 2, 2023, Linet refused to produce any of the requested documents. Ex. W (2/2 Ltr.). Linet did agree to provide Hillrom with the name of the anti-spam software (and later disclosed the vendor), but refused to answer related questions. *Id.* at 2. On February 7, 2023, Hillrom served Linet with additional Rule 34 Requests for specific information related to the missing ESI, Ex. Q, but Linet continues to refuse to produce the requested information, Ex. R (Linet's Resp. & Obj. to Third Set of Reqs. for Prod.).

## ARGUMENT

### I. THE RECORD ESTABLISHES AN ADEQUATE FACTUAL BASIS FOR DISCOVERY CONCERNING LINET'S PRESERVATION OBLIGATIONS

The Federal Rules permit discovery from parties "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Linet does not dispute that the Four Custodians were likely to have discoverable and relevant information. Accordingly, the circumstances surrounding Linet's destruction of their ESI is clearly relevant to this case. And Hillrom's discovery requests are directed to precisely the inquiries addressed in Rule 37(e), namely: whether the deleted ESI "should have been preserved in the anticipation or conduct of [this] litigation"; if the ESI was "lost because [Linet] failed to take reasonable steps to preserve it"; and whether the ESI "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). Accordingly, "most courts acknowledge that 'discovery about discovery' can be appropriate" where, as here, "one party's discovery compliance has reasonably been drawn into question." *AOT Holding AG v. Archer Daniels Midland Co.*, 2021 WL 6118175, at *4 (C.D. Ill. Sept. 3, 2021) (internal citations omitted).

Specifically, preservation-related discovery is permitted—and necessary—when there is "at least an adequate factual basis for an inquiry." *Id.*; *see also In re Caesars Ent. Operating Co., Inc.*, 2018 WL 2431636, at *13 (N.D. Ill. Bankr. May 29, 2018) (same). In determining whether such an "adequate factual basis" exists, courts first look to "whether relevant, nonprivileged documents or communications that once existed are unavailable for production." *AOT Holding*, 2021 WL 611875 at *5. If so, courts consider whether the "absence of these records" is "enough to allow [Defendants] to explore the process used by [Plaintiff] to preserve its records." *Id.* And courts routinely grant such discovery into an opponent's preservation "process" where, as here, it is possible that a "duty to preserve was triggered at a particular time" and the party may have violated that duty by "fail[ing] to preserve documents after that date." *Id.*

In the Seventh Circuit, the duty to preserve is triggered when "litigation is commenced or reasonably anticipated." *Gruenstein v. Browning*, 2022 WL 3213261, at *6 (N.D. Ill. June 21, 2022); *see also Peerless Indus., Inc. v. Crimson AV, LLC*, 2014 WL 3500460, at *4 (N.D. Ill. Mar. 13, 2014) (duty to preserve "arises when a reasonable party would anticipate litigation"). Courts in this circuit agree with "[f]ederal courts across the country [that] a plaintiff's [duty to preserve] is more often triggered before litigation commences . . . because plaintiffs control the timing of litigation." *Cohn v. Guaranteed Rate, Inc.*, 318 F.R.D. 350, 354 (N.D. Ill. 2016) (internal citations omitted). "Once a party files suit or reasonably anticipates doing so, it has an obligation to make a conscientious effort to preserve ESI that would be relevant to the dispute." *YCB Int'l, Inc. v. UCF Trading Co., Ltd.*, 2012 WL 3069683, at *9 (N.D. Ill. Jun. 12, 2012).

All of the foregoing tests for preservation-related discovery are satisfied here. *First*, it is undisputed that responsive ESI from key custodians was neither preserved nor produced because Linet admits that all ESI belonging to Messrs. Bain, McClam, Bell, and Ms. O'Hollaren was discarded "no later than April 2020." Ex. U at 1–2. Second, Linet's own filings and documents

show that Linet was on notice of the claims in this case long before January 2020, and anticipated litigation before it disposed of the ESI at issue in this motion. As noted, Linet's Complaint turns on allegedly anticompetitive contracts that the Complaint admits Hillrom "foreshadowed" at a 2013 investor conference, *id.* ¶ 226, and "publicly announced" with respect to key customers in 2014, *id.* ¶¶ 242–47.

The internal documents Linet has produced to date separately establish that Linet was aware of Hillrom's use of what Linet [redacted]. [redacted] Linet also challenges other alleged conduct by Hillrom, including purported efforts to limit the interoperability of competitor beds with its nurse call system. *See, e.g.,* Compl. ¶ 338 (Hillrom "has chosen to 'close' its nurse call system and deny access to enhanced features of NaviCare for non-Hillrom beds"). But Linet's own documents show that Linet's employees [redacted] Indeed, one of the documents is [redacted]

The foregoing record alone establishes that from 2014–2019 Linet was aware of the alleged injuries and conduct at issue in this suit, and was likely anticipating litigation when it signed its January 2020 engagement letter with Hunton—the same firm that sued Hillrom in 2015 (through the same lead lawyer here) on the same antitrust claims over the CEA agreements at issue in this case. *See* Dkt. 1, *Universal Hosp. Servs., Inc. v. Hill-Rom Holdings, Inc.*, No. 5:15-cv-0032 (W.D. Tex. Jan. 13, 2015). Yet Linet admits it deleted ESI relevant to those claims, and likely did so (at

least for Bain and McClam) *after* it retained Hunton for a reason Linet refuses to disclose. These facts support—indeed require—discovery concerning Linet's compliance with its duty to preserve.

## II. THE COURT SHOULD COMPEL LINET TO RESPOND TO HILLROM'S PRESERVATION-RELATED DISCOVERY REQUESTS

Now that Hillrom has served discovery requests in accordance with the authorities above, "the burden rests upon [Linet] to show why a particular discovery request is improper," and to substantiate that the alleged impropriety justifies a refusal to respond. *Hill v. City of Chicago*, 2011 WL 320204, at *1 (N.D. Ill. Jan. 31, 2011). It cannot do so.

### A. The Court Should Order Linet To Produce Its Retention And Deletion Policies From January 2018 To April 2020

Hillrom seeks Linet's document retention and deletion policies from January 2018 to April 2020. Linet argues that it does not have to produce these policies "unless there is a showing that a party *breached* its duty to preserve." Ex. W at 2. But that puts the cart before the horse. Hillrom requires this discovery to determine *whether* Linet has breached its duty to preserve and, if so, the extent of the breach and associated prejudice to Hillrom. Fed. R. Civ. P. 37(e). Courts routinely order the production of such policies in order to allow the potentially prejudiced party to "explore" whether there was spoliation. *See AOT Holding*, 2021 WL 6118175 at *7 (granting motion to compel retention policy "directly relevant to the location of evidence for this case and whether that evidence should have existed when the duty to preserve was triggered" so the prejudiced party could "explore" whether the "absence . . . is inconsistent with . . . retention policy for the relevant time period"); *Sloan Valve Co. v. Zurn Indus., Inc.*, 2012 WL 1886353, at *14 (N.D. Ill. May 23, 2012) (requiring production of "all document retention policies that have been in effect during this litigation" to aid spoliation inquiry); *In re Caesars,* 2018 WL 2431636 at *11 (granting motion to compel for "document retention policies and practices").

Linet has repeatedly made claims about its standard practice to deactivate former

employees' accounts and delete them three months later. But Hillrom is entitled to "make [its] own assessment from an examination" of the policies. *Menotti v. Metropolitan Life Ins. Co.*, 2010 WL 375619, at *2 (N.D. Ill. Jan. 25, 2010) (overruling plaintiff's objections to a document request because defendant is "not required to rely solely" on plaintiff's "representations as to the nature" of its activities). Such review will allow Hillrom (and the Court) to understand better any duty to preserve the ESI that Linet deleted.

Linet's document retention/deletion policies will also allow Hillrom to "explore" whether the absence of the ESI is consistent with Linet's internal policies. Linet claims its internal policies resulted in the disposal of former employees' emails—including ten years of emails from its long-time CEO—a mere three months after his departure, and coincident with the company's retention of the counsel handling this case. That is manifestly worth exploring further. Hillrom's request for document retention policies is "straightforward," "reasonable," "relevant" and should be granted. *See In re Mercury Fin. Co. of Illinois*, 1999 WL 495903, at *5 (N.D. Ill. Jul 12, 1999) (granting motion to compel "[a]ll documents concerning or reflecting any policy or procedure of KPMG with respect to the retention or destruction of documents").

### B. The Court Should Order Linet To Produce Its Engagement Letter and Certain Other Correspondence With Hunton Andrews Kurth

The Court should also order Linet to produce its January 9, 2020 engagement letter with Hunton, as well as documents and communications between Linet and Hunton (or a privilege log) regarding: (1) the January 9, 2020 engagement letter and (2) communications between December 2019 and April 2020 that relate to potential claims by Linet against Hillrom, including all communications referencing Hillrom or any of the Hillrom products, services, or practices alleged in the complaint or otherwise relevant to this case. Under Linet's three-month document deactivation and deletion "standard practice," Linet would have been permitted to dispose of CEO

Colin Bain's ESI around January 14, 2020, and Mr. McClam's ESI around March 31, 2020. But Linet admits that it is not sure when this ESI was deleted, Ex. P at 8, and concedes it could have been as recently as April 2020, Ex. U at 2, when Linet disposed of an old server with potentially hundreds of thousands of relevant emails on it, Ex. P at 10.

Linet's interrogatory responses state that Linet signed an engagement letter with Hunton on January 9, 2020, *id.* at 12, which was very likely *before* Linet disposed of the Bain and McClam ESI, along with other ESI from its prior server. This timing matters because the January 9, 2020 engagement letter could inform when Linet anticipated litigation against Hillrom, and thus had a duty to preserve the ESI. *See, e.g., Cohn,* 318 F.R.D. at 354 (party "had a duty to preserve her communications . . . by" date because, "[b]y that point," the party "had retained the attorney who represents her in this lawsuit."); *Jones v. Dalton*, 2011 WL 13363748, at *2 (D.N.J. May 10, 2011) (requiring the production of a retainer agreement because the party accused of spoliation "testified that he destroyed handwritten notes relevant to the allegations in this case" and "the date" of retention could be "relevant" to "spoliation").

Linet has refused to produce further information regarding the engagement letter on the grounds that Hillrom's requests "exclusively seek privileged information." Ex. W at 3. But an engagement letter is "generally . . . not protected by attorney-client privilege." *Lucas v. Gold Standard Baking, Inc.*, 2017 WL 3394726, at *2 (N.D. Ill. Aug. 8, 2017). And to the extent some content is privileged, the solution is not to withhold the document, but to produce and redact the privileged portions. *See id.* at *3 (permitting redactions to a retainer agreement but requiring its disclosure); *Medlock Sw. Mgmt. Corp. v. Fed. Nat'Mort. Ass'n*, 2006 WL 8434270, at *7 (E.D. Tex. Sept. 1, 2006) (ordering production of engagement letter with, "if warranted," "redact[ed] portions" for "substantive . . . legal advice"). While "substantive" legal advice may be redacted, courts do not consider the scope of representation, as laid out in an engagement letter, to be

privileged. *See, e.g.*, *American Council of Blind Metro. Chicago v. City of Chicago*, 2021 WL 5321054, at *1 (N.D. Ill. Nov. 16, 2021) (privilege "does not cover . . . retainers" because "[i]nformation such as the identity of the client, the amount of the fee" and "the general purpose of the work performed," is not privileged); *Pruitt v. Personnel Staffing Grps., LLC*, 2017 WL 11639764, *2 (N.D. Ill. Aug. 28, 2017) (ordering production of redacted version of a retainer agreement but requiring disclosure of language stating that "Client retains [attorney] . . . to represent client in a claim for discrimination by filing an action with the EEOC").

In accordance with these authorities, Linet should be compelled to produce the January 9, 2020 engagement letter (with any necessary and logged redactions) as well as any communications with Hunton that relate to potential claims by Linet against Hillrom. *See, e.g.*, *Innis Arden Golf Club v. Pitney Bowes, Inc.*, 257 F.R.D. 334, 340 (D. Conn. 2009) (plaintiff's duty to preserve evidence arose before complaint was filed because "counsel" was retained and "actively involved in the investigation and analysis . . . in preparation for legal action"); *YCB Int'l*, 2012 WL 3069683 at *7 (plaintiff's duty to preserve information "arose once they began contemplating a lawsuit" months before the Complaint was filed); *Cohn*, 318 F.3d at 354.[8]

**C. The Court Should Require Linet To Supplement Its Interrogatory Responses Regarding Alternatives For The Deleted ESI**

The Court should also order Linet to supplement its interrogatory responses regarding potential alternative sources for the Four Custodians' ESI. Specifically, the Court should order Linet to respond to Hillrom's outstanding requests for further information about the anti-spam system that may contain ESI for the Four Custodians. Ex. N at 4. These responses should include

[8] If Linet claims that any of these documents or communications contain privileged information, Linet may redact—and must log—that information, subject to Hillrom's objections and in camera review by the Court. *See, e.g.*, *Rossman v. EN Engineering, LLC*, 335 F.R.D. 171, 172 (N.D. Ill. 2020) ("Both the Federal Rules of Civil Procedure and applicable case law unquestionably mandate[] that the [party claiming privilege] provide a privilege log that specifie[s] what documents [are] being withheld on the basis of privilege.").

information sufficient to substantiate Linet's claims that the "volume of data stored" in the anti-spam system "is so large that it is not possible to download and search for records of email of the Four Custodians" without knowing the "date, time, and person associated with the specific email . . . ." Ex. P at 11. And the responses should at a minimum provide details sufficient to explain why Linet cannot simply restore all emails for a particular custodian. Ex. V at 2. Linet's conclusory response that the "volume of data stored" on the anti-spam system is too "large" to permit searches, Ex. W at 2, is unacceptable. *See Sloan Valve*, 2012 WL 1886353, at *14 (requiring a party accused of potential spoliation to "file an affidavit with the Court" that "identifies the extent to which back-up files for the relevant time period exist and for what date").

Last but certainly not least, the Court should order Linet to supplement its interrogatory responses to include information within its possession, custody, or control about whether Linet's parent company maintains archives or other sources for the Four Custodians' ESI. To be clear, Hillrom is (at this point and reserving all rights) asking Linet to provide information in its possession, custody, or control about whether ESI for Linet employees—and, specifically, the Four Custodians—is maintained by Linet's parent company in forms that could provide an alternative source for the ESI Linet deleted. Linet should be compelled to answer these questions. *See, e.g.*, *Slabaugh v. State Farm Fire & Cas. Co.*, 2013 WL 4777206, at *6 (S.D. Ind. Sept. 5, 2013) (granting motion to compel information possessed by parent of defendant subsidiary that had the "ability to obtain the requested information and documents" from the parent).

**CONCLUSION**

For the foregoing reasons, the Court should grant Hillrom's Motion to Compel.

Dated: March 13, 2023

GIBSON, DUNN & CRUTCHER LLP

/s/ Elizabeth P. Papez

Elizabeth P. Papez
Kristen C. Limarzi (*pro hac vice*)
Melanie L. Katsur (*pro hac vice*)
Harry R. S. Phillips (*pro hac vice*)
1050 Connecticut Ave., NW
Washington, DC 20036
Tel: 202.955.8500
Email: EPapez@gibsondunn.com
KLimarzi@gibsondunn.com
MKatsur@gibsondunn.com
HPhillips2@gibsondunn.com

Eric J. Stock (*pro hac vice*)
Ben A. Sherwood (*pro hac vice*)
200 Park Avenue
New York, NY 10166
Tel: 212.351.4000
Email: EStock@gibsondunn.com
BSherwood@gibsondunn.com

Caeli A. Higney (*pro hac vice*)
Julian W. Kleinbrodt (*pro hac vice*)
555 Mission Street, Suite 3000
San Francisco, CA 94105
Tel: 415.393.8200
Email: CHigney@gibsondunn.com
JKleinbrodt@gibsondunn.com

A&G LAW LLC

Robert M. Andalman
542 South Dearborn Street
10th Floor
Chicago, IL 60605
Tel: 312.341.3900
Email: RAndalman@AandGlaw.com

*Attorneys for Defendants Hill-Rom Holdings, Inc., Hill-Rom Company, Inc., and Hill-Rom Services, Inc.*

**CERTIFICATE OF SERVICE**

I, Elizabeth P. Papez, an attorney, certify that on March 13, 2023, I caused **Hillrom's Memorandum of Law in Support of its Motion to Compel** to be served on all counsel of record listed via the Court's ECF system.

/s/ *Elizabeth P. Papez*
Elizabeth P. Papez