UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LINET AMERICAS, INC., <br>     Plaintiff <br><br> v. <br><br> HILL-ROM HOLDINGS, INC., *et al.*, <br>     Defendants | No. 21 CV 6890 <br><br> Judge Jeremy C. Daniel |

**ORDER**

Hillrom's motion for judgment on the pleadings, [41], is denied.

**STATEMENT**[1]

The following background information is taken from the well-pleaded allegations in the complaint, which the Court accepts as true for purposes of this order. *See Vill. of Rockton, Ill. v. Sonoco Prods. Co.*, 135 F. Supp. 3d 700, 706 (N.D. Ill. 2015).

Plaintiff Linet Americas, Inc. ("Linet") is a U.S. subsidiary of one of Europe's largest hospital bed suppliers. (R. 1 ¶¶ 12-13) ("Compl.").) Linet entered the U.S. hospital bed market in 2010 and gained recognition for its product innovation and affordability. (*Id.* ¶¶ 25, 27-28, 30.) Defendant Hillrom[2] is a U.S. manufacturer and supplier of medical technologies and other health-related products and services, including hospital beds. (*Id.* ¶ 2.) Linet and Hillrom compete with one another for market share in the Standard Hospital Bed, ICU Bed, and Birthing Bed markets (collectively, the "Relevant Markets"). (*Id.* ¶¶ 42, 54, 75, 92.)

Following Linet's entry into the U.S. market, Hillrom began implementing a new sales strategy to combat the threat that Linet posed. (*Id.* ¶¶ 135, 225.) The strategy consisted primarily of long-term, exclusive dealing contracts covering the Relevant Markets, known as "Corporate Enterprise Agreements" ("CEAs"). (*Id.* ¶ 224.) The CEAs were made to look like multiple, independent product-level agreements but actually bundled together various product-purchasing decisions, including products in the Relevant Markets, into a single agreement that conditioned rebates on

---

[1] For CM/ECF filings, the Court cites to the page number(s) set forth in the document's CM/ECF header unless citing to a particular paragraph or other page designation is more appropriate.

[2] Linet names Hill-Rom Holdings, Inc., Hill-Rom Company, Inc., and Hill-Rom Services, Inc. as defendants in this matter. (Compl. ¶¶ 2-4.) The Court refers to the defendants collectively as "Hillrom."

purchases across multiple different product lines. (*Id.* ¶¶ 236-37, 239.) Hillrom marketed its CEAs to the largest health systems, also known as integrated delivery networks ("IDNs"), in the country, including HCA Healthcare, Providence Health, Universal Health Services ("UHS"), and Cleveland Clinic. (*Id.* ¶¶ 115, 240.)

Within the last ten years, Hillrom has also expanded its products portfolio by acquiring various health care-related companies. (*Id.* ¶¶ 305, 311.) These acquisitions have increased the allure of Hillrom's CEAs, as the greater the number of products subject to the agreement, the larger the rebate that is offered to IDNs. (*Id.* ¶307.) Moreover, the functionality of certain of these products, such as Hillrom's nurse call system, is dependent on whether the product is used in conjunction with other Hillrom products. (*Id.* ¶¶ 328-63.) This has created what Linet calls a "closed digital connectivity architecture" that forecloses the interoperability of peripheral healthcare equipment with hospital beds made by suppliers other than Hillrom. (*Id.* ¶¶ 304, 317.)

Based on the above alleged conduct, Linet filed the instant suit against Hillrom. *See generally*, (Compl.) In addition to the use of CEAs and "closed digital connectivity" ecosystem, Linet alleges that Hillrom has engaged in other anticompetitive conduct, including threatening customers with economic repercussions should they disclose the nature of the CEAs, (*id.* ¶¶ 276, 304, 392), and disparaging Linet and its hospital bed offerings and services to potential customers. (*Id.* ¶¶ 364-68.) The complaint alleges that Hillrom's actions constitute unlawful monopolization and exclusive dealing in violation of the Sherman Act, 15 U.S.C. §§ 1, 2 (Counts I-IV); unlawful exclusionary bundling in violation of the Clayton Act, 15 U.S.C. § 14, (Count V); anti-competitive conduct in violation of the Illinois Antitrust Act, 740 ILCS 10/3, (Count VI); and unfair methods of competition and unfair or deceptive acts or practices in violation of the Illinois Consumer Fraud Act, 815 ILCS 505/1, (Count VII). (*Id.* at 94-103.) As part of its complaint, Linet invokes certain accrual and tolling doctrines that affect the running of the limitations period, including the doctrine of fraudulent concealment, the discovery rule, and the continuing violation doctrine. (*Id.* ¶¶ 386-405.) Hillrom has answered the complaint, (R. 7), and now moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). (R. 41.)

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The same standard governing motions to dismiss under Rule 12(b)(6) applies to Rule 12(c) motions. *See Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020) ("The only difference between a motion for judgment on the pleadings and a motion to dismiss is timing; the standard is the same."). Thus, like a Rule 12(b)(6) motion, the Court's task is "to determine 'whether the well-pleaded factual allegations viewed in favor of the nonmoving party state a facially plausible claim for relief.'" *Hanover Ins. Co. v. R.W. Dunteman Co.*, 51 F.4th 779, 785 (7th Cir. 2022) (quoting *Sinn v. Lemmon*, 911 F.3d 412, 418 (7th Cir. 2018)). "Only when it

appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved will a court grant a Rule 12(c) motion." *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2008). "As with a motion to dismiss, the court views all facts and inferences in the light most favorable to the non-moving party." *Federated*, 983 F.3d at 313.

At first blush, Hillrom's motion appears to challenge the viability of Linet's antitrust claims based on a statute of limitations affirmative defense. *See* (R. 56 at 7) ("If ever a plaintiff has 'pled itself out of court' by admit[ting] all the ingredients' of a statute of limitations defense, it is Linet.") (citation omitted). But such is not the case. Instead, Hillrom clarifies that it seeks not to raise a limitations defense, but to challenge Linet's affirmative, fraud-based "tolling claims," specifically, the discovery rule and the doctrine of fraudulent concealment, as insufficiently pleaded under Federal Rule of Civil Procedure 9(b). *See* (R. 55 at 1) ("All of Linet's arguments are directed to limitation *defenses* a plaintiff need *not* plead around. But Hillrom's motion seeks Rule 12 relief on affirmative tolling *claims* a plaintiff must plead [ ] in its complaint.") (emphasis in original).

"Complaints plead claims, which is to say grievances." *McInerney v. CareerBuilder, LLC*, 18 C 4073, 2019 WL 6497369, at *3 (N.D. Ill. Dec. 3, 2019) (citation omitted). "The plaintiff is not required to plead facts or legal theories or cases or statutes, but merely to describe his claim briefly and simply." *Zidek v. Analgesic Healthcare, Inc.*, No. 13 C 7742, 2014 WL 2566527, at *2 (N.D. Ill. June 6, 2014). In this case, Linet asserts four claims against Hillrom: monopolization of the Relevant Markets, exclusive dealing, exclusionary bundling, and deceptive conduct.

For these claims, Linet asserts different theories of tolling and accrual concerning the relevant time period for which it can recover for its alleged injuries. The viability of a given legal theory is learned through discovery. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011). It is not grounds for judgment at the pleadings stage. *See, e.g., McInerney*, 2019 WL 6497369, at *4 ("given that the claim on which" the plaintiff's state law theories "are founded are going forward, Rule 12(b)(6) provides no basis to bar [plaintiff] from pursuing her claims in the context of those state law theories"); *Zidek*, 2014 WL 2566527, at *2 ("Because Plaintiffs cannot recover twice for the same injury, it makes no difference whether they can prevail on one legal theory or all five.").

The main target of Hillrom's motion is the doctrine of fraudulent concealment. (*See* R. 56 at 9-15.*)* Fraudulent concealment is a tolling doctrine that falls under the "general equity principle" of equitable estoppel. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990); *see also In re Copper Antitrust Litig.*, 436 F.3d 782, 791 (7th Cir. 2006). "Tolling rules create defenses" to the affirmative defense of statute of limitations. *Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001). And "[c]omplaints

3

need not contain *any* information about defenses and may not be dismissed for that omission." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) (emphasis in original). In other words, "plaintiffs do not have the burden of pleading that an exception to a possible affirmative defense applies." *Carbone v. Brown Univ.*, 621 F. Supp. 3d 878, 891 (N.D. Ill. 2022); *see also Rose v. Nat'l Collegiate Athletic Ass'n*, 346 F. Supp. 3d 1212, 1224 (N.D. Ill. 2018) (rejecting defendant's argument that plaintiffs' failure to plead fraudulent concealment in accordance with Rule 9(b) precluded them from asserting it to extend the two-year limitations period).

By framing fraudulent concealment as an affirmative claim and challenging its sufficiency via Rule12(c), Hillrom asks this Court to enter a judgment that would limit the scope of discovery and recoverable damages. *See* (R. 55 at 3) ("To triple th[e] damages period—and 'unlock the doors' to proportionally extended 'discovery,' . . . — Linet must plead concealment-based *tolling* claims in accordance with Rules 8 and 9(b)). But winnowing claims is not an appropriate task at the pleadings stage. *See McInerney*, 2019 WL 6497369, at *4 ("winnowing of a claim properly occurs at summary judgment, not at the pleadings stage when the question is simply whether there are sufficient facts alleged to state a plausible claim for relief on some legal theory"); *see also BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) (explaining that Rule 12(c) does not permit "piecemeal dismissal of *parts* of claims") (emphasis in original). And concerns regarding the scope of discovery are properly raised "in the context of a motion pursuant to Rule 26(c) (protective orders) or 37(a) (motions to compel)," not Rule 12(c). *McInerney*, 2019 WL 6497369, at *4.

Turning to the merits of its arguments, Hillrom first challenges Linet's ability to invoke the discovery rule as a means to toll the statute of limitations. (R. 56 at 8-9.) The discovery rule, however, is not a tolling doctrine. *See Shuffle Tech. Int'l, LLC v. Sci. Games Corp.*, No. 15 C 3702, 2015 WL 5934834, at *15 (N.D. Ill. Oct. 12, 2015) ("The discovery rule does not exist to toll the statute of limitations where antitrust violations are so camouflaged or discreet that injured parties might fail to perceive that a violation has occurred."). Rather, the discovery rule is a doctrine of accrual that "postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when he discovers he has been injured." *Copper*, 436 F.3d at 789 (citing *Cada*, 920 F.2d at 450); *see also In re: Evanston N.W. Healthcare Corp. Antitrust Litig.*, No. 07 C 4446, 2016 WL 4720014, at *7 (N.D. Ill. Sept. 9, 2016) ("The discovery rule [ ] is not so much an exception to the accrual rule[;]" rather it is a rule "that tells us when the claim accrues."). Accrual of a federal claim is generally a question of fact, and a court may only make a finding as to a party's lack of reasonable diligence if "the relevant facts are undisputed and only one conclusion may be drawn from them." *Cathedral of Joy Baptist Church v. Vill. of Hazel Crest*, 22 F.3d 713, 719 (7th Cir. 1994).

Hillrom argues that the complaint's mention of the 2015 suit filed by UHS against Hillrom for a similar bundling scheme shows that Linet could have discovered its

4

injury by 2015 at the latest. (R. 56 at 1-2, 14-15.) The UHS suit, however, involved different customer targets (group purchasing organizations as opposed to IDNs), (Compl. ¶ 158), and the challenged agreements did not include the "strategic overlay" that Linet alleges facilitated Hillrom's ability to monopolize the Relevant Markets at issue here. *See* (*id.* ¶ 292) ("Hillrom's CEAs were unprecedented at the time that they were introduced . . . Before Hillrom introduced the CEAs to combat Linet, no other participant in the Relevant Markets used CEAs in the IDN distribution channel.").

Further, although Hillrom issued press releases and publicly discussed deals reached with IDNs beginning as early as 2014, (*id.* ¶ 242), Linet alleges that Hillrom "never once publicly acknowledged the existence of the CEAs." (*Id.* ¶ 299.) Indeed, the CEAs' confidentiality clauses prevented customers from disclosing the nature of their agreements with Hillrom. (*Id.* ¶¶ 276, 300.) And even if Linet "harbored suspicions early on" based on similarities with the UHS suit and the statements Hillrom made publicly about the deals reached with certain IDNs, it remains unclear at this stage "whether a reasonable investigation would have revealed incriminating evidence sufficient to support an antitrust claim." *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 808 (N.D. Ill. 2017) (quoting *In re Sulfuric Acid Litig.*, 743 F. Supp. 2d 827, 855-56 (N.D. Ill. 2010)) (internal quotation marks omitted). In other words, the complaint does not foreclose that Linet was unable to connect all the dots of Hillrom's alleged scheme until shortly before filing its complaint. *See id.* (quoting *In re Packaged Seafood Prod. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1099 (S.D. Cal. 2017) ("a lone puzzle piece may, in isolation, give no further indication as to the larger picture into which it fits, and yet at the same time be an integral component of the final product once all corresponding pieces are assembled.")). The Court therefore declines to make a determination as to when Linet's claims accrued under the discovery rule without further factual discovery.

Next, Hillrom argues that Linet cannot rely on the doctrine of fraudulent concealment to extend the four-year limitations period. *See Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 338 (1971) ("The basic rule is that damages are recoverable under the federal antitrust acts only if suit therefor is 'commenced within four years after the cause of action accrued,' 15 U.S.C. § 15b, plus any additional number of years during which the statute of limitations was tolled."). "Fraudulent concealment requires that a defendant acted affirmatively to conceal an offense and that the plaintiff 'neither knew nor, in the exercise of due diligence, could reasonably have known of the offense." *Carbone*, 621 F. Supp. 3d at 891 (quoting *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 194-95 (1997)). Where, as here, a defendant seeks to preclude a plaintiff from relying on an exception to an affirmative defense, it is the defendant's burden "to show that there is no 'conceivable set of facts, consistent with the complaint' in which the [exception to the] defense would apply." *Id.*

Hillrom has not met its burden to foreclose Linet's reliance on this exception for many of the same reasons cited above. For example, Hillrom argues that the 2015 UHS

5

lawsuit "should have alerted Linet to the possibility that Hillrom could 'resume' the contracting practices" that Linet now challenges. (R. 56 at 3) (citing Compl. ¶¶ 224-25)); *see also* (*id.* at 15.) But, as discussed, the UHS suit centered on a different type of bundling agreement with different customers, (Compl. ¶ 158), not the strategic overlay CEAs with IDNs at issue here. Further, although Hillrom points to various contract announcements that were made in 2014 and 2016, (R. 56 at 15-16), the complaint alleges that these disclosures revealed only that Hillrom had reached long-term, product-level agreements with major IDNs. (Compl. ¶¶ 243-44.) The disclosures provided no indication that Hillrom had structured its agreements to foreclose competition in the Relevant Markets. *See, e.g., Sulfuric Acid*, 743 F. Supp. 2d at 856 ("generalized reports in trade publications do not constitute indisputable evidence of inquiry notice that Defendants engaged in illegal practices."). At best, Hillrom points to facts that "*might* have caused" Linet to inquire or "*could* have led to evidence supporting" its claim; but this only demonstrates "that there is a jury question regarding the tolling of the statute of limitations by fraudulent concealment;" not that there is a basis for dismissal under Rule 12(c). *Copper*, 436 F.3d at 792 (quoting *Morton's Market, Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 832-33 (11th Cir. 1999)) (internal quotation marks omitted). Simply put, Hillrom does not convincingly argue that any one of Linet's allegations demonstrates that there is "no conceivable set of facts" in which the fraudulent concealment doctrine could apply.

Indeed, the allegations in the complaint make this case distinguishable from *Sidney Hillman Health Center of Rochester v. Abbott Laboratories, Inc.*, 782 F.3d 922 (7th Cir. 2015), upon which Hillrom relies for the proposition that fraudulent concealment can be dismissed if not sufficiently pled by the plaintiff. (R. 55 at 11.) In *Sidney*, the Seventh Circuit reversed the dismissal of the plaintiffs' RICO claims, finding the discovery rule had not been properly applied to determine when the claims accrued. *Sidney*, 782 F.3d at 928, 931. In doing so, the Seventh Circuit briefly addressed the plaintiffs' fraudulent concealment argument. *Id.* at 930-31. Contrary to Hillrom's position, *Sidney* did not hold that the plaintiffs' equitable tolling theories were "barred" as insufficiently pled; rather, the Seventh Circuit determined that there was no conceivable set of facts, consistent with the complaint, upon which these equitable doctrines could apply. *Id.* at 931 (". . . even assuming that the SEC filing in 2009 disclosing the DOJ's investigation of Abbott's off-label marketing did not alert the funds to their injuries, surely the 2012 guilty plea and corresponding $1.6-billion settlement did so. Yet the funds still waited more than a year to file suit."). Here, by contrast, Hillrom's arguments do not establish that there is "no basis to conclude that the doctrine of fraudulent concealment could not apply." *Carbone*, 621 F. Supp. 3d at 891. The Court therefore declines to enter judgment on this issue at this stage of proceedings where it is without the benefit of a complete factual record.

In any event, Hillrom's attempt to limit discovery by challenging Linet's ability to reach back to events that occurred outside the four-year limitations period fails for another reason: Linet's complaint raises a plausible continuing violation theory.

6

(Compl. ¶ 397.) The continuing violation doctrine "postpones the beginning of the limitations period where the defendant inflicts continuing and accumulating harm." *Evanston N.W. Healthcare*, 2016 WL 4720014, at *7 (citing *Heard*, 253 F.3d at 319). Under this doctrine, "a cause of action accrues to the plaintiff each time the defendant engages in antitrust conduct that harms the plaintiff." *Broiler Chicken*, 290 F. Supp. 3d at 807. "A violation is called 'continuing,' signifying that a plaintiff can reach back to its beginning even if that beginning lies outside the statutory limitations period, when it would be unreasonable to require or even permit [the plaintiff] to sue separately over every incident of the defendant's unlawful conduct." *Heard*, 253 F.3d at 319. "[I]f a continuing violation extends into the statutory period, the victim is entitled to complain about the whole violation, no matter how long ago it began . . .." *Brunswick Corp. v. Riegel Textile Corp.*, 752 F.2d 261, 271 (7th Cir. 1984); *see also Carbone*, 621 F. Supp. 3d at 892 (citing *Selan v. Kiley*, 969 F.2d 560, 565 (7th Cir. 1992)) (explaining that the continuing violation doctrine allows a plaintiff to get relief for a time-barred act by linking it with an act that is within the limitations period).

Linet alleges that Hillrom has inflicted continuing and accumulating harm when it entered into new CEAs with IDNs or renewed, extended, or expanded existing CEAs. (Compl. ¶¶ 397-98.) Hillrom does not challenge this allegation or Linet's ability to invoke the continuing violation doctrine. *See* (R. 56 at 15 n.9.) Instead, Hillrom argues that Linet cannot plausibly assert both a fraudulent concealment theory and a continuing violation theory. (*Id.*) ("Linet's continuing violation claim . . . presumes the very fact that forecloses its fraud-based tolling claim: That the CEAs Hillrom publicly disclosed (and UHS challenged) in or around 2015 provided a sufficient basis for an antitrust suit at that time.") But, as mentioned above, the viability of a given legal theory is not determined at the pleadings stage; it is learned through discovery. *Alioto*, 651 F.3d at 721. Thus, it is not for the Court to decide at this stage which (if any) of these doctrines prevail. *See Zidek*, 2014 WL 2566527, at *2. The Court therefore rejects Hillrom's argument that the continuing violation doctrine forecloses, as a matter of law, Linet's fraudulent concealment theory.

For the reasons above, Hillrom's motion for judgment on the pleadings, (R. 41), is denied.

Date: January 17, 2024

JEREMY C. DANIEL
United States District Judge