## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LINET AMERICAS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:21-cv-6890 |
| | ) | |
| HILL-ROM HOLDINGS, INC.; | ) | |
| HILL-ROM COMPANY, INC.; | ) | |
| HILL-ROM SERVICES, INC., | ) | Magistrate Judge Jeffrey T. Gilbert |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendants Hill-Rom Holdings, Inc., Hill-Rom Company, Inc., and Hill-Rom Services, Inc. ("Defendant" or "Hillrom") has filed a Motion to Compel Discovery from Linet [ECF No. 124] certain discovery from Plaintiff Linet Americas, Inc. ("Plaintiff" or "Linet"). The Motion is granted in part and denied in part for the reasons discussed below.

## I. INTRODUCTION

Hillrom seeks an order from the Court compelling production of (1) 33 alleged non-privileged "business documents" identified as attachments to communications on Linet's privilege log, (2) all documents on Linet's privilege log as to which Hillrom contends Linet has impliedly waived privilege by putting "at-issue" its "preservation defenses and accrual, tolling, and merits claims," and (3) all documents on Linet's privilege log as to which Hillrom contends there is insufficient information to assess the privilege claim. *See* Memorandum of Law in Support of

1

Motion to Compel [ECF No. 125] ("Motion") at 17-28. As Hillrom's at-issue waiver claim potentially applies to most of the documents on Linet's privilege log, the Court addresses that issue first.[1]

## II. ANALYSIS

### A. Linet's Pleadings Regarding The Timeliness Of Its Claims Do Not Amount To An Implied Waiver Of Privilege.

#### 1) Legal Standard - Federal Common Law Applies to At Issue Waiver Analysis.

A district court has broad discretion in matters relating to discovery. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676 (7th Cir. 2002). The Court begins with the principle that federal common law governs the existence and applicability of an evidentiary privilege in this case that arises under 28 U.S.C. § 1331. Fed. R. Evid. 501. By contrast, when a court sits in diversity, courts apply state privilege law. *See, e.g.*, *Lorenz v. Valley Forge*, 815 F.2d 1095 (7th Cir. 1987).

The attorney-client privilege is "one of the oldest recognized privileges for confidential communications," *United States v. BDO Seidman*, 337 F.3d 802, 810 (7th Cir. 2003), and exists primarily to "'encourage full and frank communication between attorneys and their clients.'" *United States* v. *Zolin*, 491 U.S. 554, 562

---

[1] According to Linet, Hillrom challenges Linet's assertion of privilege as to "over 399 entries listed on Linet's privilege log." Linet's Response in Opposition to Hillrom's Motion to Compel [ECF No. 132] ("Response") at 4; *see also* Exhibit O to Sherwood Decl. [ECF No. 126-15] ("Ex. O") (Hillrom's filing identifying 425 challenged entries on Linet's privilege log). Hillrom contends the at-issue waiver applies to almost all of those challenged privilege log entries. *See* Ex. O [ECF No. 126-15]. There are 26 documents identified on Linet's privilege log as to which Hillrom does not assert an at-issue waiver, but instead argues that Linet provided insufficient information to either assess the asserted privilege or determine whether the document should be subject to an at-issue waiver. [*Id.*] The Court addresses those arguments later in this Opinion.

(1989) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). However, the attorney-client privilege can be waived, either explicitly or by implication. *Lorenz*, 815 F.2d at 1098. Express waiver occurs where "information that would otherwise be privileged is not kept confidential." *Patrick v. City of Chicago*, 154 F. Supp. 3d 705, 711 (N.D. Ill. 2015). Implied waiver can occur when a client asserts claims or defenses that put his or her attorney's advice "at issue" in the litigation. *Paters v. United States*, 159 F.3d 1043, 1047 n.6 (7th Cir. 1998); *see also Garcia v. Zenith Electronics Corp.*, 58 F.3d 1171, 1175 n.1 (7th Cir. 1995) (citing *Rhone–Poulenc Rorer Inc. v. Home Indemnity Co.*, 32 F.3d 851 (3rd Cir. 1994) ("*Rhone–Poulenc*")).

The parties dispute what is necessary to put an attorneys' advice at issue for purposes of an implied waiver of privilege. According to Hillrom, an at-issue waiver "does not depend on the privilege holder's 'reliance' on specific communications." Hillrom's Reply in Support of Its Motion to Compel [ECF No. 142] ("Reply") at 7. Hillrom says *Lorenz* sets forth the binding "Seventh Circuit standard" for such implied waivers, which Hillrom says occurs when "the privilege holder has asserted 'a *legal claim or defense*, the *truthful resolution of which* will require examining confidential communications' to fairly resolve." [ECF No. 142] at 7, 9 (quoting *Lorenz*, 815 F.2d at 1098) (emphasis in Hillrom's brief). In essence, Hillrom contends that an implied waiver should be found where fairness requires an opposing party to be able to consider privileged communications to resolve a privilege holder's claim or defense.

Hillrom reads the language in *Lorenz* too broadly. As an initial matter, *Lorenz* applies Indiana law and thus it is not clear that it states the applicable federal privilege law. *See id.*, 815 F.2d at 1097–98. Moreover, in *Lorenz*, the Seventh Circuit did not find an at-issue waiver had occurred, nor did it hold at-issue waivers should be found in circumstances where a privilege holder does not rely on privileged communications for a claim or defense. *See Cage v. Harper*, 2019 WL 6911967, at *3 (N.D. Ill. Dec. 19, 2019) (discussing *Lorenz* and stating "the Seventh Circuit found no at issue waiver of the privilege because the defendant, the holder of the privilege, did not inject a new factual or legal issue into the case" even "where defendant's former attorney had testified"). Thus, the Court disagrees with Hillrom that *Lorenz* states "circuit law" that reliance on privileged communications is not required to find an at-issue waiver. Reply [ECF No. 142] at 7.[2]

Rather, Seventh Circuit decisions suggest that implied at-issue waivers require more than just the potential relevance of privileged communications to a claim or defense. The party asserting privilege must affirmatively put the attorney advice at issue. *See Paters*, 159 F.3d at 1047 n.6; *Garcia*, 58 F.3d at 1175 n.1; *see also Cage*, 2019 WL 6911967, at *3 ("the state of the law in the Seventh Circuit is clear that Defendants must place the privilege communications at issue by

---

[2] Further consideration of the authority cited in *Lorenz* confirms the Court's view that Hillrom's interpretation is too broad. *Lorenz* cites *United States v. Mierzwicki*, for the general proposition Hillrom asserts, but in *Mierzwicki*, the court found a privilege waiver where the defendant had expressly relied on privileged communications, by asserting a defense "that his [tax] returns were amended on advice of counsel." *See id.*, 500 F. Supp. 1331, 1335 (D. Md. 1980) ("[i]t is well established that when confidential communications are made a material issue in a judicial proceeding, fairness demands treating the defense as a waiver of the privilege"). Thus, the case law cited by the Seventh Circuit in *Lorenz* also does not support Hillrom's broader interpretation of the scope of an at-issue waiver.

advancing those privileged communications in support of its affirmative defenses for there to be an at issue waiver").[3]

### 2) Illinois Privilege Law Does Not Apply In This Federal Question Case.

Hillrom also asks this Court to follow decisions applying Illinois privilege law, suggesting it is either consistent with federal privilege law or should be recognized as a matter of comity. *See* Reply [ECF No. 142] at 9, 11-12. The Court disagrees with both propositions.

First, while Hillrom asserts that Illinois and federal law "apply similar principles in deciding whether the attorney-client privilege exists," the bankruptcy case Hillrom cites does not address at-issue waivers, which is an important distinction. Reply [ECF No. 142] at 11 (citing *In re Settlers' Hous. Serv., Inc.*, 558 B.R. 285, 290 (Bankr. N.D. Ill. 2016)). In *Kordek v. United Agri Prod., Inc.*, another decision relied on by Hillrom, the court "recognize[d] that the recent trend in the Northern District of Illinois deviates" from Illinois privilege law with respect to at-issue waivers and observed that courts applying federal privilege law have held that "to waive the privilege, the party to whom the privilege belongs must affirmatively put at issue the specific communication, document or information to which the privilege attaches." 2007 WL 1118435, at *5 (N.D. Ill. Apr. 16, 2007) (quoting *Beneficial Franchise Co., Inc. v. Bank One, N.A.*, 205 F.R.D. 212, 216-17 (N.D. Ill.

---

[3] While Hillrom takes issue with Linet's position that "[d]istrict courts in this Circuit have adopted the 'at-issue waiver' standard from the Third Circuit's decision" in *Rhone–Poulenc*, Response [ECF No. 132] at 5; Reply [ECF No. 142] at 9-10, courts in this district have regularly applied the *Rhone–Poulenc* articulation of the at-issue waiver. *See, e.g.*, *Cage*, 2019 WL 6911967, at *1–3 ("district courts within this circuit have applied the *Rhone-Poulenc* standard") (collecting cases); *see also* Response [ECF No. 132] at 5-6 (citing cases).

2001)). Hillrom has not demonstrated that Illinois privilege law is consistent with federal privilege law as to at-issue waivers.

Nor has Hillrom shown the Illinois Supreme Court would be likely to interpret the at-issue waiver in accord with Hillrom's position. Hillrom says the Illinois Supreme Court "aligned the state privilege law" cited in *Kordek* "with the federal waiver test" in *Ctr. Partners, Ltd. v. Growth Head GP, LLC*, 2012 IL 113107, ¶ 35, 981 N.E.2d 345, 356 (Ill. 2012). Reply [ECF No. 142] at 11. In *Center Partners*, the Illinois Supreme Court stated "the attorney-client privilege may be waived . . . when the client voluntarily injects into the case either a factual or legal issue, the truthful resolution of which requires examination of confidential communications, such as legal malpractice actions." *Ctr. Partners, Ltd.*, 981 N.E.2d at 356. This language, which is only partially quoted by Hillrom, does not bear the weight Hillrom would place on it. The Illinois Supreme Court was generally describing the landscape of privilege waivers and as is evident from the full quote acknowledged that some disputes, such as legal malpractice actions, by definition put at issue attorney-client communications. *Center Partners* did not otherwise endorse the broad view of at-issue waivers that Hillrom asserts and later in the decision the Illinois Supreme Court described such implied waivers more narrowly, as "when the client asserts claims or defenses that put his or her communications with the legal advisor at issue . . ." *See Ctr. Partners*, 981 N.E.2d at 365. In the Court's view, Linet has not voluntarily injected into the case an issue that necessarily requires the examination of confidential communications akin to a legal malpractice action. In

addition, while the Court understands Hillrom to say this language from *Center Partners* is similar to that in *Lorenz*, the Court has already addressed why Hillrom's reading of *Lorenz* is overly broad. The Court is not persuaded that *Center Partners* suggests the Illinois Supreme Court favors a broader interpretation of at-issue waivers let alone one that is aligned with federal privilege law.[4]

To the contrary, judges in this district have reasoned the Illinois Supreme Court would likely interpret the at-issue waiver more narrowly than the interpretations in previous decisions which "applied a highly criticized version of the 'at issue' waiver test" that improperly focuses "on the opposing party's need for the privileged information despite the Supreme Court's emphasis on the role of certainty in encouraging the full and frank communication between attorneys and their clients." *In re Concepts Am., Inc.*, 2021 WL 1235376, at *2 n.1 (Bankr. N.D. Ill. Mar. 16, 2021) (referring to *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975) and quoting *Reid v. Neighborhood Assistance Corp. of America*, 2012 WL 5995752, at *5 (N.D. Ill. Nov. 30, 2012) (St. Eve, J.)). *See also Kroll*, 2020 WL 11563948, at *6–7 (predicting Illinois Supreme Court would construe at-issue waivers more narrowly).[5]

---

[4] Linet also argues that Illinois courts have declined to extend the at-issue waiver finding in *Lama*, an Illinois appellate court decision. *See* Response [ECF No. 132] at 10 n.9 (citing *In re Est. of Wright*, 881 N.E.2d 362, 366–67 (2007) ("Given the controversy surrounding the rule adopted in *Lama*, we are unwilling to give it an expansive reading and to apply it beyond its stated facts."); *see also Reid*, 2012 WL 5995752, at *5.

[5] Hillrom does not acknowledge these decisions, instead citing several older district court cases purporting to predict Illinois law, although those decisions acknowledged the Illinois Supreme Court had not directly addressed at-issue waivers. For instance, in *Pyramid Controls, Inc. v. Siemens Indus. Automations, Inc.*, 176 F.R.D. 269, 272 (N.D. Ill. 1997), "the district court noted that it was divining Illinois law without much guidance from Illinois

Finally, Hillrom says that even if Illinois and federal privilege law differ on at-issue waivers, principles of comity require federal courts to recognize state privileges when it comes at no substantial cost to federal law. Reply [ECF No. 142] at 11-12 (citing *Northwestern Mem. Hosp. v. Ashcroft*, 362 F.3d 923, 932 (7th Cir. 2004) and *Mem. Hosp. for McHenry Cnty. v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981)). Hillrom's reliance on these cases, however, is belied by the case law discussed above recognizing there is a difference between certain decisions applying Illinois law and federal law on at-issue waivers. Thus, applying Illinois law here would come at a substantial cost to federal law.[6]

---

cases." *See Kroll v. O'Connor*, 2020 WL 11563948, at \*6–7 (N.D. Ill. Dec. 10, 2020) (distinguishing *Pyramid Controls*). Moreover, the at-issue waiver in *Pyramid Controls* was based on the plaintiff's allegation in its complaint that it first acquired knowledge of its potential claim "in the course of conversations with its attorney . . ." *Pyramid Controls, Inc.*, 176 F.R.D. at 273. Here, Hillrom points to no similar allegations by Linet regarding its communications with counsel and thus *Pyramid Controls* is not instructive for the circumstances here. Similarly, in *Kordek*, another older decision on which Hillrom relies, the court acknowledged "the absence of authoritative Illinois Supreme Court rulings" on "the waiver issue . . . in a discovery rule case" and reasoned it was therefore "obligated" to follow an Illinois appellate court's ruling instead. *See Kordek*, 2007 WL 1118435, at \*5 (citing *Lama v. Preskill*, 353 Ill.App.3d 300, 305, 818 N.E.2d 443 (2004)).

[6] Hillrom's comity cases are inapposite for other reasons. The court in *Nw. Mem'l Hosp. v. Ashcroft*, for example, considered that "[p]atients, physicians, and hospitals in Illinois rely on Illinois' strong policy of privacy of medical records" though it still found "comity has required us not to apply the Illinois privilege, but to consider with special care the arguments for quashing the subpoena on the basis of relative hardship under Fed.R.Civ.P. 45(c)." *Id.*, 362 F.3d 923, 932–33 (7th Cir. 2004). Thus, the court in *Northwestern Memorial Hospital* did not rely on comity principles to apply Illinois privilege law in a case arising under federal law. In *United States v. Wilson*, 960 F.2d 48, 50–51 (7th Cir. 1992), the court declined to vacate convictions based on the argument that an Illinois privilege should have barred the government from introducing unemployment records in part based on reasoning that the Illinois privilege was contrary to the strong federal interest in enforcing criminal statutes. Similarly, in *Memorial Hospital v. Shadur*, 664 F.2d 1058, 1061 (7th Cir.1981), where the issue was whether to apply a state privilege for hospital disciplinary proceedings when there was no body of federal decisions addressing such a privilege, the Seventh Circuit decided not to apply the state privilege because doing so would frustrate the federal interest in enforcing federal antitrust law. *Id.*, 664 F.2d at 1063. None of these decisions

In any event, under the Supremacy Clause, federal privilege law prevails in any conflict with state privilege law. *Id.* at 1063–64. "When federal law governs, as it does here, only privileges recognized by the national government matter. Because state law does not apply here, Rule 501 tells us to use 'the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.'" *See E.E.O.C. v. Illinois Dep't of Emp. Sec.*, 995 F.2d 106, 107 (7th Cir. 1993) (Supremacy Clause gives federal statutes' controlling force in the face of conflicts with state law and "Rule 501 of the Federal Rules of Evidence reinforces this message in the domain of evidentiary privileges"). *See also Santiago v. City of Chicago*, 2023 WL 5096288, at *7 (N.D. Ill. Aug. 9, 2023). Thus, for all these reasons, the Court applies the federal common law of privilege as to at-issue waivers in this case.

### 3) Implied Waiver Requires Reliance on Privileged Communications.

An implied waiver "occurs when a client asserts claims or defenses that put his or her attorney's advice 'at issue' in the litigation." *CSI Worldwide, LLC v. TRUMPF, Inc.*, 2023 WL 5830788, at *5–6 (N.D. Ill. Sept. 8, 2023) (citing *Garcia*, 58 F.3d at 1175 and *Beneficial Franchise Co.*, 205 F.R.D. at 216). In *Motorola Solutions*, also cited by Hillrom, *see* Motion [ECF No. 125] at 3, 20, the court explained "a litigant cannot hide behind the privilege *if he is relying upon privileged communications to make his case*" and "[a] 'party [impliedly] waives the privilege only when he or she 'has made the decision and taken the affirmative step in the

support Hillrom's view that federal courts should defer on comity grounds to Illinois law regarding waivers of attorney client privilege.

litigation to place the advice of the attorney in issue.'" *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 2018 WL 1804350, at *5 (N.D. Ill. Apr. 17, 2018) (emphasis added) (quoting *U.S. Fire Insurance Co. v. Asbestospray, Inc.*, 182 F.3d 201, 212 (3d Cir. 1999), a Third Circuit decision applying the at-issue waiver standard from *Rhone–Poulenc*). As this Court previously emphasized in *United States ex rel. Derrick Roche Diagnostics Corp.*, 2019 WL 1789883 (N.D. Ill. 2019) and *Loughnane v. Zukowski, Rogers, Flood & McArdle*, 2019 WL 13073480, at *4 (N.D. Ill. 2019), the at-issue waiver doctrine is limited and "should not be used to eviscerate the attorney-client privilege." *Silverman Motorola, Inc.*, 2010 WL 2697599 at *4 (N.D. Ill. 2010) (citing *LG Electronics v. Whirlpool Corp.*, 2009 WL 3294802 (N.D. Ill. 2009)).

Thus, a privilege holder must affirmatively put at issue privileged communications before the privilege will be deemed waived. *See*, *e.g.*, *CSI Worldwide*, 2023 WL 5830788, at *5; *In re Concepts Am., Inc.*, 2021 WL 1235376, at *3; *Cage*, 2019 WL 6911967, at *1; *Capital Tax Corp.*, 2011 WL 1399258 at *2; *Beneficial Franchise*, 205 F.R.D. at 216. As the Third Circuit explained, "[a]dvice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner. The advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication." *Rhone-Poulenc*, 32 F.3d at 863.

### 4) Hillrom's Potential Spoliation Claim Does Not Warrant a Finding of an Implied At Issue Waiver by Linet.

Turning to the merits of Hillrom's arguments in support of an at-issue waiver, Hillrom first argues that Linet's alleged destruction of ESI from certain custodians warrants a finding that Linet has waived the attorney client privilege and an order compelling Linet to produce documents on its privilege log. *See* Motion [ECF No. 125] at 12-15, 19-20. Hillrom says Linet's privileged communications are "plainly responsive to the Court's December 2023 order" and contends that Order requires production of Linet's privileged communications. [*Id.*] at 13; *see generally* Order [ECF No. 104]. Hillrom contends production of Linet's privileged communications with counsel before its retention of Hunton Andrews Kurth, the law firm that represented Linet in this lawsuit when it filed its complaint, are "central to [] 'when Linet's duty to preserve arose,'" and this discovery "will inform the proper remedy for Linet's ESI destruction . . ." Motion [ECF No. 125] at 12.

As an initial matter, the Court disagrees with Hillrom's characterization of the Court's December 2023 Order, which allowed Hillrom to take limited discovery about when Linet's duty to preserve may have arisen but did not require Linet to produce privileged communications related to that issue. Rather, the Court allowed "narrowly tailored" discovery of "when Linet reasonably anticipated litigation," including "a log of communications between Linet and its law firm from December 2019 to April 2020 (containing the dates, participants in, and the subject matter of the communications)." [ECF No. 104] at 4. The Court rejected Hillrom's alternative request for "'any communications with Hunton that relate to potential claims by

Linet against Hillrom'" noting "[m]ost or at least many of the communications between Linet and its then-counsel, Hunton, are likely to be protected by the attorney-client privilege or even the work product doctrine." *Id.* at 4 n.4. While Linet's communications with counsel before the execution of Linet's retention agreement with Hunton may be relevant to when Linet's duty to preserve arose, Hillrom does not cite any cases authorizing or requiring piercing the attorney client privilege in such circumstances. *See* Motion [ECF No. 125] at 14-15.

Hillrom also says Linet impliedly waived privilege over the withheld documents on the log due to Linet's alleged spoliation of evidence "relevant to the accrual and tolling of its claims and/or its duty to preserve the deleted ESI." *See, e.g.,* Motion [ECF No. 125] at 11 ("Linet has put these documents 'at issue'–and thus waived any otherwise valid privilege over them–by pressing its affirmative (timelessness and merits) claims after destroying and otherwise exhausting nonprivileged information necessary to assess them."); *see also id.* 19-20 (arguing Linet waived privilege by "destroying the non-privileged information necessary to assess" tolling and accrual claims). As Linet notes, Hillrom has not filed a motion seeking relief for any alleged spoliation and the Court has not made any finding of spoliation. *See* Response [ECF No. 132] at 10-11. Hillrom acknowledges this, stating it "reserves full briefing" of the spoliation issue "for a Rule 37(e) motion." *See* Motion [ECF No. 125] at 17 n.16.

For these reasons, the Court rejects the argument that Linet impliedly waived privilege based on Hillrom's potential spoliation claim.

### 5) Linet's Pleadings and Discovery Responses Have Not Put Its Attorneys' Advice At-Issue.

Hillrom also argues that Linet's pleading of accrual and tolling theories in its Complaint results in an implied waiver of any privilege as to communications that are relevant "to assess those claims." Motion [ECF No. 125] at 19-20. In the Court's view, Linet's pleading of Hillrom's fraudulent concealment, although relevant to the analysis, is not dispositive of whether Linet waived privilege over communications on its privilege log. Rather, Hillrom still must demonstrate that Linet put at-issue the advice of counsel in privileged documents or communications.[7]

Hillrom points to language in *Motorola Solutions* where Hillrom says the court "noted waiver was *proper*" in certain cited cases applying Illinois law "because the plaintiffs put timeliness 'at issue' by 'rais[ing] . . . their inability to discover their cause of action *in their Complaints*." Reply [ECF No. 142] at 12 (emphasis in original). The Court disagrees that *Motorola Solutions* held that waiver is "proper" solely based on a plaintiff's allegations in a complaint about the timeliness of its claims. *See* Reply [ECF No. 142] at 12. In *Motorola Solutions*, the defendant raised a statute of limitations defense and argued that put at issue the plaintiff's privileged communications related to its knowledge of a potential cause of action. The court rejected this waiver argument, noting the defendant "raised the statute of limitations, not [plaintiff]," plaintiff responded to defendant's argument, and "[u]nder these circumstances, and under the holdings of most cases, [plaintiff] didn't

---

[7] Hillrom does not argue that Linet initially raised or pled its "preservation defenses," which the Court understands refer to Linet's potential responses to Hillrom's anticipated spoliation claim. *See* Motion [ECF No. 125] at 19.

13

inject a new issue into the case." *Motorola Sols., Inc.*, 2018 WL 1804350, at *6. The court also distinguished two cases where the plaintiff had pled the inability to discover the cause of action in a complaint, but also observed those decisions were "inapplicable as they deal with the Illinois state law of privilege and this is a case brought under federal law." *Id.* at *6. The court in *Motorola Solutions* did not otherwise address whether or when allegations about timeliness in a plaintiff's complaint are a sufficient basis to find an at-issue waiver.

Rather, *Motorola Solutions* noted "[a] number of courts agreed that a party does not waive the attorney-client privilege simply by pleading a claim which sounds in fraud or misrepresentation" and explained "it would substantially undercut the attorney-client privilege if the privilege were deemed waived in every case where a party made a claim of reasonable reliance upon the misrepresentations or omissions of the other party." *Id.* at *6. Moreover, in reaching a determination that there was no at issue waiver, the court emphasized the plaintiff "hasn't (yet) used selected privileged documents (or privileged communications) to show that it had no cause to investigate the facts underlying its claim—i.e., that it could not have discovered its claim by exercising due diligence— before late 2016." *Id.* at *7. For this reason, the court found "'advice of counsel [has not been] placed in issue' by [plaintiff]; nor has it yet attempted to prove its claim or its defense by disclosing or describing an attorney-client communication." *Id.* (also noting "[o]f course, that situation may change, and if it does, the issue will have to be revisited"). Accordingly, the Court disagrees with Hillrom's characterization of

*Motorola Solutions* as supporting an at-issue waiver merely because a plaintiff includes timeliness allegations in a complaint.[8]

Hillrom then suggests that even under *Rhone–Poulenc* the appropriate inquiry is "not whether [Linet] has stated an intent to introduce or use evidence of attorney communications" but rather more broadly whether Linet's claims "rel[y] on certain facts that can only be tested or rebutted" by allowing Hillrom "access to privileged material." Reply [ECF No. 142] at 10 (citing *Carson v. Lake Co.*, 2016 WL 1567253, at *5 (N.D. Ind. 2016)). As an initial matter, *Carson* did not cite *Rhone–Poulenc* for this proposition. Instead, *Carson* cited *Bacchi v. Massachusetts Mut. Life Ins. Co.*, 110 F. Supp. 3d 270, 275–76 (D. Mass. 2015), a decision analyzing the at-issue waiver under Second Circuit authority (*In re County of Erie*, 546 F.3d 222 (2d Cir. 2008)). *Bacchi*, in turn, explained that for an at-issue waiver, "the privileged information" must "be not only relevant, but also actually relied upon by the privilege holder to support a claim or defense in the case." *Bacchi*, at 276; *see also In re County of Erie Id.*, 546 F.3d at 229 ("[w]e hold that a party must rely on privileged advice from his counsel to make his claim or defense" but "[w]e decline to specify or speculate as to what degree of reliance is required . . .").

Given the circumstances here, the analysis is the same under either the Third Circuit (*Rhone-Poulenc*) or Second Circuit (*In re County of Erie*) standards for

---

[8] Hillrom also cites *Memorylink*, but that decision applied state privilege law and is further distinguishable because waiver was conceded. *See Motorola Sols.*, 2018 WL 1804350, at *8 (in "*Memorylink Corp. v. Motorola, Inc.*, 2010 WL 3167277, at *5 (N.D. Ill. 2010)—which applied state law—the plaintiff conceded that it had waived the privilege, but challenged the scope of that waiver. 2010 WL 3167277, at *5. As the issue of waiver was never joined, much less analyzed, these cases are of not helpful.").

at-issue waivers: to find an at-issue privilege waiver, Linet must affirmatively rely on the advice of counsel for its tolling or accrual claims. "[E]ven presuming that [a party's] state of mind 'might have been affected by advice of legal counsel,' this – in itself – is insufficient to establish waiver" where the party "does not rely on advice of counsel to support its position as to the claim or defenses at issue." *CSI Worldwide, LLC*, 2023 WL 5830788, at *5–6 (citing *Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D. 316, 325 (N.D. Ill. 2008) and *Cage*, 2019 WL 6911967, at *)*; Beneficial Franchise Co.*, 205 F.R.D. at 216–17 ("As did the *Rhone–Poulenc* court, we do not believe that merely asserting a defense or a claim is sufficient, without more, to waive the privilege."); *Breuder v. Bd. of Trustees of Cmty. Coll. Dist. No. 502*, 2021 WL 6091731, at *3–4 (N.D. Ill. Dec. 23, 2021) (same); *see Rhone–Poulenc*, 32 F.3d at 863.

On the record before the Court, Hillrom has failed to establish that Linet is relying on the advice of counsel. Notably, Linet says it "has not, and does not intend to, rely on any of the challenged communications to prove its claims." Response [ECF No. 132] at 6. It is true that "[a]s part of its complaint, Linet invokes certain accrual and tolling doctrines that affect the running of the limitations period, including the doctrine of fraudulent concealment, the discovery rule, and the continuing violation doctrine." Order [ECF No. 114] at 2 (citing Complaint at ¶¶ 386-405). *See* Motion [ECF No. 125] at 4-5 (citing paragraphs 386 and 388 of Complaint). But Hillrom does not identify any allegations that describe Linet's reliance on the advice of counsel. Rather, to support its allegation that it could not

16

have discovered Hillrom's anti-competitive conduct and/or its injury "until shortly before the filing of this Complaint," Linet identifies examples of Hillrom's alleged efforts to conceal its anti-competitive conduct, including that: Hillrom "prohibited affected customers from sharing any details that would alert others to Hillrom's conduct"; the relevant agreements with Hillrom's customers "are not publicly available" and Linet did not have access to those agreements or the "means by which to discover" the terms of those agreements; and Hillrom "insisted on strict confidentiality clauses," "threatened" customers "they would be subject to default" if they "disclose[d] the nature of their agreements," and "used threats and intimidation to eject Linet salespeople out of hospitals" to hide evidence of Hillrom's "backroom deals." Complaint [ECF No. 1] at ¶¶ 386-405.[9]

Hillrom also points to Linet's discovery responses as putting attorney advice at issue. Hillrom asserts "Linet says its counsel 'undertook an exhaustive pre-filing investigation' before bringing this suit" in its supplemental response to Hillrom's Interrogatory No. 3 seeking information about "how [Linet] 'discover[ed] Hillrom's anti-competitive conduct . . . and/or [Linet's] injury . . ." *See* Motion [ECF No. 125] at 6, 16; *see also* Reply [ECf No. 142] at 8-9 (asserting Linet's "interrogatory responses . . . affirmatively tie the viability of its . . . limitations arguments to the timing and content of 'an exhaustive pre-filing investigation' by Hunton"). Linet's supplemental interrogatory response, however, does not describe its counsel's

---

[9] Hillrom disputes that Linet can seek continuing violation damages for pre-2018 conduct but does not explain how or whether Hillrom contends that Linet's continuing violation theory supports Hillrom's at-issue privilege waiver arguments. *See* Motion [ECF No. 125] at 4 n.8.

investigation, but instead states "Linet" undertook the investigation, Linet's "employees discovered facts underlying the allegations in its Complaint," and identifies the Linet employees who participated in the investigation. Ex. D to Sherwood Decl. [ECF No. 126-4] at 7-9. Thus, the Court does not view Linet's discovery responses identified in Hillrom's Motion as putting the advice of counsel at issue for Linet's tolling and accrual claims.

Hillrom's argument appears to be based on principles of fairness in the final analysis. Hillrom says it needs to examine Linet's privileged communications to "fairly resolve" Linet's tolling and accrual arguments. *See* Reply [ECF No. 142] at 7. To some extent, the circumstances thus present "[t]he more difficult issue" where "the allegedly privileged communications are not expressly relied on in the case, but it is argued by the opponent that 'fairness' requires that privileged assertions be explored and the privilege be deemed waived because it is necessary to an informed determination of the claim or defense." *Motorola Sols., Inc.*, 2018 WL 1804350, at *5. Nevertheless "[w]hile some courts have discussed these issues in deciding whether an implied waiver occurred, the Court is aware of no case that has solely relied upon a fairness analysis to find an implied waiver of privilege." *See Cage*, 2019 WL 6911967, at *2 ("that holding would effectively eradicate the attorney-client privilege. Relevant evidence is almost always found in attorney-client communications – that is the point of the privilege.").

Moreover, Hillrom has not demonstrated that fairness principles, even were such a calculus a sufficient basis to find an implied waiver of privilege, necessitate a

waiver here. Hillrom can question Linet's witnesses about Linet's knowledge of Hillrom's anti-competitive conduct and other information in Linet's complaint and discovery responses. *See Cage*, 2019 WL 6911967, at *2 ("Plaintiff has not provided any specific instance in which a Defendant has referenced or identified communications with counsel as being part of the assertion of any affirmative defense. Moreover, Defendants can seek to establish through non-privileged communications and actions these affirmative defenses; nothing about these defenses mandates that advice of counsel be used to prove them."); *Cap. Tax Corp.*, 2011 WL 589615, at *6–7, *objections overruled*, 2011 WL 1399258 (N.D. Ill. Apr. 12, 2011) (where "government intends to meet its burden of proof without disclosing privileged information, at-issue waiver does not apply"); *see also In re Lifetrade Litig.*, 2022 WL 3644357, at *6 (S.D.N.Y. Aug. 24, 2022) ("Defendants may fully explore through non-privileged documents, interrogatories, depositions, and other discovery tools when they learned of certain facts that may have put them on notice of a claim and may even confirm with Plaintiffs that they explored the possibility of litigation prior to [the claimed date] without going into the substance of their communications with lawyers and work product.").

In short, if Linet intends to prove its accrual and tolling theories without relying on the advice of counsel, the fact that it pleads these theories does not open the door to Hillrom's wholesale review of hundreds of Linet's privileged communications. Response [ECF No. 132] at 4. Hillrom can take discovery about the

19

extent of Linet's knowledge of Hillrom's alleged anticompetitive conduct without the need to reveal Linet's privileged communications with counsel.

Courts in other jurisdictions have likewise rejected arguments that fraudulent concealment allegations that are not expressly premised on the advice of counsel amount to a waiver of privilege. That is so notwithstanding that those communications are likely to be relevant to the plaintiff's knowledge of the defendant's alleged misconduct at some earlier point in time. In *In re Lifetrade Litig.*, the court recognized that "[b]ecause the privilege log indicates that at least some Plaintiffs were exploring litigation against Lifetrade and related entities before 2016, Defendants understandably want to see the precise communications" but concluded "the mere relevance of the privileged communications does not trigger an at-issue waiver" where the plaintiffs were not relying on the advice of counsel. *See id.*, 2022 WL 3644357, at *6 ("Nor does the statute of limitations defense, which Plaintiffs anticipated in their pleading, justify a finding of at-issue waiver, which is based on concepts of fairness in litigation" because "Plaintiffs are not relying on the advice of counsel in this matter and have not placed their attorney-client communications and work product at issue"). *See, e.g., Mattel, Inc. v. MGA Ent., Inc.*, 2011 WL 13128608, at *2–3 (C.D. Cal. Jan. 17, 2011) (rejecting that "a fraudulent concealment allegation 'put[s] the privileged information at issue'," reasoning "[a] fraudulent concealment allegation, like any other common law fraud claim, requires a showing of reliance. This showing of reliance can often be rebutted with evidence that a plaintiff did not, in fact, rely upon the allegedly fraudulent

representation, either because it recognized the falsity of the representation or because the representation did not induce its eventual conduct. It is axiomatic as a matter of both California law and federal common law that the mere allegation of reliance does not constitute a wholesale waiver of the privilege as to all attorney-client communications that evidence or disprove a connection between the misrepresentation and plaintiff's conduct in reliance."); *SD3, LLC v. Black & Decker (U.S.), Inc.*, 2016 WL 4722001, at *2–3 (E.D. Va. July 29, 2016), *aff'd in part, rev'd in part*, 2016 WL 11784677 (E.D. Va. Sept. 12, 2016) (recognizing that where plaintiff argued "fraudulent concealment to excuse her late filing," "attorney-client communications may show whether Plaintiffs' lack of knowledge of the facts caused their late filing" and therefore those "communications may have been relevant," but "plaintiff had not relied on them to make her argument and therefore had not waived the attorney-client privilege").[10]

For all the above reasons, the Court finds that Linet's pleading of tolling and accrual theories in anticipation of Hillrom's statute of limitations and other timeliness defenses does not amount to an implied at-issue waiver of all of Linet's

---

[10] Hillrom cites *In re Lifetrade Litig.* in support of its argument that Linet should supplement its interrogatory response, but omits the contrary holding of this decision regarding at-issue waivers. *See* Motion [ECF No. 125] at 26 (citing *In re Lifetrade Litig.*, 2022 WL 3644357, at *6 for proposition that "Hillrom is thus entitled to 'fully explore through . . . interrogatories . . .when [Linet] learned of certain facts that may have put [it] on notice of a claim" but omitting full quotation stating "Defendants may fully explore through non-privileged documents, interrogatories, depositions, and other discovery tools when they learned of certain facts that may have put them on notice of a claim and may even confirm with Plaintiffs that they explored the possibility of litigation prior to 2016 without going into the substance of their communications with lawyers and work product."). Hillrom's selective quotation obscures the court's holding that such alternative discovery methods are sufficient to explore fraudulent concealment allegations like those at issue here and thus there is no need to find an implied at-issue waiver.

privileged communications with counsel regarding Hillrom's conduct in the years before Linet filed the Complaint.

### B. Linet's Privilege Log Complies With The Agreed ESI Protocol.

Hillrom also argues that Linet's privilege log fails to provide sufficient information to assess the basis for certain privilege assertions and improperly redacts subject lines and file names in violation of the ESI Protocol in this case and Rule 26(b)(5)(a)(ii). Motion [ECF No. 125] at 22-25. Hillrom seeks to compel Linet to produce the withheld documents or alternatively to provide an updated privilege log with additional descriptions.[11]

First, Hillrom says certain entries in Linet's privilege log (identified in Column D of Hillrom's Exhibit O) are deficient because they do not describe "whether the communication relates to the claims at issue in this case." Motion [ECF No. 125] at 23. Hillrom provides one example in its brief, pointing to an entry where Linet gave no privilege description but disclosed the email subject line (identifying the communication as about a large hospital system), as well as the date and senders and recipients of the email, which included outside counsel. [*Id.*]

In Response, Linet argues the parties agreed to "metadata-only privilege logs as a burden saving measure" and this entry complies with the agreed ESI Protocol by providing the subject line and information identifying the communication as between Linet and outside counsel. Response [ECF No. 132] at 11-12. Linet also

---

[11] In its conclusion, Hillrom also asks the Court to conduct an *in camera* review of the 271 challenged communications and documents identified in the privilege log. Motion [ECF No. 125] at 23, 28.

points out the ESI Protocol provides a process by which Hillrom can request a "full Rule 26 privilege log entry" if it has a good faith belief to assert the communication is not privileged, but that Hillrom did not do so for this exemplar log entry (or, it appears, for any other log entries, *see* Response [ECF No. 132] at 13). Hillrom acknowledges "the parties agreed to metadata-only privilege logs," but disputes that Linet has complied with the ESI Protocol. Reply [ECF No. 142] at 13-14.

The agreed ESI Protocol Order allows the parties to provide a metadata-only privilege log with objective fields such as the date, sender and recipient, email subject or file name, and custodian, and without any privilege description. *See* ESI Protocol Order [ECF No. 40] at Paragraph VI.C.1(a). The ESI Protocol only requires a privilege description if the basis for privilege is not apparent from the objective metadata. [*Id.*] at Paragraph VI.C.1(b). This metadata-only log is an alternative to the more fulsome privilege log required by Rule 26(b)(5). *See* [*id.*] at Paragraph VI.C.1(d) (describing process for a party to request a Rule 26(b)(5) log entry).

Under the terms of the agreed ESI Protocol, Linet's log entries identifying communications between Linet employees and outside counsel with a subject line or file name are permissible and sufficient "metadata only" entries. *See* [Response ECF No. 132] at 12-13. Thus, the Court understands the heart of this dispute to be about whether Linet's privilege log descriptions are adequate in instances where the subject line or file name is redacted. Hillrom's objects that in those circumstances, Linet's descriptions of a document or communication as regarding an "antitrust case assessment" or "updated antitrust assessment" are too vague to assess the basis for

privilege. Motion [ECF No. 125] at 23-25. Hillrom says the ESI Protocol requires Linet to provide a separate "'substitute [ ] description' of the information the [redacted] fields would normally provide, such as whether it pertains to "Hillrom's beds, nurse call systems, contracts, or something else entirely." [*Id.*] at 23-25. Linet, in turn, says the ESI Protocol permits redactions of subject lines and file names and only requires a description of the document, not a separate description of the redacted field. Response [ECF No. 132] at 14-15. Linet says it has complied with this requirement by providing information describing the withheld communication or document in the Attorney/Description of Privileged Material field in the log. [*Id.*]

The Court agrees with Linet that the ESI Protocol does not require a separate description of the redacted subject lines or file names. The ESI Protocol provides that "if the basis for the privilege asserted is not apparent from the objective metadata" the party must also include an "Attorney/Description of Privileged Material" field. ESI Protocol Order [ECF No. 40] at Paragraph VI.C.1(b). In the next paragraph, the ESI Protocol states that if a party redacts the email subject or file name of a document because "the contents of these fields may reveal privileged information" the party "may substitute a description of the document." [*Id.*] at Paragraph VI.C.1(c). The Court agrees with Linet that both paragraphs refer to the same description of the privileged document and that the ESI Protocol does not require a separate description of the subject matter of a redacted email subject or file name.

The question is whether Linet's document descriptions are adequate under the ESI Protocol. Linet generally describes the withheld emails between Linet and outside counsel as about requests for legal advice related to an antitrust case assessment. *See* Ex. O [ECF No. 126-15]. Hillrom says Linet's descriptions fail to provide "a document description that complies with Rule 26(b)(5)" and generally cites law regarding Rule 26(b)(5) requirements for a privilege log. *See* Reply [ECF No. 142] at 14; Motion [ECF No. 125] at 24-25 (citing cases). Hillrom's argument, however, ignores the parties' agreed ESI Protocol, which expressly contemplates a metadata-only log in lieu of a log under Rule 26(b)(5). Importantly, the ESI Protocol also provides an agreed process for the parties to address good faith requests for a log entry "in compliance with Fed. R. Civ. P. 26(b)(5)" and to dispute privilege claims. [ECF No. 40] at Paragraph VI.C.1(d) & VI.E. Because Hillrom did not comply with this process for challenging the adequacy of Linet's privilege log entries, *see* Response [ECF No. 132] at 12-13, this dispute is not ripe for resolution.[12]

---

[12] Hillrom also argues some of Linet's log entries fail to comply with Rule 26(b)(5) because the descriptions "contain only conclusory statements – like 'compiled and/or sent to' counsel that are legally insufficient under Rule 26. . ." Reply [ECF No. 142] at 14. This argument appears to relate to descriptions of documents attached to email communications between Linet and its counsel. It does not appear that Hillrom is challenging the descriptions of the emails as privileged (apart from the at issue waiver argument) and its objection focuses on the description of the attachments. The Court separately addresses Hillrom's argument that such attachments are *per se* not privileged. With respect to the log descriptions for such attachments, Hillrom only specifically challenges one entry, LinetPriv00145. Reply [ECF No. 142] at 14 n.7. With respect to LinetPriv00145 (as well as LinetPriv00146), the log description does not say it was "compiled" for Linet's counsel; rather the description reads "Document providing information to enable the rendering of legal advice from Hunton Andrews Kurth regarding antitrust case assessment." Ex. O [ECF No. 126-15]. Hillrom's argument about this document instead appears to be that it cannot assess privilege because "the log does not show [this document] was *even* sent to" Linet's outside counsel. Reply

For these reasons, the Court denies Hillrom's motion to compel with respect to assertedly inadequate privilege log descriptions. This decision is without prejudice to any further meet and confer discussions between the parties regarding Linet's privilege log descriptions under the process described in the ESI Protocol.

## C. Attachments to Attorney Client Communications May Be Withheld as Privileged Without an Independent Basis for Privilege.

With regards to email attachments, Linet initially says Hillrom did not adequately meet and confer on this dispute. Response [ECF No. 132] at 2-3. Hillrom responds that Linet first disclosed its reasons for withholding these documents on February 23, 2024, and Hillrom acted promptly to attempt to resolve the dispute thereafter, despite operating within a truncated time period, *see* [ECF No. 118] (setting March 18, 2024 deadline for motion to compel on outstanding Phase 1 discovery issues). Reply [ECF No. 142] at 3-4. Hillrom viewed the attachment dispute to be at an "impasse" based on Linet's response on March 5. [*Id.*] In its

---

[ECF No. 142] at 14 n.7. From the context of the log, however, it is unclear whether the documents referenced at LinetPriv00145 and LinetPriv00146 (respectively, created on March 6 and March 12, 2020) were, in fact, attached to an email preceding those log entries (LinetPriv00143) that was sent on March 12, 2020 by a Linet employee to outside counsel. Although only the log description for LinetPriv144 expressly states it was sent to outside counsel on March 12, 2020, given Linet's assertion of attorney client privilege over LinetPriv145 (as well as LinetPriv146), the description of LinetPriv145, and the description of the email at LinetPriv143 ("Email from client to attorney reflecting request for and providing information to enable the rendering of legal advice regarding antitrust case assessment"), it seems plausible that LinetPriv145 was provided to Linet's counsel in an attorney client privileged communication. Hillrom also generally disputes Linet's privilege claim over calendar/meeting invitations, based only on the assertion that such invites "rarely contain privileged information." Reply [ECF No. 142] at 14 n.7. In the Court's view, the nature of these objections illustrates why Hillrom should have followed the process set forth in the ESI Protocol, including any request for a Rule 26(b)(5) description, for these entries before raising this dispute with the Court. *See* [ECF No. 40] at Paragraph VI.C.1(d). If the parties engage in the process set forth in the ESI Protocol for such disputes, it is possible or even likely that the parties can come up with a satisfactory solution.

discretion, the Court will consider Hillrom's arguments regarding email attachments, but notes Hillrom's Motion did not address Linet's argument in the March 5 letter that Linet had produced or would produce attachments that exist independently of the privileged communications. *See* Linet's March 5, 2024 Letter [ECF No. 133-3] ("March 5 Letter"). Although this dispute may not have been entirely resolved if the parties had further discussions, the issues now presented could have been narrowed if additional discussions had taken place after Linet's March 5th response.[13]

Turning to Hillrom's argument, Hillrom says Linet improperly withheld 33 documents that were attached to communications with Linet's counsel but which are not independently privileged. Motion [ECF No. 125] at 17-19. Hillrom notes 20 of these attachments were created before December 28, 2017, and are from the period when Hillrom asserts Linet destroyed documents related to the timeliness of Linet's claims. [*Id.*] at 17. The Court notes that all the emails to which these documents were attached were sent to Linet's outside counsel, and 30 of the emails were sent to Linet's outside counsel in the six months before the complaint was filed. *See* Linet's Privilege Log, Exhibit A to Sherwood Decl. [ECF No. 126-15] ("Linet's Privilege Log"). The crux of the dispute here is not about the privileged character of the emails *per se* but about whether the attachments are covered by the attorney client privilege. Hillrom does not appear to challenge Linet's assertion that

---

[13] The Court notes Linet's argument that Hillrom may not have communicated with Linet about all the specific challenged log entries prior to filing the Motion. *See* Response [ECF No. 132] at 3.

the emails, including those forwarding attachments, are protected by the attorney client privilege or the work product doctrine other than based on the at issue waiver and perhaps in the context of its argument about the application of the ESI Protocol which are arguments the Court has separately addressed elsewhere in this Memorandum Opinion and Order. If Hillrom is challenging the descriptions of emails Linet sent to its counsel more generally, that is not apparent from the briefing. Moreover, given the timing of the emails and Linet's description of the context in which they were sent, it seems more than plausible that Linet can establish the basis for its invocation of the attorney client privilege or work product doctrine for the emails which would bring the focus back to the attachments though the Court is not deciding that issue today because it is not squarely presented by Hillrom in its Motion. Therefore, for purposes of this section of its decision today, the Court will treat the emails to Linet's counsel forwarding these 33 attachments as privileged.

Linet argues attachments to privileged emails that sought legal advice are also privileged as part of that communication, but it also says 29 of the 33 attachments have been or will be produced "as they exist independently of the privileged communications." Response [ECF No. 132] at 3-4. Linet refers to its March 5 Letter to Hillrom, which argued where "documents exist independently of a privileged communication" they "are not themselves independently privileged" and will be produced (if responsive to other discovery) in the form those documents exist apart from as attached to privileged communications. March 5 Letter [ECF No. 133-

3] (citing *Rainey v. Plainfield Cmty. Consol. Sch. Dist. No. 202*, 2009 WL 1033654, at *2 (N.D. Ill. Apr. 16, 2009) and *Muro v. Target Corp.*, 250 F.R.D. 350, 363 n.21 (N.D. Ill. 2007) ("*Muro III*"). Hillrom does not address the cases cited in the March 5 Letter, instead maintaining there is a *per se* rule that attachments to privileged communications cannot be withheld without an independent basis for privilege. Reply [ECF No. 142] at 4-5.

The status of attachments to privileged communications is more nuanced than Hillrom acknowledges. Both parties rely on *Upjohn*. Linet cites *Upjohn* for the position that the attorney client privilege also protects "the giving of information to the lawyer to enable him to give sound and informed advice." Response [ECF No. 132] at 4. Hillrom says *Upjohn* provides that a party "may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney." Motion [ECF No. 125] at 19. But *Upjohn* does not directly address the issue presented here, namely whether non-privileged documents attached to privileged communications can be withheld as a privileged part of the communication, and whether those attachments should be produced as they exist independent of the privileged communication.

As Hillrom notes, *Upjohn* acknowledged a distinction between the disclosure of facts and the disclosure of communications about those facts. Motion [ECF No. 125] at 19. *Upjohn* stated "[a] fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose

any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney." *Id.*, 449 U.S. 595 (quoting *Philadelphia v. Westinghouse Electric Corp.*, 205 F.Supp. 830, 831). As the Court sees it, the question presented here is whether requiring Linet to produce the attachments to privileged communications with counsel is akin to requiring the disclosure of non-privileged facts permitted under *Upjohn* or is closer to the disclosure of privileged communications about those facts that *Upjohn* held can be withheld as privileged.

Hillrom primarily relies on two cases: *Lee v. Chi. Youth Ctrs.*, 304 F.R.D. 242, 248–49 (N.D. Ill. 2014), *objections sustained in part and overruled in part* (Aug. 6, 2014), which references Hillrom's second cited case, *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 221 (N.D. Ill. 2013). In *Lee*, the court held "sending an otherwise non-privileged document to a lawyer in connection with a request for legal advice will not make the attached document independently privileged and immune from discovery, even though the communication seeking legal advice is privileged." *Id.* at 249 (citing *RBS Citizens*, 291 F.R.D. at 221 for proposition that "attachments to emails are judged separately from their primary documents and that to be withheld each must individually meet the privilege"). Linet does not argue that underlying documents attached to privileged communications are "independently privileged and immune from discovery" from discovery; to the contrary, Linet says it has produced or will produce such documents that independently exist apart from the privileged communications. For that reason, *Lee* is inapplicable here.

Turning to *RBS Citizens*, Hillrom says this decision found "a withheld attachment to an otherwise protected email 'must *individually meet the privilege standard*'." Motion [ECF No. 125] at 19 (emphasis in Motion). That is not an accurate description of the court's holding. As an initial matter, the holding in *RBS Citizens* did not address the status of non-privileged attachments to privileged emails. Rather, the plaintiff there had argued many of the emails at issue were "only responsive and privileged by virtue of their attachments;" in response, the court noted "[e]-mails can be produced independently of their attachments, and vice versa." *RBS Citizens*, 291 F.R.D. at 221. The court held "[t]o the extent the e-mails are not themselves privileged . . . and are responsive, and to the extent the e-mails are necessary to contextualize the non-privileged responsive attachments, RBS is directed to produce them." *Id.*, 291 F.R.D. at 221. Thus, *RBS Citizens* found non-privileged but responsive attachments to non-privileged emails should be produced, and in some instances, the non-responsive, non-privileged emails to which those documents were attached may also need to be produced to provide context. *Id.* With respect to privileged communications, the court directed the plaintiff to include them in a privilege log that complies with Rule 26(b)(5). *Id.* Neither of these holdings address whether a non-privileged attachment to a privileged email can be withheld as part of the privileged communication.[14]

---

[14] Hillrom also cites *RBS Citizens* for the proposition that "[m]aterials created in the ordinary course of business" cannot be privileged, Motion [ECF No. 125] at 18, but that quote addressed the scope of work product protection, not whether the attorney client privilege extends to attachments to privileged communications. *See RBS Citizens*, 291 F.R.D. at 217 (N.D. Ill. 2013) ("Materials created in the ordinary course of business which

The particular language Hillrom relies on from *RBS Citizens* comes from a description of yet another decision, *Muro v. Target Corp.*, 2006 WL 3422181, at *1 (N.D.Ill. Nov. 28, 2006) ("*Muro I*"). *See RBS Citizens*, 291 F.R.D. at 221 (describing *Muro I* as "stating that attachments are judged separately from their primary documents and that to be withheld, each must individually meet the privilege standard"). The ultimate outcome of the convoluted history of discovery rulings in *Muro I* is summarized in *Acosta v. Target Corp.*, 281 F.R.D. 314, 317–19 (N.D. Ill. 2012), but suffice it to say the reasoning referenced by Hillrom from *RBS Citizens* was subsequently rejected by the district court on review of the magistrate judge's ruling in *Muro I*. *See Acosta*, 281 F.R.D. at 317–19 (describing *Muro III*, 250 F.R.D. 350 (N.D.Ill. 2007), *aff'd on other grounds*, 580 F.3d 485 (7th Cir. 2009)).

In *Muro I*, the magistrate judge addressed emails that "contain attachments" and reasoned "[a]ttachments which do not, by their content, fall within the realm of the privilege cannot become privileged by merely attaching them to a privileged communication with the attorney. . . . Attachments containing business, not legal information, cannot be privileged" and held that Target, in itemizing its privilege claims on a log, "must establish . . . that the privilege applies independently to each attachment." *Muro I*, 2006 WL 3422181, at *5. The district court rejected that proposition on review of the magistrate judge's decision. The district court noted "[a]s *Upjohn Co. v. United States* makes clear, the fact that non-privileged information was communicated to an attorney may be privileged, even if the

---

may have the incidental effect of being helpful in litigation are not privileged under the work product doctrine.").

underlying information remains unprotected." *Muro III*, 250 F.R.D. at 363 (citing *Upjohn*, 449 U.S. at 395–96). Thus, the court explained "[a] party can therefore legitimately withhold an entire e-mail *forwarding* prior materials to counsel, while also disclosing those prior materials themselves." *Id.* The court in *Muro III* found the magistrate judge ruling that is cited affirmatively in *RBS Citizens* was in error "by reading [Rule 26(b)(5)(A)] to require a method of itemization that will, in some cases, force parties to disclose privileged information," namely "the topic or contents of material forwarded to counsel." *Id.*

Even more on point, the district court found "communications of facts are privileged even if the original facts are not. Thus, when letters to counsel included certain attachments, the fact that those documents were attached may be privileged, even if the originals are not." *Muro III*, 250 F.R.D. at 363 n.21 (internal citations omitted). *See also Rainey*, 2009 WL 1033654, at *2 ("If legal advice is requested regarding the attachments, the communication with the attorney is privileged . . . communications, including any attachments, sent to the attorney are privileged" but acknowledging "[w]hether the attachments as independent documents are discoverable is a separate question" and "the communications as originally received . . . still must be disclosed to the extent they are responsive to a proper discovery request . . .") (citing *Muro III*, 250 F.R.D. at 363). For all these reasons, Hillrom's cited authority does not support its position.[15]

---

[15] *RBS Citizens* cites *Sneider v. Kimberly–Clark Corporation*, 91 F.R.D. 1, 5 (N.D. Ill. 1980), 291 F.R.D. at 221, but the court in *Muro III* also distinguished that decision, stating "*Sneider* merely used the primarily non-legal content of communications as evidence that the routine forwarding of copies to counsel was not conducted for the primary purpose of

Hillrom also argues Linet cannot simultaneously produce certain documents while also asserting privilege over those same documents when they are attached to privileged communications. Reply [ECF No. 142] at 4. The Court disagrees to the extent Hillrom asserts this is a *per se* rule. As the court acknowledged in *Muro III*, "[i]t could well be confusing to require a party to list documents in its privilege log that it had already furnished to opposing counsel" but it reasoned "[m]ore troublingly, the disclosure of this information could very well be a breach of attorney-client privilege. If the opposing party can gather enough material from the log and already produced materials to discover the topic or contents of material forwarded to counsel, then a privileged communication has been revealed to that party." *Id.* (emphasis in original). Hillrom fails to address this nuance.

Hillrom also suggests that regardless of whether Linet has or will produce "documents corresponding to" those listed in the log, to the extent those documents are not identical, the attachments listed on the log (in the form those attachments were sent to counsel) must also be produced. Reply [ECF No. 142] at 4. Courts have rejected this view, which again ignores the nuance that the transmission or communication of facts or documents to counsel for the purpose of obtaining legal

---

obtaining legal advice." *Muro III*, 250 F.R.D. at 363. Hillrom does not argue the disputed log entries here involve "routine forwarding" of documents to counsel. Moreover, the court in *Muro III* noted "[t]o the extent that *Sneider* could be read to stand for a rule exempting all communications of business information from protection, this suggestion would be contrary to the Seventh Circuit's law, which does not impose such a requirement," explaining that "[a] discussion of 'non-legal issues' can very often be privileged" and under Seventh Circuit law, "[f]or a communication between an attorney and his client . . . to be privileged, the communication must be made in confidence, the communication be made for the purpose of facilitating legal services by the lawyer for the client, and the client must not have waived the privilege." *Id.* (citing *United States v. BDO Seidman, LLP,* 492 F.3d 806, 815 (7th Cir. 2007)).

advice can be privileged even where the underlying facts or documents are not. *See Belcastro v. United Airlines, Inc.*, 2021 WL 1531601, at *6 n.2 (N.D. Ill. Apr. 19, 2021) (where privilege log disclosed the same document had been sent to counsel as well as to a non-lawyer union representative, "[t]he attachment provided to [the union rep] is not privileged because it was produced independently to [the union rep] for purposes of non-legal advice, and therefore it must be produced to Defendants" further noting "[t]he Court is basing its assumption that the attachments are the same on the similar timing of the emails and the similar document titles. To the extent the documents are different, Plaintiff need only provide the version sent to [the] union representative."). The Court acknowledges it does not know whether the withheld attachments are identical to the documents Linet says it has produced or will produce, but it also understands Linet's statement that it is producing documents that "correspond to" the withheld attachments to mean the documents are substantially the same. In other words, the Court understands Linet to say there are no material differences between the attachments and the documents independently produced that would be relevant to the issues in this case. To the extent there are some differences between the documents, however, Linet has asserted privilege over the version that was provided to its counsel for purposes of seeking legal advice.[16]

---

[16] The Court also acknowledges some decisions in this district continue to apply a *per se* rule along the lines Hillrom suggests, although some such decisions appear to mistakenly rely on cases applying the ultimately rejected reasoning from *Muro I. See, e.g., RTC Indus., Inc. v. Fasteners for Retail, Inc.*, 2019 WL 5003681, at *12 (N.D. Ill. Oct. 8, 2019) ("the emails themselves do not contain anything that could be reasonably deemed to be privileged, and non-privileged documents do not become privileged simply because they are

Courts in other jurisdictions have agreed with the reasoning in decisions like *Muro III* and *Rainey* and found attachments to privileged communications can properly be withheld as part of an attorney client privileged communication, at least in some instances. *See*, *e.g.*, *United States ex rel. Salomon v. Wolff*, 2022 WL 17327214, at *2–3 (D.N.J. Mar. 14, 2022) (collecting cases); *Willis Elec. Co. v. Polygroup Trading Ltd.*, 2021 WL 568454, at *5–8 (D. Minn. Feb. 16, 2021) (discussed below); *Hilton-Rorar v. State & Fed. Commc'ns Inc.*, 2010 WL 1486916, at "*7 (N.D. Ohio Apr. 13, 2010) ("Confidential e-mails from a client to his attorney attaching a pre-existing unprivileged e-mail may, nevertheless, be protected.") (citing *Barton v. Zimmer Inc.*, 2008 WL 80647 *5 (N.D. Ind. 2008) ("To the extent these e-mails contain attachments or other e-mail communications that are not otherwise independently privileged, the attorney-client privilege nevertheless applies because to order the disclosure of those e-mails would necessarily reveal the substance of a confidential client communication made seeking legal advice.")); *Am. W. Bank Members, L.C. v. Utah*, 2022 WL 103736, at *8–9 (D. Utah Jan. 11, 2022) ("the fact that a non-privileged document is forwarded is not enough to defeat a claim of privilege," citing *General Electric Co. v. United States*, 2015 WL 5443479 at *2, 2015 U.S. Dist. LEXIS 122562 at *5 (D. Conn. Sept. 15, 2015)) ("Considering the

---

sent to an attorney," citing, among other decisions, *Muro I*, 2006 WL 3422181, at *5); *United States v. Cmty. Health Network, Inc.*, 2023 WL 3151847, at *6–8 (S.D. Ind. Apr. 28, 2023), *report and recommendation adopted sub nom. United States ex rel. Fischer v. Cmty. Health Network, Inc.*, 2023 WL 4577673 (S.D. Ind. June 27, 2023) ("Attachments to an email do not become privileged just by virtue of the privileged nature of the email itself" citing *RBS Citizens*, 291 F.R.D. at 221, *Muro I*, 2006 WL 3422181, at *5, and *Sneider*, 91 F.R.D. at 4). As set forth above, however, the Court agrees with the body of case law recognizing that non-privileged attachments to privileged emails may in some circumstances also be withheld as privileged.

parties to the email and the contents of the forwarded email and its attachments, these documents can fairly be considered to be confidential attorney-client communications.").

*Willis Elec. Co.* provides a helpful overview of the competing decisions in this area. The court explained "[i]n the era of e-discovery, lower courts have differed with respect to how *Upjohn*'s holding applies to email attachments. Lower courts agree that an otherwise-discoverable attachment to a privileged email to counsel is not *automatically* cloaked in privilege. But lower courts have not always been clear about what protection—if any—applies to such attachments . . ." *Willis Elec. Co.*, 2021 WL 568454, at *5–8. "A large set of lower courts have interpreted *Upjohn* to mean that even though the underlying content of the independently-discoverable attachments is not privileged, the act of sending the attachments is privileged. . . These courts are concerned that if the act of attachment were disclosed, opposing counsel would be able to 'reverse engineer' the contents of the otherwise-privileged email from the attachments." *Id.* at *5–8 (citing *Muro III*, 250 F.R.D. at 363, among other decisions). "Another group of lower courts do not extend the privilege to independently discoverable email attachments" instead concluding "for the attorney-client privilege to apply to attachments, each attachment must qualify for the privilege." *Id.* at *5–8 (citing *Doe v. Intermountain Health Care, Inc.*, 2021 WL 425117, at *6 (D. Utah Feb. 8, 2021); *see also Elm 3DS Innovations, LLC v. Samsung Elecs. Co.*, 2021 WL 4819904, at *4–5 (D. Del. Oct. 15, 2021) ("Courts have taken varying approaches regarding the privilege claims over email attachments"

citing *Willis Elec. Co.*, 2021 WL 568454 and *Intermountain Health Care, Inc.*, 2021 WL 425117).[17]

Ultimately, the court in *Willis Elec. Co.* concluded "the approach taken by those courts recognizing some limited protection for email attachments is the better reasoned of the two lines of cases . . ." including because "requiring disclosure of the attachments themselves creates a risk that an opponent may reverse engineer the substance of a client's request for legal advice." *Id.*, 2021 WL 568454, at *5–8. This Court agrees. *Upjohn* recognized a party can "invoke the attorney-client privilege and refuse to answer a discovery request" that seeks disclosure of the information that had been sent to the party's counsel. *Id.*, 2021 WL 568454, at *5–8. "If legal advice is requested regarding the attachments, the communication with the attorney is privileged. Whether the attachments as independent documents are

---

[17] The Court acknowledges *Intermountain Health Care* came out the other way, holding "pre-existing, non-privileged emails and attachments sent with a privileged communication seeking legal advice will not themselves be privileged merely because they were sent as part of a communication that was." *Id.*, 2021 WL 425117, at *2–3. The decision in *Intermountain Health Care* was premised on the Supreme Court's statement in *Fisher v. United States* that "[t]his Court and the lower courts have thus uniformly held that pre-existing documents which could have been obtained by court process from the client when he was in possession may also be obtained from the attorney by similar process following transfer by the client in order to obtain more informed legal advice." *Fisher*, 425 U.S. 391, 403–04 (1976). The Court views *Fisher* as distinguishable as it was issued during a time before email was commonplace and therefore addressed circumstances where the only copy of a document was transferred to the attorney. *Fisher* did not contemplate present day realities, where multiple electronic copies of documents routinely exist. Moreover, the language in *Fisher* should be read in light of the Supreme Court's later decision in *Upjohn*, which recognized the attorney client privilege does apply to the communication of facts to an attorney for the purpose of seeking legal advice. *See* Jared S. Sunshine, *The Part & Parcel Principle: Applying the Attorney-Client Privilege to Email Attachments*, 8 J. Marshall L.J. 47, 77 n.73 (2014) ("*Fisher* was a pre-email case whose holding was essentially that non-privileged documents could not be sheltered from discovery merely by physically lodging them with an attorney. Read properly, *Fisher* and *Upjohn* do not point in contradictory directions . . . But because *Upjohn* postdates *Fisher*, any conflict between the two holdings would have to be resolved in favor of *Upjohn*.").

discoverable is a separate question." *Id.* at *5–8 (quoting *Rainey*, 2009 WL 1033654, at *2).

Linet says documents corresponding to 29 of the 33 challenged attachments listed in the log already have been produced or are "in the queue" for production in connection with ongoing discovery. Response [ECF No. 132] at 3-4. Therefore, this appears to present "an ordinary case" where other discovery requests "would have led to the production of" the attachments to privileged emails "as independent documents located elsewhere in [plaintiff's] repository of electronically stored information." *Willis Elec. Co.*, 2021 WL 568454, at *5–8; *see also Elm 3DS Innovations*, 2021 WL 4819904, at *4–5 ("... if Plaintiff contends that the act of sending a particular attachment is privileged, [Plaintiff must] confirm that the attachment has already been produced in discovery under circumstances that demonstrate which custodians had possession of it"); *Rainey*, 2009 WL 1033654, at *2 ("The communications, including any attachments, sent to the attorney are privileged. However, the communications as originally received from the media or parents still must be disclosed to the extent they are responsive to a proper discovery request."). If the attachments no longer existed in any form other than as attached to a privileged email, the analysis might be different, but that does not appear to be the case here. *Cf. Willis Elec. Co.*, 2021 WL 568454, at *8 (ordering plaintiff to "conduct a reasonable search to determine whether other versions of the photos and video files exist that are not tied to any privileged communication").

Hillrom notes there are 12 documents among the 29 attachments on the privilege log as to which Linet says it has already produced documents corresponding to those log entries. Reply [ECF No. 142] at 4-5. Hillrom acknowledges that it located four documents in Linet's production with file names that match those disclosed on Linet's log, but Hillrom notes it was unable to locate two of the documents where Linet disclosed a file name in Linet's production. [*Id.*] (identifying LinetPriv00320 and LinetPriv00449). In the Court's view, given that Linet has already disclosed a file name identifying those two documents, Linet must provide the Bates or other identifying number or information to show where in Linet's production the corresponding document was produced. For the remaining six attachments that Linet says it has already produced but has redacted the file name, Linet should provide a certification under oath that it has produced the documents corresponding to those log entries. This certification is akin to the signed response that Linet would be required to provide under Federal Rule of Civil Procedure 33(b)(5) to an interrogatory from Hillrom seeking confirmation that the attachments had otherwise been produced in discovery. The Court understands Linet to say that it will be producing in subsequent rolling productions the other 17 attachments that it identified as "in the queue for production." *See* Response [ECF No. 132] at 3-4. Within seven days after Linet completes its production of the other 17 attachments in its rolling document productions, Linet must provide Hillrom with a certification confirming that Linet's production includes all the attachments in issue.

Finally, Linet says it will not produce four attachments that are "documents created by Linet employees to send to its attorneys at [Hunton]" which were attached to emails to Hunton "so that Hunton could render legal advice regarding an antitrust assessment." Response [ECF No. 132] at 4 (identifying log entries LinetPriv00054; LinetPriv00446; LinetPriv00572; and LinetPriv00587). The Court understands that these four attachments have not otherwise been produced and are not in the queue to be produced by Linet. Accordingly, the question is whether Linet has established a basis for withholding these attachments entirely from production in any form based on privilege grounds.

Hillrom responds that Linet's log descriptions do not say the documents were created by Linet employees to send to Hunton. Reply [ECF No. 142] at 5. Hillrom also says some of the log descriptions merely state the document was "compiled" to share with Hunton and contends that does not make the document privileged. [*Id.*] The Court understands Hillrom to be challenging Linet's assertion of work product protection for these documents. To that end, Hillrom argues that if these attachments were "dual purpose" business documents that were created only in part because of anticipated litigation, the privilege is construed narrowly to only apply where the "primary motivating factor" for the creation of the document was to aid in future litigation. Reply [ECF No. 142] at 6-7 (citing cases). While Linet did assert work product protection over 21 of the 33 attachments at issue in this Motion, Linet says that it has produced or will produce 20 of those 21 attachments as they exist outside the attorney client communication, and Linet independently maintains that

41

the attorney client privilege protects these attachments to privileged communications. Accordingly, the Court need not resolve whether these 20 attached documents, which Linet says it has already or will otherwise produce, are protected by work product independent of the attorney client communications to which they are attached.[18]

That leaves only the four attached documents that Linet says it will not otherwise produce. As to three of those attachments (LinetPriv00054; LinetPriv00446; LinetPriv00572), Linet does not assert work product protection over these documents in its log, although Linet argues these documents were "created by Linet employees to send to its attorneys. . ." Response [ECF No. 132] at 4. Linet does assert work product protection over one of those four attachments (LinetPriv00587), in addition to asserting attorney client privilege. The log says this attachment was created on July 6, 2021 and "compiled and sent to counsel, Hunton Andrews Kurth, on 12/8/2021 in anticipation of litigation to enable the rendering of legal advice regarding updated antitrust case assessment." Ex. O [ECF No. 126-15]. Hillrom argues it cannot determine the nature of this attachment because the file name is redacted and suggests that if the document was created for a purpose other

---

[18] Hillrom argues Linet's cited case, *Stafford Trading, Inc. v. Lovely*, 2007 WL 1238915, at *5 (N.D. Ill. Apr. 26, 2007), does not support Linet's position because it says "to be privileged, 'documents' must have been 'prepared for a lawyer to render legal advice,' not merely created by business people and later shared with counsel." Reply [ECF No. 142] at 2. With respect to attorney client privilege, however, *Stafford Trading*, however, makes a broader statement, noting "[t]he attorney-client privilege protects documents given to an attorney for the attorney's use in rendering legal advice as well as documents that reflect confidential communications between the lawyer and client." *Id.* at *5. In the Court's view, this language echoes the principle espoused in *Upjohn*: that non-privileged facts communicated to an attorney for the purpose of seeking legal advice may be encompassed within the scope of a protected attorney-client privileged communication.

than anticipated litigation, even if it was also prepared for litigation purposes, it is not protected work product. In support, Hillrom cites authority indicating that the Seventh Circuit takes a narrow view of when dual purpose documents are protected by the work product doctrine. Reply [ECF No. 142] at 6. *See, e.g., Webster Bank, N.A. v. Pierce & Assocs., P.C.*, 2018 WL 704693, at *4–5 (N.D. Ill. Feb. 5, 2018) ("the Seventh Circuit, by comparison, takes an extremely narrow view of this concept, allowing 'dual purpose' documents to be protected as work product only if the 'primary motivating purpose' behind their creation is to aid in future litigation") (citing, among other cases, *United States v. Frederick*, 182 F.3d 496, 501–02 (7th Cir. 1999)); *OTR Transportation, Inc. v. Data Interfuse, LLC*, 2022 WL 296056, at *3 (N.D. Ill. Feb. 1, 2022) ("Even if Plaintiff intended to rely upon the consultant's work in this or other litigation, however, that does not insulate the consultant's work product from discovery in this case. . . dual-purpose retentions and the work product associated with them are not protected attorney work product.") (citing *Baxter Int'l, Inc. v. AXA Versicherung*, 320 F.R.D. 158, 162–63 (N.D. Ill. 2017)).

The Court cannot determine the privileged or work product nature of these four attachments from Linet's log descriptions, including whether the attached documents were created for Linet's counsel's review in providing legal advice, whether the documents are non-privileged attachments to attorney client communications that may properly be withheld as part of a privileged communication seeking legal advice, whether the attachment may exist independently of the privileged communication, or whether one of these four

attachments (LinetPriv00587), or any of these four attachments, are also protected by the work product doctrine. Accordingly, the Court orders Linet to submit to the Court *in camera* the four challenged attachments as well as the emails to which those documents were attached (log entries LinetPriv00053; LinetPriv00054; LinetPriv00445; LinetPriv00446; LinetPriv00571; LinetPriv00572; LinetPriv00586; and LinetPriv00587) to allow the Court to conduct an appropriate review. *See* Linet's Privilege Log [ECF No. 126-15].

### D. Linet Must Further Supplement Its Response to Hillrom's Interrogatory No. 3.

Finally, Hillrom asks the Court to compel Linet to "provide a complete response to" Hillrom's Interrogatory No. 3, which Hillrom says seeks the factual basis for Linet's contention that it did not and could not have discovered its injury until shortly before filing the Complaint, within seven days of this Court's decision. *See* Motion [ECF No. 125] at 26-28. Linet supplemented its response to this interrogatory, but Hillrom is not satisfied with Linet's revised answer. Linet says the interrogatory is far narrower in scope than Hillrom suggests and that Linet provided the information requested, including "when it discovered its antitrust injury, who discovered that injury, how it discovered that injury, and what it discovered about that injury." Response [ECF No. 132] at 16.

While the Court agrees that Interrogatory No. 3 does not necessarily seek the complete factual basis for Linet's fraudulent concealment claim, the Court disagrees that Linet has provided a fulsome response to the specific facts sought in this interrogatory. In particular, Linet's response that "it determined that it had

44

suffered an antitrust injury by no later than December 2021," the date when Linet filed its Complaint, does not meaningfully answer the question of *when* Linet discovered the alleged anticompetitive conduct that Linet itself identified in its supplemental interrogatory response. [*Id.*]; *see* Linet's Supplemental Response to Interrogatory No. 3 [ECF No. 126-4] ("Linet's Supplemental Response"). The "when" may be relevant to one or more of Hillrom's defenses in this case.

Linet says Judge Daniel recognized in his ruling [ECF No. 114] on Hillrom's motion for judgment on the pleadings [ECF No. 41] that Linet may have been "unable to 'connect all of the dots' of Hillrom's alleged scheme until shortly before filing its complaint because 'a lone puzzle piece may, in isolation, give no further indication as to the larger picture into which it fits, and yet at the same time be an integral component of the final product once all corresponding pieces are assembled.'" [*Id.*] (quoting Order [ECF No. 114]). But the Court does not take this to mean Linet is not obligated to disclose when it discovered the individual puzzle pieces more specifically than "no later than December 2021." Similarly, although the Court agrees that Interrogatory No. 3 does not ask Linet to disclose each fact or document that Linet claims was fraudulently concealed, Interrogatory No. 3 does ask Linet to identify "from what source" its employees "discovered Hillrom's allegedly anticompetitive conduct. . ." *See* Response [ECF No. 132] at 17 (quoting Interrogatory No. 3).

Linet also objects that Interrogatory No. 3 is a premature contention interrogatory that is more appropriate towards the end of discovery, Response [ECF

No. 132] at 18, but the Court retains discretion as to whether and when to compel discovery responses. *See*, *e.g.*, *In re Northfield Lab'ys Inc. Sec. Litig.*, 264 F.R.D. 407, 412 (N.D. Ill. 2009) ("Though the general policy is to defer contention interrogatories until discovery is near an end, courts have discretion to allow use of such interrogatories before discovery is complete.") (citing cases); *see also In re Dealer Mgmt. Sys. Antitrust Litig.*, 2019 WL 6498081, at *5 (N.D. Ill. Dec. 3, 2019) ("Contention interrogatories are permitted by the Federal Rules of Civil Procedure" and "are interrogatories 'used to elicit a description of the opposing party's theory and proof to be employed.'") (internal citations omitted). Interrogatory No. 3 seeks historical information that appears to be uniquely within Linet's possession about when Linet learned of certain alleged anticompetitive conduct and activities by Hillrom. The Court does not see a reason why Linet would be unable to answer Interrogatory No. 3 more fully at this stage of the case. If necessary, Linet can supplemental its response pursuant to Federal Rule of Civil Procedure 26(e) if it discovers additional evidence through discovery that Linet contends supports its claim that Hillrom concealed certain information from Linet or the market more generally. *See* Response [ECF No. 132] at 18. That, however, is not a reason for Linet not to provide more information within its present knowledge in answer to the interrogatory now.

The Court acknowledges and appreciates Linet's objection that "Hillrom's anticompetitive scheme is extensive, and a full recitation of it and the injuries caused by it would run dozens or hundreds of pages," but nevertheless believes a

more complete response from Linet is warranted identifying, to the best of its ability, when and from what source(s) its employees learned about the alleged anticompetitive conduct Linet identified in its supplemental response. *See* Linet's Supplemental Response [ECF No. 126-4] at 9. The Court recognizes that a substantial level of detail in this regard may ultimately be more appropriate for deposition discovery. The Court therefore orders Linet to supplement its response to Interrogatory No. 3 by identifying, even if generally, when and from what source(s) Linet's employees discovered the alleged anticompetitive conduct enumerated in Linet's current supplemental response to Interrogatory No. 3 (including when and which of "Linet's employees discovered Hillrom's Corporate Enterprise Agreement contracting strategy, rebate and bundling practices, facts regarding Hillrom's foreclosure of Linet, the closed-ecosystem nature of Hillrom's nurse call and Connected Care system, and false and/or disparaging remarks made by Hillrom regarding Linet's products"). *See* Linet's Supplemental Response [ECF No. 126-4] at 9. Further explication of this information can occur, if necessary, during depositions.

### III. CONCLUSION

Accordingly, for all these reasons, Hillrom's Motion to Compel Discovery from Linet [ECF No. 124] is granted in part and denied in part. The Motion is granted as described herein with respect to Hillrom's request that Linet supplement its response to Interrogatory No. 3. Linet shall provide a supplemental response within 21 days of this decision. The Court also orders Linet to produce for *in camera* review

the documents identified in Linet's privilege log entries LinetPriv00053; LinetPriv00054; LinetPriv00445; LinetPriv00446; LinetPriv00571; LinetPriv00572; LinetPriv00586; and LinetPriv00587 within seven days of this decision. The Court further orders Linet to provide a certification under oath that it has produced documents corresponding to entries in Linet's privilege log that Linet represents it has produced or will produce within seven days of the date that Linet completes its production of those documents as part of its rolling productions. The Motion is denied as to Hillrom's request that Linet produce other documents listed in its privilege log, as set forth herein.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: July 15, 2024