IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LINET AMERICAS, INC., )<br>        Plaintiff, )<br>)<br>                           )<br>    v.                           )<br>                           )<br>HILL-ROM HOLDINGS, INC., et al., )<br>        Defendants. )<br>                           )<br>                           ) | No. 21 C 6890<br><br>Magistrate Judge<br>Daniel P. McLaughlin |

**ORDER**

This matter is before the Court on Defendants' Motion to Compel Discovery. [170]. For the reasons that follow, Defendants' Motion is granted in part and denied in part.

**BACKGROUND**

Plaintiff brings this lawsuit alleging that the "[H]illrom Defendants monopolized and attempted to monopolize the market for hospital beds through a combination of anticompetitive behavior that began when Linet entered the market in 2010 and continues through the present day." [163], p. 2. On June 13, 2024, Defendants filed a Motion to Compel seeking to add four document custodians and to produce organizational charts from Plaintiff's parent companies. [170], [173]. Plaintiff responded on July 1, 2024. [204]. Defendants replied on July 12, 2024. [217]. The Motion is now ready for the Court's review.

## **LEGAL STANDARD**

Parties are allowed broad discovery to investigate facts and clarify issues. *Grayson v. City of Aurora*, No. 13C1705, 2013 WL 6697769, at * 2 (N.D. Ill. Dec. 19, 2013) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Relevance focuses on the claims and defenses in the case, not its general subject matter." *Motorola Sols., Inc. v. Hytera Communications Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019).

Moreover, "[c]ourts generally take an expansive view of discovery in antitrust cases." *Kleen Prods. LLC v. Packaging Corp. of Am.,* No. 10C5711, 2013 WL 120240, at *9 (N.D. Ill. Jan. 9, 2013); *see also Methodist Health Servs. Corp. v. OSF Healthcare Sys.*, No. 13C1054, 2016 WL 5817176, at *18 (C.D. Ill. Sept. 30, 2016), *aff'd*, 859 F.3d 408 (7th Cir. 2017) (noting that discovery in antitrust litigation has a "broad nature"). "Broad discovery is permitted because direct evidence of… anticompetitive [conduct] is often difficult to obtain, and the existence of [anticompetitive conduct] frequently can be established only through circumstantial evidence, such as business documents and other records." *Kleen Prods. LLC v. Packaging Corp. of Am.*, No. 10C5711, 2012 WL 4498465, at *13 (N.D. Ill. Sept. 28, 2012), *objections overruled*.

Further, under Federal Rule of Civil Procedure 37, a party may file a motion to compel when another party provides an insufficient response to a discovery request. Fed. R. Civ. P. 37(a). Additionally, under Local Rule 37.2, the movant must

2

show that counsel consulted over the dispute and attempted to reach an agreement.[1] LR 37.2. Once this has been shown, "[d]istrict courts enjoy broad discretion when considering motions to compel and have consistently adopted a liberal interpretation of the discovery rule." *Martinez v. Cook County*, No. 11C1794, 2012 WL 6186601, at * 2 (N.D. Ill. Dec. 12, 2012) (citations and quotations omitted).

## DISCUSSION

Defendants ask the Court to compel Plaintiff to add four individuals as document custodians and to produce organizational charts from January 2010 to August 2014 for "Linet spol s.r.o. and Linet Group SE"[2] ("European Parents"). [170], p. 1. Plaintiff argues that it does not have "control" over its European Parents and therefore cannot produce the requested discovery, and also argues that the requested custodians are not relevant. [204], p. 3-7. Defendants contend that Plaintiff does have control over its European Parents and that the requested discovery is relevant and proportional. [217]. The Court will take each argument in turn.

I. "Control"

Under Rule 34(a)(1), a party may request discovery that is in the "[p]ossession, custody, or control" of the responding party. Fed. R. Civ. P. 34(a)(1). "On the issue of control, it is well-settled that a party need not have actual possession of the

---

[1] Defendants explain their Local Rule 37.2 compliance on page 3 of the Higney Declaration, which the Court finds to be adequate compliance with the Rule given that this motion was filed prior to transfer to Judge McLaughlin's docket. [172], p. 3. However, the parties are also reminded to review Judge McLaughlin's Standing Order on Discovery Motion Requirements prior to filing future discovery motions.

[2] As explained by Defendants, "Linet Americas, Inc. is a wholly-owned subsidiary of LINET spol. s.r.o., a Czech company that in turn is a wholly-owned subsidiary of LINET Group SE, a Dutch company." [173], p. 2, fn. 4.

documents to be deemed in control of them; rather, the test is whether the party has a legal right to obtain them." *In re Hair Relaxer Mktg. Sales Pracs. & Prods. Liab. Litig.*, 23C00818, 2023 WL 8935006, at *2 (N.D. Ill. Dec. 27, 2023), *reconsideration denied* (internal quotations and citations omitted).

Moreover, when a "[p]arty seeks production from a non-party corporate affiliate, courts decide whether the opposing party controls those documents belonging to the affiliate by examining the closeness of their corporate relationship." *Id*. To determine the closeness of the corporate relationship, the Court considers the following factors:

> (1) commonality of ownership; (2) exchange or intermingling of directors, officers, or employees of the two corporations; (3) the exchange of documents in the ordinary course of business; (4) the non-party's connection to the transaction at issue; (5) any benefit or involvement by the non-party corporation in the litigation; (6) the corporate party's marketing and/or servicing of the non-party company's products; and (7) the financial relationship between the companies.

*Id*. Given that Defendants are requesting discovery from Plaintiff's European Parents, who are non-party corporate affiliates of Plaintiff, the Court proceeds to analyze whether Plaintiff has a close corporate relationship with its European Parents such that it has "control" over the requested discovery.

*Commonality of ownership*: It is undisputed that "[L]inet Americas is a wholly-owned subsidiary of Linet spol," and that Linet spol is wholly owned by Linet Group. [204], p. 2; [173], p. 11. While Plaintiff is correct that its "[s]tatus as a wholly-owned subsidiary is not, by itself, an adequate basis… to find a sufficiently close corporate relationship," it is still one factor that points towards closeness. *Id*. (internal citations omitted); *In re Hair Relaxer*, 2023 WL 8935006, at *2 ("A parent-subsidiary relationship weighs in favor of closeness….").

4

*Exchange or intermingling of employees*: A minimal amount of exchange or intermingling of employees exists. Defendants point to Vladimir Manica, who was an employee of Linet spol prior to becoming Plaintiff's Chief Financial Officer. [173], p. 12. Defendants also appear to argue intermingling on the basis of Tomáš Kolář's stance as an executive at Linet Group who also is the "[p]rimary conduit for communications between [Plaintiff] and its European Parents." *Id.*; [202], p. 2. The latter argument does not demonstrate an exchange or intermingling of employees as much as an exchange or intermingling of communications. As a result, there is only a limited amount of exchange or intermingling of employees (Defendants can point only to Manica), and this factor does not weigh heavily towards closeness.

*Exchange of documents in the ordinary course of business*: Plaintiff admits that, because the European Parents are the sole distributors of the products that Plaintiff sells, there is "some" exchange of documents. [204], p. 4. Additionally, Defendants point to "regular email traffic" between Plaintiff and the European Parents that was already produced in discovery, citing as one example an "email between Linet spol employee and Mark McClam, whose ESI was deleted, requesting investigation of reports that a patient was injured by a Linet bed."[3] [173], p. 12. While Plaintiff takes issue with the amount of email examples Defendants provide, alleging it is insufficient, the email cited in the previous sentence clearly demonstrates by itself an "exchange of documents in the ordinary course of business." That email shows the involvement of a European Parent employee in the investigation of an alleged injury

---

[3] The parties are reminded that sealed documents subject to a judicial decision may be open to public inspection. *See Baxter Int'l, Inc. v. Abbott Labs*, 297 F.3d 544, 545 (7th Cir. 2002).

5

from Plaintiff's product and requests a further exchange of documents as to the reported injury. The content of this email therefore "[implies] an exchange of documents in the ordinary course of business" at least as to product liability, if not in other areas of business. *In re Hair Relaxer*, 2023 WL 8935006, at *3. Moreover, Plaintiff's self-described solicitation of the European Parents' "[i]nput on product-related issues and basic financial questions" constitutes an exchange of documents in the ordinary course of business, regardless of how mundane Plaintiff characterizes those exchanges as being. [204], p. 5. Plaintiff argues that these communications "fail to show that Linet is able to freely access its European Parents [*sic*] documents," but "free access" is not the standard. *Id*. Indeed, "[t]he requesting party does not have to show that the subsidiary controls the parent, only that the subsidiary *can obtain* the parent's documents." *Life Spine, Inc. v. Aegis Spine, Inc.*, 19C7092, 2020 WL 2219060, at *2 (N.D. Ill. May 7, 2020) (emphasis added). Presumably Plaintiff "can obtain" its European Parents' documents if it seeks input from the European Parents on product-related issues and basic financial questions. The Court therefore finds that there exists an exchange of documents in the ordinary course of business which weighs in favor of closeness.

*Non-party's connection to transaction at issue:* Defendants argue that the European Parents are "closely" connected to the transaction at issue because previously produced documents show that the European Parents monitor Plaintiff's competition with Defendants and describe Defendants and other companies as "threats to our sales." [173], p. 12. Defendants also cite to the European Parents'

6

webpage, which states that "95% of its sales are in foreign markets, namely the USA and Germany." *Id*. Plaintiff simply states in response that it is "unsurprising" for a global supplier to monitor other suppliers. [204], p. 5. The fact that it is unsurprising does not mitigate the information's connection to this litigation. Plaintiff's complaint alleges that Defendants have engaged in anticompetitive conduct against Plaintiff "[i]n order to slow [Plaintiff's] market expansion and deprive it of the minimum economies of scale necessary to compete." [1], p. 3. Information demonstrating the European Parents' significant sales in the American market (which would presumably be impacted by Defendants' conduct) and the European Parents' characterization of Defendants as competitors in that market is thus innately connected to the overarching allegation of anticompetitive conduct in this case. This factor thus weighs in favor of closeness.

*Any benefit or involvement by the non-party corporation in the litigation*: Similarly, Defendants argue that the European Parents stand to benefit from any recovery of damages in this case or would benefit from an injunction prohibiting Defendants from utilizing the corporate enterprise agreements at the center of the alleged anticompetitive conduct. [173], p. 9. Courts have recognized "some level of benefit" from the argument as to an injunction, although the level of benefit is not entirely dispositive of this factor. *Life Spine, Inc.,* 2020 WL 2219060, at *3. However, given that 95% of the European Parents' sales come from the US and Germany, the Court can make an educated guess that the European Parents' sales stand to benefit from the outcome of this litigation—whether that be through the allocation of

damages or an injunction. The Court thus finds that this factor weighs in favor of closeness.

*Marketing and/or servicing of the non-party's products*: It is undisputed that Plaintiff sells the European Parents' products in the United States. [204], p. 6. The European Parents have marketing and communications geared towards its North American market, and Defendants cite to emails which show discussions between the European Parents and Plaintiff about sales in the United States. [204], p. 8-9; [173], p. 10. Plaintiff presents no argument demonstrating that it does not market or service the European Parent's products, instead making an argument as to the relevance of the requested discovery. While the Court will address the relevance of the requested discovery at a later point, it must first address the threshold question of whether the requested discovery can, in fact, *be requested*—and to do so, the Court must evaluate "closeness" through the factor of marketing or servicing of the non-party's products. With this context in mind, the Court finds it implausible that Plaintiff does not market or service its own products (which are inherently the products of the European Parents, as Plaintiff sells those products in the United States for the Parents). Plaintiff presents no evidence to the contrary, and the Court thus finds this factor in favor of closeness.

*Financial relationship between the companies*: Finally, there evidently exists a financial relationship between the companies where Plaintiff is a wholly owned subsidiary and where the European Parents' website proclaims that 95% of its sales are in the US and Germany. Furthermore, the Court finds the press release cited by

8

Defendants persuasive; the press release points out that "the best years of LINET's existence" includes the expansion into the American market, demonstrating the Parents' financial relationship with Plaintiff. [172-13], p. 2. The Court therefore finds this factor in favor of closeness.

Ultimately, when evaluating the above factors, the Court finds that Plaintiff and the European Parents have a close corporate relationship such that Plaintiff is "in control" of the requested discovery. The Court thus turns to the relevance and proportionality of that discovery.

## II.    Relevance and Proportionality

"Federal Rule of Civil Procedure 26(b)(1) gives expansive power to discover information regarding any nonprivileged matter that is relevant to any party's claim or defense." *Grayson*, 2013 WL 6697769, at *2. "Courts broadly construe relevancy to include any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may [be] in the case." *Batchelor v. City of Chicago*, No. 18C8513, 2020 WL 13647794, at *2 (N.D. Ill. Nov. 17, 2020) (citing *Webster Bank, N.A. v. Pierce & Assocs., P.C.*, No. 16C2522, 2017 WL 11560211, at *2 (N.D. Ill. Aug. 15, 2017) and *Oppenheimer Fund, Inc.*, 437 U.S. at 351 (internal quotations and citations omitted)). "If relevance is in doubt, courts should err on the side of permissive discovery." *Coleman v. Illinois*, No. 19C3789, 2020 WL 5752149, at *3 (N.D. Ill. Sept. 25, 2020).

In light of the expansive view of discovery in antitrust cases, and the broad relevance standard generally, the Court finds that the requested discovery is relevant

9

in part. As has been recognized in other cases, the requested organizational charts from the European Parents are relevant. *In re Hair Relaxer*, 2023 WL 8935006, at *4. They are particularly relevant in this case, where Plaintiff is unable to produce any of its own organizational information that predates January 1, 2016, while simultaneously placing at issue a timeframe that reaches back to 2010. [204], p. 11. Furthermore, Defendants argue that the lack of personnel information from before 2016 is "[e]specially prejudicial because [Plaintiff's] knowledge of [Defendants'] conduct during this period could render the entire suit time-barred." [173], p. 11. The requested organizational charts from the European Parents thus easily clear the low standard for relevance to the extent that they can reveal individuals who may have information on Plaintiff's knowledge of Defendants' conduct. Additionally, because Defendants only request four years' worth of organizational charts (from January 2010 to August 2014), the Court finds no issue with proportionality.[4] *Gross v. Chapman*, No. 19C2743, 2020 WL 4336062, at *4 (N.D. Ill. July 28, 2020) ("Proportionality, like other concepts, requires a common sense and experiential assessment."). Plaintiff is therefore directed to produce organizational charts or personnel lists for the European Parents that cover the timeframe of January 2010 to August 2014.

---

[4] Plaintiff argues that other cases have denied requests for a parent's organizational information on proportionality grounds and urges the Court to do the same here. [204], p. 11. But Plaintiff's cited example requested decades-worth of information, which was the basis of the proportionality problem and which stands in stark contrast to the four years requested here. *In re Hair Relaxer*, 2023 WL 8935006, at *4. As Plaintiff provides no additional argument explaining why *this* specific discovery request is not proportional, the Court declines to consider this issue further.

10

As to Defendants' request to add custodians Vladimir Manica, Tomáš Kolář, Jana Asterová, and Zbyněk Frolík, the Court will address the relevance of each custodian in turn.

*Manica*: Manica was Plaintiff's Chief Financial Officer from 2019 to 2021, which is outside of the Phase 2 timeframe.[5] [202], p. 2. However, prior to his role with Plaintiff, Manica was a Strategic Controller at Linet spol (one of the European Parents) where he "[s]upported [Plaintiff's] finance team with their annual reporting obligations beginning in 2017." *Id*. Defendants argue that Manica would have "relevant documents about… the sales and revenue, strategic plans, and market analyses central to [Plaintiff's] claims." [173], p. 9. The Court agrees with Defendant that Manica would likely have relevant documents given his role in supporting Plaintiff's finance team. Accordingly, the Court finds that Manica would be a relevant custodian. However, given that the Court already established that Phase 1 discovery has been completed, any custodial discovery of Manica must be constrained to the Phase 2 timeframe and his role as a Strategic Controller who supported Plaintiff's finance team.

---

[5] Discovery in this case was bifurcated to "Phase 1" discovery, which covered the time period of December 28, 2017, to the present, and "Phase 2" discovery, which covers the pre-December 28, 2017, time period, pending the District Judge's ruling on Defendants' Motion for Judgment on the Pleadings. [87], p. 2, fn. 2, 3 ("Phase 1 Time Period refers to documents from December 28, 2017 forward..." and "Phase 2 Time Period refers to documents from prior to December 28, 2017"). On January 17, 2024, the District Judge denied Defendants' Motion for Judgment on the Pleadings, and the parties transitioned to Phase 2 discovery. [114]; *see also* [154], p, 2, fn. 2 (Magistrate Judge Gilbert's May 2024 discovery scheduling order noting that, at this point in the case, Phase 1 discovery has been completed such that "[t]he deadlines in this Order presumptively apply to non-Phase 1 Time Period document requests.").

*Kolář*: Plaintiff itself admits that Kolář was the "[p]rimary conduit for communications between [Plaintiff] and its European Parents and would be included on any communications between them that include other European employees." [204], p. 10. Moreover, Defendants point out that Kolář has already appeared on several privilege log entries about "antitrust matters." [173], p. 10. In light of these representations, it is likely that Kolář would have discoverable information about Plaintiff's knowledge of Defendants' conduct. Kolář is thus plainly relevant and is a proper custodian.

*Asterová*: Asterová is a Linet spol employee who was the "Regional Manager for West Europe and North America from 2013 to 2023." [202], p. 2. While Asterová did not have any decision-making authority over Plaintiff, she did provide marketing and communications support for Plaintiff. *Id*. The Court thus finds her to be a relevant custodian to the extent she may be able to produce information about Plaintiff's marketing and communications during the Phase 2 timeframe, which may in turn reveal information about Plaintiff's knowledge of Defendants' conduct during that timeframe.

*Frolík*: Frolík founded Linet Group and worked with Kolář to manage Linet Group until 2019. *Id*. While Frolík is listed on some pre-2018 emails and appears in the press release that explains Frolík worked side-by-side with Kolář to "[g]ive LINET the best years of its existence, during which the company expanded into the American market," Plaintiff clarified that Frolík's work with Kolář was divided such that Frolík "[h]ad no direct responsibility or day-to-day oversight of Plaintiff." [173]

12

p. 7; [204], p. 9. In the interest of proportionality, the Court declines to compel the addition of Frolík as a custodian. Defendants have not articulated what relevant discovery Frolík would provide that could not already be provided by Kolář. This redundancy concern is bolstered by the fact that Defendants' only proffered email evidence of Frolík's relevance is an email in which Kolář is the author. Frolík thus need not be added as a custodian.

In sum, the Court agrees with Defendants that Manica, Kolář, and Asterová should be added as custodians given their likely possession of relevant information. As Plaintiff has not articulated any undue burden to producing information from the proposed custodians, the Court declines to consider further any issues as to burden or proportionality. *In re Outpatient Med. Ctr. Emp. Antitrust Litig.*, 2023 U.S. Dist. LEXIS 109561, at *43-44 (N.D. Ill. June 26, 2023); *see also Art Akiane LLC. v. Art & Soulworks LLC*, No. 19C2952, 2020 WL 5593242, at *3 (N.D. Ill. Sept. 18, 2020) (stating that the Court "[w]ill not fill th[e] void by crafting arguments and performing the necessary legal research on behalf of either side" and further asserting that "[t]his is not a preference; it is something courts are forbidden to do"). That said, the Court reminds the parties that they are presently in the midst of Phase 2 discovery; as a result, any custodial discovery of these individuals must be constrained to the Phase 2 timeframe.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion to Compel Discovery [170] is granted in part. Plaintiff is directed to produce the organizational charts and add Manica, Kolář, and Asterová as custodians. Plaintiff has until 4/4/25 to produce the organizational charts.

**SO ORDERED.**  **ENTERED:**

**DATE: March 17, 2025**

_____
**HON. DANIEL McLAUGHLIN**
**United States Magistrate Judge**