IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LINET AMERICAS, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | No. 21 C 6890 |
| v. | ) | |
| | ) | Magistrate Judge |
| HILL-ROM HOLDINGS, INC., et al., | ) | Daniel P. McLaughlin |
| Defendants. | ) | |
| | ) | |
| | ) | |

## ORDER

This matter is before the Court on Plaintiff's Motion to Compel. [189]. For the reasons that follow, Plaintiff's Motion is granted in part and denied in part.

## BACKGROUND

Plaintiff brings this lawsuit alleging that the "[H]illrom Defendants monopolized and attempted to monopolize the market for hospital beds through a combination of anticompetitive behavior that began when Linet entered the market in 2010 and continues through the present day." [163], p. 2. On June 28, 2024, Plaintiff filed a Motion to Compel seeking to: add 27 custodians, compel responses to three RFPs, and add an additional search string. [189]. Defendants responded on July 17, 2024. [223]. Plaintiff replied on July 26, 2024. [217]. The Motion is now ready for the Court's review.

## LEGAL STANDARD

Parties are allowed broad discovery to investigate facts and clarify issues. *Grayson*

*v. City of Aurora*, No. 13C1705, 2013 WL 6697769, at * 2 (N.D. Ill. Dec. 19, 2013) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Relevance focuses on the claims and defenses in the case, not its general subject matter." *Motorola Sols., Inc. v. Hytera Communications Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019).

Moreover, "[c]ourts generally take an expansive view of discovery in antitrust cases." *Kleen Prods. LLC v. Packaging Corp. of Am.*, No. 10C5711, 2013 WL 120240, at *9 (N.D. Ill. Jan. 9, 2013); *see also Methodist Health Servs. Corp. v. OSF Healthcare Sys.*, No. 13C1054, 2016 WL 5817176, at *18 (C.D. Ill. Sept. 30, 2016), *aff'd*, 859 F.3d 408 (7th Cir. 2017) (noting that discovery in antitrust litigation has a "broad nature"). "Broad discovery is permitted because direct evidence of… anticompetitive [conduct] is often difficult to obtain, and the existence of [anticompetitive conduct] frequently can be established only through circumstantial evidence, such as business documents and other records." *Kleen Prods. LLC v. Packaging Corp. of Am.*, No. 10C5711, 2012 WL 4498465, at *13 (N.D. Ill. Sept. 28, 2012), *objections overruled*.

Further, under Federal Rule of Civil Procedure 37, a party may file a motion to compel when another party provides an insufficient response to a discovery request. Fed. R. Civ. P. 37(a). Additionally, under Local Rule 37.2, the movant must show that counsel consulted over the dispute and attempted to reach an agreement.[1]

---

[1] Plaintiff explains its Local Rule 37.2 compliance in its Motion, which the Court finds to be adequate compliance with the Rule given that this motion was filed prior to transfer to Judge McLaughlin's

LR 37.2. Once this has been shown, "[d]istrict courts enjoy broad discretion when considering motions to compel and have consistently adopted a liberal interpretation of the discovery rules." *Martinez v. Cook County*, No. 11C1794, 2012 WL 6186601, at * 2 (N.D. Ill. Dec. 12, 2012) (citations and quotations omitted).

## DISCUSSION

Plaintiff asks the Court to compel the addition of 27 custodians, responses to three RFPs, and the addition of a search string. [189]. The Court will address each request in turn.

### I.  Custodians[2]

Plaintiff seeks to add 27 custodians which it says fall into five categories: corporate enterprise team leadership (four proposed custodians); National Account Executive ("NAE") custodians (six proposed custodians); Director of Strategic Solutions ("DSS") custodians (twelve proposed custodians); M&A custodians (one custodian); and "other relevant employees" (five proposed custodians). [190], pp. 5-7. Defendants point out that in Phase 1 of discovery, Defendants had 28 custodians, and that Defendants have already agreed to 13 custodians in Phase 2. [223], p. 5. Plaintiff's request to add 27 additional Phase 2 custodians is really a request to bring the Phase 2 custodian total

---

docket. [189], p. 2. However, the parties are also reminded to review Judge McLaughlin's Standing Order on Discovery Motion Requirements prior to filing future discovery motions.

[2] The Court notes that Plaintiff used single-spaced paragraphs in the portions of its brief related to custodians. [190]. As pointed out by Defendants, that practice violates Local Rule 5.2(e). [223], p. 6, fn. 3. Given the Court's doubt that Plaintiff's brief would have stayed under the 15 page limit had it not used single-spacing at certain points, the Court sees this as a practice intended to circumvent the 15-page limit (Local Rule 7.1), and Plaintiff is warned that further filings that use single-spacing without prior approval of the Court will be stricken.

3

up to 40, and the overall custodian total in this case to 68. With this in mind, the Court turns to each of the five custodian categories.

### A. Corporate Enterprise Team Leadership

The Motion is granted as to Alton Shader and Ryan Terry. Plaintiff explains that Shader "[o]versaw Hillrom's entire sales team at various points during the Phase 2 period and reported directly to Hillrom's CEO," whom Plaintiff has described as the creator of the anticompetitive strategy at issue. [190], pp. 5-6; [163], p. 13. The Court therefore believes it is likely that Shader will have relevant information about the formation of the corporate enterprise accounts team whose corporate enterprise agreements ("CEA") are one of the focal points of the allegedly anticompetitive strategy at issue in this case. Similarly, Plaintiff explains that Terry shared a role with "current custodian Tim Wildman that required them to oversee two separate Enterprise Accounts sales teams that covered different accounts." [190], p. 6. Given that Terry shared a role with another custodian, but covered different accounts, the Court believes it is likely Terry will have relevant information about the Enterprise Accounts sales teams that differs from the other custodian.

Furthermore, in light of the size of this case—the claims at issue, the money at stake, and even the sheer number of attorneys involved—the Court does not believe that adding these two additional custodians represents a proportionality problem. *Gross v. Chapman*, No. 19C2743, 2020 WL 4336062, at *4 (N.D. Ill. July 28, 2020) ("Proportionality, like other concepts, requires a common sense and experiential assessment."). As Defendants have not provided any proportionality arguments

4

specifically attuned to these two custodians—instead putting forth an overall proportionality argument as to the burden and expense of adding all 27 additional custodians—the Court sees no reason why the addition of these two specific individuals should be precluded on proportionality grounds.

As to Susan Schuette and Barry Smith, the Motion is denied. Plaintiff puts forth no explanation of relevance whatsoever as to Smith. [190], p. 6. In other words, Plaintiff asks the Court to discern for itself the relevance of this custodian "[a]nd then manufacture an argument, illuminated by case law, on [their] behalf." *Art Akiane LLC. v. Art & Soulworks LLC,* 19C2952, 2020 WL 5593242, at *3 (N.D. Ill. Sept. 18, 2020). This is, of course, "something courts are forbidden to do." *Id*. Moreover, the Court accepts Defendants' assertion that no ESI remains for Schuette because she departed Defendant Hillrom so long ago (and that Plaintiff was advised of this). [223], p. 9. The Motion is therefore denied as to Schuette and Smith.

### B. National Account Executive

The Motion is granted as to Lori Fitzgerald and denied as to all other proposed custodians listed under the "National Account Executive" section. Plaintiff provides no explanation of relevance specific to Gable, Holmes, Jolly, or Hill. As explained previously, the Court will not manufacture the relevance of the proposed custodians on Plaintiff's behalf. As to Fitzgerald, Plaintiff does explain that she "went on to oversee entire Enterprise Accounts sales teams," which the Court finds to be relevant to the extent that Fitzgerald may have discoverable information about those teams' operation of the CEA strategy that is at the center of the allegedly anticompetitive

5

conduct at issue. As discussed previously, the Court finds no proportionality issues with the addition of this single custodian.

### C. Director(s) of Strategic Solutions

The Motion is granted in part as to custodians proposed under the "Director of Strategic Solutions" section. The Court agrees with Plaintiff that the proposed custodians, as members of the Enterprise Accounts team tasked with strategy and execution of the IDN contracts at issue in the complaint, are likely to have discoverable information. However, the Court also agrees with Defendants that the scope of the proposed custodians is improper. As Plaintiff did not provide the Court with any information by which to specifically evaluate the relevancy of the individual proposed custodians, the parties are directed to meet and confer to identify five individuals from the original proposed list of twelve to use as custodians. If the parties cannot come to an agreement as to the five, the Court will select five at random. The parties have until 8/11/25 to identify the five custodians in a status report.

### D. M&A Custodian

The Motion is denied as to the request for an M&A Custodian. As discussed by the previous magistrate judge, Plaintiff does not explain why the M&A documents it seeks cannot be obtained through other, less burdensome sources of discovery, such as the M&A RFP that the Court addresses later in this Order. [197-5], pp. 8-9. Moreover, the Court is persuaded by Defendants' argument that Defendants have identified other custodians "[w]ho oversaw Hillrom's acquisitions as they relate to its bed sales strategy" and from whom Plaintiff can obtain M&A-related documents.

6

[223], p. 809. As the Court is allowing the M&A RFP to proceed (RFP No. 2-2), the Court finds it disproportionate to also order the inclusion of an M&A-specific custodian. While the complaint *does* include allegations about Defendants' use of its M&A strategy, those allegations are ultimately made in *furtherance* of Plaintiff's overall allegations of anticompetitive conduct via CEA. Allowing the addition of a custodian dedicated solely to M&A would therefore be disproportionate when the M&A information sought can likely be obtained from other, multi-use custodians or from the M&A RFP.

### E. Other Relevant Employees

The Motion is granted as to Nick Rahe and denied as to the other proposed custodians identified in the "other relevant employees" section. Plaintiff again neglects to articulate the specific relevance of Brasac, Davis, Harrison, and Lawrence, instead simply listing their roles. [190], p. 7. The Court will not extrapolate the relevance of the proposed individuals from something as undetailed and subjective as the mere role an employee played. In contrast, Plaintiff explains that Rahe "[h]eld a role in contract management, design, [and] enforcement and appears to serve as a conduit between sales opportunities and contract execution, and as such is likely to have visibility into the anticompetitive contracting strategy Linet alleges." *Id*. That explanation articulates for the Court Rahe's role, and also why that role makes him relevant—and the Court agrees that he is. Moreover, the Court is unpersuaded by Defendants' argument that Rahe is an unnecessary custodian because the email chain cited by Plaintiff in support of his relevance also includes a conversation with already-agreed custodian Wildman. [223], p. 9; [191-9]. The mere fact that Rahe and

7

Wildman appear on the same relevant email chain does not inherently make the addition of Rahe as a custodian redundant; Rahe and Wildman held different titles and presumably have relevant ESI that differs based on those titles. [191-1] (Rahe title); [224-1] (Wildman title). Indeed, the Court finds that the inclusion of Rahe and Wildman on the same email chain underscores Rahe's relevance. With no further articulation as to Defendants' burden in adding Rahe, the Court finds that the addition of this single additional, relevant custodian is proportionate to the needs of this complicated case.

## II. RFPs

### A. RFP No. 1-21

The Motion is granted in part as to RFP No. 1-21. Plaintiff seeks all documents concerning performance reviews and compensation of employees who sold or had management-level responsibility for the marketing and sale of the Relevant Products or Nurse Call systems (hereinafter, "Performance Documents"). [190], p. 9. Plaintiff argues that these Performance Documents "[l]ikely include details about how customer contracts were landed" that may not be found in other documents because the Performance Documents are uniquely positioned for salespeople and management to capture "notable achievements." *Id*. In support of this contention, Plaintiff also cites several already-produced performance reviews that provide "[u]nique information related to Hillrom's revenue goals, key accounts, and sales strategy." *Id*.; *see also* [191-10], [191-12], [191-13]. Defendants, in turn, argue that the previous magistrate judge already rejected this request, and assert that Plaintiff

failed to address key precedent indicating a high burden must be met for the production of employee information. [223], p. 10.

The Court will address Defendants' latter argument first. As to the "precedent" cited by Defendants, only one case cited by Defendants is from the Seventh Circuit (the rest coming from the district court level, and several coming from out-of-circuit district courts at that), and that case simply affirms the "substantial discretion" of the lower court judge in evaluating discovery requests' expense and intrusiveness. *Gehring v. Case Corp.*, 43 F.3d 340, 342 (7th Cir. 1994) (affirming the district judge's decision to prevent discovery of personnel files for privacy reasons because the district judge has "substantial discretion to make such decisions."); *see also Lillian v. Nat'l R.R. Passenger Corp.*, 259 F. Supp. 3d 837, 844 (N.D. Ill. 2017) ("District Court opinions are nonprecedential."). While the Court agrees with Defendants—and the *Gehring* case—that discovery of personnel documentation implicates privacy concerns for non-party employees, nothing in the *precedential* caselaw presented precludes discovery of such documentation on that basis or imposes the so-called "high burden" required for production that is urged by Defendants. [223], p. 10 (Defendants asserting that requests for personnel information "[a]re overwhelmingly denied absent the proponent meeting a high burden…" based on district court caselaw). The Court therefore declines to consider further the arguments as to a "high burden" for production; the Court has "substantial discretion" to consider discovery disputes, and it exercises that discretion here. *Gehring*, 43 F.3d at 342.

As to Defendants' assertion that the request should be denied because the previous magistrate judge did so earlier, Plaintiff points out that the previous magistrate judge denied the requests as "[a]ttenuated *at this point*," explicitly stating that it could be possible for Plaintiff to "fine-tune" the request "later." [238], p. 5 (emphasis added). Even if the previous magistrate judge had not provided such caveats in his decision, this Court would be inclined to allow the request to go forward (with additional limitations). Such is the risk parties take in choosing to bring their discovery disputes to the Court rather than to work them out amongst themselves; the expanse of the Court's discretion in ruling on discovery disputes is so broad that "[i]t is possible for two judges, confronted with the identical record, to come to opposite conclusions and for the appellate court to affirm both." *United States ex rel. Gill v. CVS Health Corp.*, 18C6494, 2023 WL 2771166, at *3 (N.D. Ill. Apr. 4, 2023).

Defendants put forth no argument debunking the relevance of these requests and again provide no substantiation of any proportionality burdens. Plaintiff, meanwhile, has demonstrated the relevance of the Performance Documents, explaining that they are a prime location for unique information about the acquisition of customer contracts, and pointing to already-produced Performance Documents that make reference to the goals and strategies at play for employees. Given that Plaintiff's allegations of anticompetitive conduct inherently implicate the intent of Defendants in undertaking the disputed conduct, information about the goals and strategies of employees would seem particularly suited to shedding light on the intent of Defendants. *JamSports & Ent., LLC,* 336 F. Supp. 2d 824, 842 (N.D. Ill. 2004) (citing

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,* 472 U.S. 585, 602 (1985)). As a result, the Court finds that the Performance Documents are relevant.

This said, the Court does have concerns with the proportionality of the requests as they currently stand. Plaintiff asks for "all documents" from "January 1, 2014 through the present" from any employee who "sold or had management-level responsibility for the marketing and sale of Relevant Products or Nurse Call Systems." [190], p. 9. While Defendants did not provide the Court with any information to as to how many employees may be implicated by the request, the Court can imagine the number is significant. Accordingly, the Court directs the parties to meet and confer to determine a method to produce a randomized sampling of Performance Documents for employees who "sold or had management-level responsibility for the marketing and sale of Relevant Products or Nurse Call Systems." The Court also adjusts the timeframe of the request to reflect the fact that the case is in Phase 2[3] of discovery—as such, discovery into timeframes that postdate December 28, 2017, is precluded.

Finally, while "Defendants' concerns regarding the disclosure of personal information are valid… the Court will not throw out the baby with the bath water."

---

[3] Discovery in this case was bifurcated to "Phase 1" discovery, which covered the time period of December 28, 2017, to the present, and "Phase 2" discovery, which covers the pre-December 28, 2017, time period, pending the District Judge's ruling on Defendants' Motion for Judgment on the Pleadings. [87], p. 2, fn. 2, 3 ("Phase 1 Time Period refers to documents from December 28, 2017 forward..." and "Phase 2 Time Period refers to documents from prior to December 28, 2017"). On January 17, 2024, the District Judge denied Defendants' Motion for Judgment on the Pleadings, and the parties transitioned to Phase 2 discovery. [114]; *see also* [154], p, 2, fn. 2 (Magistrate Judge Gilbert's May 2024 discovery scheduling order noting that, at this point in the case, Phase 1 discovery has been completed such that "[t]he deadlines in this Order presumptively apply to non-Phase 1 Time Period document requests.").

*Bond v. Utreras*, 04C2617, 2006 WL 695447, at *4 (N.D. Ill. Mar. 10, 2006). The Confidentiality Order in this case will apply to the production because the Court has found the information discoverable. As an additional measure of precaution, the "[C]ourt directs Defendants to redact irrelevant, personal information contained in these documents, such as… home addresses, telephone numbers, social security numbers…etc., prior to disclosing them to Plaintiff." *Id*.

### B. RFP No. 2-2

The Motion is granted in part as to RFP No. 2-2. Plaintiff argues that documents related to M&A are relevant because Plaintiff alleges that Defendant's "[a]nticompetitive Connected Care strategy was implemented, in part, by Hillrom's acquisition of companies with product lines that enabled it to create a super bundle." [190], p. 10. Defendants point out that the previous magistrate judge in this case denied a similar RFP during Phase 1 of discovery and argues that this RFP is burdensome and overbroad, and that this request only "[r]epeats the bundling claims for which it is already receiving ample discovery." [223], p. 11. Defendants are correct that the previous magistrate judge denied the similar request, finding it "overbroad right now." [197-5], p. 10. But that finding was made in 2022, during Phase 1 of discovery. The case has now progressed three more years and has reached the second and final phase of discovery, and the relevance of the requested documents is apparent to the extent they can shed light on the allegedly anticompetitive nature of the Connected Care strategy via its alleged influence over corporate acquisitions. Defendants do not explicitly dispute this relevance, instead simply arguing that other "ample discovery" about bundling is already occurring. [223], p. 11. It is true that

12

ample discovery in this large antitrust case is already occurring, but that truth does not negate the independent and distinct relevance of the requested information. Defendants put forth no argument that the requested information is *duplicative*, and nor could they. The Court therefore finds that the requested information is relevant.

That said, the Court does find significant proportionality issues with this RFP. While the information is relevant, that does not entitle Plaintiff into discovery of "all documents" related to the fifteen transactions referenced in the complaint, particularly for the five listed transactions that predate the already-generous discovery timeframes in this case. Accordingly, Defendants need not produce information related to the 2003 and 2004 NaviCare Systems, 2003 Advanced Respiratory, 2004 Mediq, and 2008 Liko acquisitions. [1], p. 72. Even with those acquisitions eliminated from the RFP, the Court still has concerns about the proportionality of requiring production for "all documents" related to the remaining transactions at issue. Accordingly, the Court directs Plaintiff to identify three transactions from those remaining for which they will seek production for this RFP.

C.  **RFP No. 8**

The Motion is granted as to RFP No. 8. As Plaintiff points out, the previous magistrate judge in this case explicitly stated that the "[s]ubject matter of Hill-Rom's use of patents in what Linet would say is an anticompetitive way is a legitimate subject of discovery if Hill-Rom will have a defense to that." [197-6], p. 10. This Court agrees that some discovery into the alleged anticompetitive use of patents is relevant, particularly given the complaint's allegations that Defendant "[u]tilizes an aggressive patent enforcement strategy [] to protect its installed base by erecting anticompetitive

13

barriers to entry." [238], p. 6. Defendants do not challenge the relevancy of the request, instead arguing that the previous magistrate judge denied an earlier patent request on proportionality grounds and urging that this Court do the same again. [223], p. 12. The Court thus proceeds to consider the proportionality of the request.

Defendants put forth no concrete information as to burden or expense substantiating their claims of disproportionality, instead simply asserting that the request is disproportionate. *Cristofoletti v. Transform SR, LLC*, 23C1318, 2023 WL 8711942, at *3 (N.D. Ill. Dec. 18, 2023) ("[O]nly the non-moving party knows what that burden or expense will be, and therefore the non-moving party must provide that information to the Court in order to support its proportionality argument."). Given that the request seeks only those documents "sufficient to show" patent strategy and patent enforcement strategies related only to the Relevant Products or Nurse Call Systems, the Court finds no issue of proportionality here. It is true that Plaintiff lists examples of documents they would seek while including the qualifier of any production being "not limited to" those examples, but that language does not transform this into a request for "all documents;" it simply ensures that any other, non-listed example documents that are "sufficient to show" the patent strategy and enforcement strategy are produced. Accordingly, the Court finds no issue with proportionality here, and Defendants need only produce documents "sufficient to show" the patent strategy and enforcement strategy for the enumerated products.

### III. Search String

The Motion is granted as to the requested search string. Plaintiff has established the relevancy of this search string, explaining that during Phase 1 of

14

discovery, it "[h]it on unique and relevant documents concerning, for example, information provided to Hillrom's C-Suite and Board of Directors…and strategy and communications regarding Ascension, one of the country's largest IDNs and targets for Hillrom's anticompetitive strategy." [190], p. 11. Defendants' proportionality concerns for this request are based on the addition of the full 27 requested custodians, explaining that the "inordinate burden" of adding this search string is "created by Linet's demand for 27 additional custodians, and would be mooted if discovery were limited to agreed-upon custodians." [223], p. 12. As the Court is not ordering the addition of the full 27 custodians, and in light of Plaintiff's explanation that during Phase 1, the search string "[h]it on only approximately 100 unique documents," the Court does not believe that using the search string with a reduced custodian load is disproportionate to the needs of this large and complex case. The Motion is therefore granted as to the requested search string.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel [189] is granted in part and denied in part.

**SO ORDERED.**     **ENTERED:**

**DATE: July 21, 2025**

**HON. DANIEL McLAUGHLIN**
**United States Magistrate Judge**

15